**DAVIDSON & GRANNUM, LLP**
Sandra D. Grannum (SG 6748)
30 Ramland Road, Ste 201
Orangeburg, New York 10962
Tel: (845) 365-9100
Fax: (845) 365-9190
Attorneys for Defendants,
A. G. Edwards & Sons, Inc.,
Wachovia Securities, LLC, and
Wachovia Corporation

## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

Melissa D. Forbes,

               Plaintiff,

v.

A.G. Edwards & Sons, Inc.,
Wachovia Securities, LLC,
Wachovia Corporation, and
Douglas L. Pearl,

               Defendants.

**JUDGE: Thomas P. Griesa**

**Civil Action No. 1:08-CV-00552-TPG**

**AFFIDAVIT OF SANDRA D. GRANNUM IN SUPPORT OF DEFENDANTS A. G. EDWARDS & SONS, INC.'s, WACHOVIA SECURITIES, LLC's, AND WACHOVIA CORPORATION's, MOTION FOR AN ORDER STAYING THE PRESENT ACTION AND COMPELLING ARBITRATION or, IN THE ALTERNATIVE, TO DISMISS THE PRESENT ACTION**

| THE STATE OF NEW YORK | ) |
|---|---|
| | )ss. |
| COUNTY OF ROCKLAND | ) |

I, Sandra D. Grannum, duly swears, affirms and deposes as follows:

1.     I am over the age of 18 year old and make this affidavit based upon my personal knowledge of the facts recited herein and where I do not have person knowledge based upon the books and records of Defendants A. G. Edwards & Sons, Inc., Wachovia Securities, LLC, and Wachovia Corporation which are kept in the normal course of business.

2.      I am a member of the bar of the state of New York, and a member of the firm of Davidson & Grannum, counsel of record for Defendants A. G. Edwards & Sons, Inc., Wachovia Securities, LLC, and Wachovia Corporation ("Edwards").

3.      I submit this affidavit in support of Edwards's, Motion For an Order Staying the Present Action and Compelling Arbitration or, in the Alternative, to Dismiss the Present Action.

4.      Attached hereto as Exhibits are true and accurate copies of the following documents:

Exhibit A        Forbes Employment Application dated October 10, 2004;

Exhibit B        Forbes Financial Associate Agreement;

Exhibit C        Forbes Supplementary Training Agreement for a Financial Associate; and,

Exhibit D        Forbes's Complaint.


Further, Affiant sayeth not.

Sandra D. Grannum


Sworn to on this 14th day of March, 2008

Notary Public

PATRICIA LAIBLE
Notary Public, State of New York
No. 01LA6099417
Qualified in Rockland County
Commission Expires September 29, 20 11

EXHIBIT

A

# Employment Application



**EDWARDS.**

*The Sunshine State*

REDACTED

**Statement of Policy for A.G. Edwards & Sons, Inc.:** There shall be no discrimination based on race, religion, color, sex, age, disability or national origin in any of the Firm's employment practices and procedures, including recruitment and the advertising of position vacancies.

"Edwards" refers to A.G. Edwards & Sons, Inc.

## WHERE DID YOU HEAR OF THE JOB?

☐ Classified advertising (which newspaper)

☐ Community agency (which one)

☐ Employment/placement agency (which one)

☐ State employment service (which state)

☐ School (which one)

☐ Job fair (which one)

☐ Current Edwards employee (name)

☐ Edwards open house (date)

☐ Came on own accord

☒ Other (describe)
Temp Agency
Taylor Hudson

## JOB APPLIED FOR

Kind of work or position applied for:

First choice _Assistant_

Second choice _____

Salary expected _$50,000_

Date available _10,10,04_

☒ Full time   ☐ Part time
☐ Summer    ☐ Temporary

Hours available _40_

Will you work overtime?  ☒ Yes  ☐ No

PERSONNEL

OCT 18 2004

AGE 145—7/04

Forbes, Melissa R

Employment Application    D.O.B  5/19/79    T. Nolan

page

## EMPLOYMENT APPLICATION

Enter all answers legibly and in BLACK INK

We are interested in your qualifications. Help us evaluate your application by filling it out completely and accurately. Print or write legibly.

## GENERAL INFORMATION

| Name (last) | (first) | (middle) | Social Security number | REDACTED |
|---|---|---|---|---|
| Forbes | Melissa | Duane | | |

REDACTED

Employment Application

## EMPLOYMENT/MILITARY BACKGROUND

List below all your employment experience, including military experience, starting with your previous or present employer and working backward. To meet the requirements of the Securities and Exchange Commission (SEC), this record must be a complete listing, including full-time and part-time work, self-employment, and unemployment. Attach an additional sheet if necessary. Do not indicate "see resume."

REDACTED

T. Notan
page

## Employment Application

### READ CAREFULLY BEFORE SIGNING

In this application, "I," "me" and "my" refer to the employee applicant. "Edwards" refers to A.G. Edwards & Sons, Inc.

I understand that in compliance with NYSE Rule 407(b), Edwards normally requires employees to close or transfer to Edwards any securities or commodity accounts they have with other firms or financial institutions.

The data given herein is true and accurate to the best of my knowledge and belief. I understand that this information will be verified, for which purpose I authorize and request any and all of my former employers and any other person to furnish to Edwards, or any agent acting on its behalf, any information they may have concerning my creditworthiness, character, ability, business activities, educational background and general reputation; together with, in the case of former employers, a history of my employment by them and the reasons for the termination thereof. Moreover, I hereby release each such employer and each such other person from any liability of whatsoever nature by reason of furnishing such information to Edwards or any agent acting on its behalf. I agree to accept the decisions of the New York Stock Exchange, Inc. or any other regulatory authority on approval or denial of my employment.

Further, I recognize that I will be the subject of an investigative background report ordered by Edwards, and that I have the right to request complete and accurate disclosure by Edwards of the nature and scope of the investigation requested. I also recognize that my fingerprints will be forwarded to the Federal Bureau of Investigation for comparison with their files of all arrest records, in compliance with S.E.C. Rule 17F-2.

This agreement contains a pre-dispute arbitration clause immediately below. Before signing this agreement, I read and understood the following:

- I am agreeing to arbitrate any dispute, claim or controversy that may arise between myself and Edwards, or a customer, or any other person. This means that I am giving up the right to sue in court Edwards, its subsidiaries or employees or any customer or any other person concerning matters related to or arising from my employment. This includes giving up the right to a trial by jury.

- A claim alleging discrimination, including a sexual harassment claim, in violation of any statute, IS REQUIRED to be arbitrated under this agreement.

- Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

- The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

- The arbitrators do not have to explain the reason(s) for their award.

- The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry, or public arbitrators, as provided by the rules of the arbitration forum in which a claim is filed.

- The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

In consideration of Edwards undertaking the aforementioned investigation and considering my application for employment, I agree that any controversy or dispute, including, but not limited to, claims of wrongful termination, breach of contract, discrimination, harassment, retaliation, infliction of emotional distress, tortious interference with business or contract, federal, state or local statute or ordinance and/or other theory, arising between me and Edwards shall be submitted for arbitration before the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. If neither the New York Stock Exchange, Inc. nor the National Association of Securities Dealers accepts the controversy, dispute or claim, or any portion thereof, for arbitration before either of them, then the non-accepted controversy, dispute or claim shall be submitted for arbitration before the American Arbitration Association pursuant to its Securities Arbitration Rules effective May 1, 1993. I understand that if Edwards hires me, my employment will be subject to the policy of employment at will. Under this policy, I may resign my employment at any time, with or without cause. Edwards retains the same right with respect to the termination of my employment.

I understand that if Edwards employs me, I will be deemed to be a person associated with a member of the NASD. I agree to abide by the rules and regulations of the NASD and any other securities and commodities exchanges of which Edwards is a member, as well as the rules and regulations of Edwards.

I understand that any misstatement of fact or omission of material information required on this application will be grounds for my immediate dismissal.

| Applicant Signature | Date |
|---|---|
| X _Melissa Forbes_ | 10/10/04 |

Applicant (Print Name)
Melissa Forbes

Melissa D. Forbes ✕ Credit/Count Ck'd
Cost Center
2 pages

AGE 145—7/04

Employment Application                                                                         page 5

## QUESTIONS RELATING TO SECURITIES REGULATIONS

SEC regulations require that each of the following questions be answered. **ARREST RECORDS ARE CHECKED WITH THE FEDERAL BUREAU OF INVESTIGATION (FBI).** Arrest records that have been expunged may be reported by the FBI. You may be asked to provide full details along with supporting documentation. **Attach a separate sheet if necessary.**

**1.**  (a)  Are you at present engaged in any other business, either as a proprietor, partner, officer, director, trustee, employee or otherwise? If "yes," give details, including name and address, your title or capacity, nature of business, duties, compensation received, time spent, etc. ......................................................................................................................... ☐Yes ☒No

    (b)  Do you currently hold an insurance license? Give details. ...................................................... ☐Yes ☒No
        Do you currently hold a real estate license? Give details. ...................................................... ☐Yes ☒No

**2.**  (a)  Have you ever been refused a bond by a surety company? ................................................ ☐Yes ☒No

    (b)  Has any surety company paid out any funds on your coverage?  If answer to either (a) or (b) is "yes," answer in space provided. ................................................................................................................ ☐Yes ☒No

**3.**  (a)  Have you ever been registered or licensed to sell or deal in securities or commodities or to function as an investment advisor by any Federal or State agencies or the NASD? If "Yes," give details. ............... ☐Yes ☒No

    (b)  Have you ever been suspended, expelled or otherwise disciplined by any regulatory body or by any such exchange or association; or ever been refused membership therein; or ever withdrawn your application for such membership? ................................................................................................................ ☐Yes ☒No

    (c)  Have you ever been associated with any organization, as a director, controlling stockholder, partner, officer, employee or other representative of a broker-dealer which has been, or a principal of which has been, suspended or expelled from any such exchange or registered association, or was refused membership therein, or withdrew an application for membership; or whose registration as a broker-dealer with the S.E.C. or any State or agency has been denied, suspended or revoked? ................................................................................ ☐Yes ☒No

    (d)  Are you now subject to an order of the N.A.S.D., any national securities exchange or S.E.C. which revokes, suspends or denies membership or registration? ........................................................................ ☐Yes ☒No

    (e)  Have you ever been named as a "cause" in any action mentioned in the preceding questions taken with respect to a broker-dealer? ..................................................................................................... ☐Yes ☒No

    (f)  Have you ever been enjoined, temporarily or otherwise from selling or dealing in securities or commodities or from functioning as an investment advisor? ............................................................................. ☐Yes ☒No

    (g)  Have you ever been a principal or employee of any corporation, firm, or association which was enjoined temporarily or otherwise from selling or dealing in securities or commodities or from functioning as an investment advisor? ................................................................................................................ ☐Yes ☒No

**4.**  Have you been subject to any final order of state securities commission (or any agency or office performing like functions), state authority that supervises or examines banks, savings associations, or credit unions, state insurance commission (or any agency or office performing like functions), an appropriate federal banking agency, or the National Credit Union Administration, that:

    (a)  bars you from association with an entity regulated by such commission, authority, agency, or office, or from engaging in the business of securities, insurance, banking, savings association activities, or credit union activities; or

    (b)  constitutes a final order based on violations of any laws or regulations that prohibit fraudulent, manipulative, or deceptive conduct? ..................................................................................................... ☐Yes ☒No

**5.**  If answer to question 3 or 4 is yes, supply the following information:  Nature of action, action taken by, date of action, name of broker-dealer employed/associated with and nature of your employment/association. Attach separate sheet if necessary.

**6.**  In your previous business connections or employment in any capacity, have transactions under your attention ever been the subject of complaint or legal proceedings? If "yes," give names and details in space provided. ................... ☐Yes ☒No

**7a.**  (1)  Have you ever:

    (a)  been convicted of or pled guilty or nolo contender ("no contest") in a domestic, foreign or military court to any felony? ................................................................................................................ ☐Yes ☒No

    (b)  been charged with a felony? ................................................................................... ☐Yes ☒No

AGE 145—7/04

Employment Application                                                              page 6

   (2)  Based upon activities that occurred while you exercised control over it, has an organization ever:

      (a)  been convicted of or pled guilty or nolo contendere ("no contest") in a domestic or foreign court to any
           felony? ....................................................................................................................................................... ☐Yes ☒No

      (b)  been charged with any felony? .................................................................................................................... ☐Yes ☒No

**7b.** (1)  Have you ever:

      (a)  been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign or military court
           to a misdemeanor involving: investments or an investment-related business or any fraud, false statements or
           omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to
           commit any of these offenses? ................................................................................................................... ☐Yes ☒No

      (b)  been charged with a misdemeanor specified in 7B(1)(a)? ........................................................................ ☐Yes ☒No

   (2)  Based upon activities that occurred while you exercised control over it, has an organization ever:

      (a)  been convicted of or pled guilty or nolo contendere ("no contest") in a domestic or foreign court to a
           misdemeanor specified in 7B(1)(a)? ......................................................................................................... ☐Yes ☒No

      (b)  been charged with a misdemeanor specified in 7B(1)(a)? ........................................................................ ☐Yes ☒No

**8.**  Have you ever been known personally by any other name, or have you ever conducted business in any other name
than that is shown on page two of this application? If "yes," give details including names used and dates of use in space
provided below. Include maiden names and names used from a previous marriage. ............................................... ☐Yes ☒No.

| No. | Number Answers to Correspond to Number of Question(s) Above |
|-----|-----------------------------------------------------------|
|     |                                                           |

Applicant Signature
X *Melisa Jab*                                Date  10/10/04

Applicant *(Print Name)*
*Molissa Corba*

AGE 146—7/04

EXHIBIT

B

# Financial Associate Agreement



EDWARDS.

One North Jefferson
St. Louis, MO 63103

In the event A.G. Edwards & Sons, Inc., a corporation formed under the laws of the state of Delaware ("Edwards"), accepts your application for employment and registration with the New York Stock Exchange, Inc., and the National Association of Securities Dealers, Inc. as a Financial Associate for Edwards, and if you accept employment with Edwards, you will be an employee at will of Edwards, and your employment may be terminated with or without cause and with or without notice. In consideration of such acceptance and employment, you agree that:

**1.** So long as you serve as an employee of Edwards, you will act only in Edwards' best interest. For that purpose, you will perform your work competently and diligently; and you will observe all directions given by officials of Edwards, all policies announced by Edwards, all regulations and procedures prescribed in Edwards' Policy and Procedures Manuals and other manuals as from time to time are altered or issued, and all applicable rules of regulatory authorities. You will conduct yourself as a loyal and faithful employee of Edwards, and you will in no event take any action which could harm Edwards' business or its relationships with its customers/clients.

**2.** NOTHING HEREIN IS A PROMISE OF EMPLOYMENT FOR A FIXED TERM. Edwards may terminate your employment for any reason or for no reason, just as you may resign at any time.

**Business Practices**

**3.** Prior to your registration by the proper authorities, including state authorities, you will not solicit, receive or transmit, directly or indirectly, any order in any security and/or insurance product and/or commodity.

**4.** In the event that prior to your proper registration any person or firm wishes to place an unsolicited order or transaction through you, you will not accept such an order or transaction nor will you transmit the order or transaction to your branch manager or a Financial Consultant. You will, instead, refer such person to the manager of the office.

**5.** After your registration, you will confine your solicitations to and accept orders only from residents of the states where Edwards is a registered broker/dealer and you are registered as a salesperson for Edwards. You agree that it is your responsibility to contact the St. Louis office of Edwards to determine the registration status of a security in a given state before effecting transactions in that security in that state, and you will not effect any transactions in any security in any state unless such security is registered under the securities law of that state or exempt from such registration or unless such transaction is itself exempt from such law.

In the event you become licensed as an insurance agent, Financial Consultant or solicitor, you will confine your solicitations and insurance business to states where Edwards or an Edwards' subsidiary or affiliated company or agency is properly licensed for the product and/or insurance company involved, and where you are properly licensed for the product and insurance company involved.

In the event new insurance, securities or commodities products are offered by Edwards that require separate licensing, registration or testing prior to the sale thereof, you agree that you will not offer or sell any such products until and unless you are properly licensed, registered or tested for said product.

**6.** In the event you become licensed to solicit and sell insurance products, you will not solicit or sell any product of any insurance company not approved by Edwards and/or an Edwards' subsidiary or an affiliated company or agency.

**7.** In dealing with customers/clients of Edwards, you will make no representation that relates to a security not properly registered (or exempted) under the Securities Act of 1933, or which is so incomplete as to be misleading, or which is not based on facts appearing in generally recognized statistical and financial publications, manuals and financial sections of newspapers or available to the public in general. You are not authorized to waive any provision of Edwards' Customer/Client's Agreement or its margin requirements.

**8.** You will not take or receive, directly or indirectly, a share in the profits of any account of a customer/client, or share in any losses sustained in any such account. You will not borrow money or securities from a customer/client of Edwards unless the customer/client is a financial institution engaged in the business of loaning funds or securities.

**9.** You will not, without Edwards' prior written permission, effect a cash or margin transaction or maintain a cash or margin account in securities or commodities, or have any direct or indirect financial interest in any such transaction or account, except with or through Edwards.

**10.** In connection with any underwriting, you understand that you may solicit and accept indications of interest from the public in securities to be sold between the time of the filing of the Registration Statement with the Securities and Exchange Commission covering such securities and the effective date of the offering. The only printed matter that you will use to solicit such indications of interest is a current preliminary prospectus. If you should distribute such a preliminary prospectus to the public, you will send a revised preliminary prospectus. You will not confirm orders or promise stock on the basis of preliminary allocations made by Edwards' Syndicate Department.

**11.** You will not in any way represent to any customer/client in connection with any security, commodity or insurance transaction that you or Edwards will indemnify the customer/client against loss.

**12.** You will not rebate, directly or indirectly, to any person, firm or corporation any part of the compensation you may receive from Edwards or an Edwards' subsidiary or affiliated company or agency, and you will not pay any part of such compensation directly or indirectly to any person, firm or corporation as a bonus, commission, fee or other consideration in connection with any securities, commodities and/or insurance business sought by, handled by, or procured for you or Edwards or any subsidiary or affiliated company or agency of Edwards.

**13.** Without Edwards' prior written permission, you will not (i) personally lend money or in any manner grant credit to any customer/client of Edwards or (ii) participate in the arrangement of credit for such customer/client outside of the facilities of Edwards or (iii) become personally liable, directly or indirectly, on any evidence of indebtedness executed by any customer/client of Edwards in favor of a creditor of such customer/client or (iv) arrange for the extension or maintenance of credit for the purchase of securities in your own or family securities accounts on better terms than could be offered by Edwards. You also affirm that you are not now in violation of Regulation T of the Federal Reserve Board with respect to securities positions you hold and that you have listed all of your securities or commodities accounts on Schedule A annexed hereto.

**Employment Practices**

**14.** You will become familiar with and abide by the rules and regulations of Edwards, the National Association of Securities Dealers, Inc., the New York Stock Exchange, Inc. and other securities and commodities exchanges of which Edwards is a member. You will also become familiar with and abide by the laws and regulations relative to the securities and/or commodities business of the federal government and of the state or states where you are a registered salesperson. In the event you become registered to sell insurance products, you will become familiar with and abide by the laws and regulations relative to the insurance business of the state or states where you are a registered insurance salesperson.

**15.** You will use the communication equipment provided by Edwards and the programs and services on that equipment for official business purposes only. The communication equipment includes, but is not limited to, e-mail, wires, voice mail, Internet access, facsimile machines, telephones and computers. You acknowledge that you are not entitled to any expectation of privacy when using the communication equipment, programs or services provided by Edwards and the programs and services on that equipment.

**16.** You understand and agree that as part of Edwards' duty to supervise your activities in accordance with the Constitution and Rules of the New York Stock Exchange, Inc., the National Association of Securities Dealers, Inc., and the various commodity exchanges and applicable federal and state securities laws, you will, at any time upon Edwards' request, appear before

AGE 445—12/04

an Edwards' officer, committee or person designated by Edwards and give full information upon any subject that relates to such of your activities as are subject to Edwards' supervision, and you will produce, upon Edwards' request, all of your records or documents, including but not limited to, personal bank statements and the like, relative to Edwards' inquiry.

**17.** You will clear any business correspondence written by you (including any handwritten memoranda and notes) with your branch manager prior to mailing such correspondence and retain duplicate copies of all such correspondence. All e-mails, electronic transmissions and faxes relating to the business of Edwards or are sent or received using equipment of Edwards shall be sent or received only in accordance with Edwards policies and procedures.

**18.** Without Edwards' prior consent you will not (i) conduct any television or radio broadcasts with reference to the securities, commodities or insurance business in general or any particular security, commodity or insurance product, (ii) send out any advertisements, reports or market letters relating to any security, commodity or insurance product that has not been approved by Edwards or (iii) publish in any manner any report or article written by you with reference to the securities, commodities or insurance business in general or any particular security, commodity or insurance product.

**18.** You will devote your efforts solely to the business of Edwards and Edwards' subsidiary or affiliated companies and agencies, and, unless prior written approval is granted by Edwards, you will not engage in any other business, occupation, job, work or employment during your employment by Edwards, including, but not limited to, officerships or directorships in any company.

**20.** Unless prior written approval is granted by Edwards, you will not participate, directly or indirectly, in any security, commodity or insurance transaction which will not be processed through the facilities of Edwards or an Edwards' subsidiary or affiliated company or agency; nor will you, without Edwards' prior written permission, effect a cash or margin transaction or maintain a cash or margin account in securities or commodities, or have any direct or indirect financial interest in any such transaction or account, except with or through Edwards; nor will you, without Edwards' prior written permission, act on behalf of any party other than Edwards or an Edwards' subsidiary or affiliated company or agency in any matter. You will not contract or incur any indebtedness in the name of Edwards.

**21.** You will not take, accept or receive, directly or indirectly, from any person, firm, corporation or association other than Edwards, or a subsidiary or affiliated company or agency of Edwards, compensation of any nature in connection with any securities, commodities or insurance transaction or transactions, except with the prior written consent of Edwards.

**22.** You shall not discriminate or harass another individual on the basis of race, color, religion, sex, age, national origin, disability, or any characteristic protected by law. Nor shall you retaliate against any individual who has expressed concerns about an occurrence of discrimination or harassment. If you

engage in such conduct, you shall bear full responsibility for such conduct and will indemnify and hold Edwards harmless against any and all expenses and liabilities suffered by Edwards as the result of such conduct.

**23.** You will notify Edwards promptly if, during your employment, you become involved in any litigation or if any judgments are adjudicated against you; or if your registration or license to sell or deal in securities, commodities and/or insurance or to function as an investment advisor is ever refused, suspended or revoked; or if you become enjoined, temporarily or otherwise, from selling or dealing in securities, commodities and/or insurance or from functioning as an investment advisor; or if you are arrested, summoned, arraigned, or indicted for a criminal offense; or if you become involved in bankruptcy proceedings.

**24.** Both during and after the time you serve as an employee of Edwards, you will not divulge to any person any information received during the course of your employment concerning the business of the firm and its financial affairs.

**25.** In the event you subsequently wish to be registered with Edwards as a Financial Consultant, you agree that (a) you will give six (6) months' notice prior to formally applying to be a Financial Consultant; (b) you will accept and handle only those customer/client accounts approved by your branch manager; (c) you will execute the appropriate Edwards' Supplementary Training Agreement for a Financial Consultant; and (d) you will participate in the Edwards' Financial Consultant sales training program or other training program prescribed by Edwards' Training Department. You understand and agree that you shall not apply to be a Financial Consultant prior to twenty-four (24) months of continuous employment without your branch manager's approval.

**Compensation**

**26.** Your compensation will be based upon a salary and, in particular situations, a portion of the credit for the commissions or fees generated by accounts serviced by you at the prevailing rate at the office at which you are employed less debits for certain items, including losses arising from transactions undertaken by customers/clients whose accounts are serviced by you, losses from settlements, awards or judgments arising in connection with customer/client complaints, extension charges, account debit balances, loss chargebacks, drafting charges, etc., in accordance with Edwards' established policies. Your compensation credit is conditioned upon your continued employment with Edwards at the time such commissions or fees are paid and received by Edwards and your continued employment with Edwards at the time such commissions or fees are earned and no longer subject to refund by Edwards. In the event the purchaser of any insurance or annuity or contractual plan shall cease making the regular premium or investment payments thereon or shall cancel or surrender such policy or contract, any commissions or credits received thereon that are refundable to the insurance company or other issuer shall be immediately repaid by you to Edwards. In the event a customer/client shall cease making the regular fee payments

for any fee-based account, managed or otherwise, or shall cancel or terminate any fee-based agreement, any fees or credits received thereon that are refundable to the customer/client shall be immediately repaid by you to Edwards.

**Records and Documents**

**27.** All records and documents, whether original, duplicated, computerized, memorized, handwritten, or in any other form, and the information contained thereon, concerning the business and affairs of Edwards, including without limitation the names, addresses, telephone numbers, financial information, and assets and obligations carried in any account of any customer/client, customer/client lead or prospect ("Account") and the books, papers, records and recordings furnished to you during your training program, are confidential and are the sole and exclusive property of Edwards. These records, documents and information, whether provided to you by Edwards or by any Account, is entrusted to you as an employee and representative of Edwards. You will not use or remove any documents, records or information from the Edwards office except for the sole purpose of conducting business on behalf of Edwards. You agree not to divulge or disclose these records, documents or information to any third party and, under no circumstances, will you reveal or permit these records, documents or information to become known to any individual or organization that does business in securities, commodities and financial futures, insurance or any other lines of business in which Edwards or any of its affiliates are engaged.

These records, documents and information are not generally known outside Edwards and are kept confidential within Edwards. This information was acquired by a great expenditure of time, effort and money, is unique and cannot be lawfully duplicated or easily acquired. You agree that these records and documents are the property of Edwards and deserve trade secret protection.

**Termination**

**28.** Edwards may terminate your employment at any time without prior notice with or without cause. Upon your termination for any reason whatsoever, Edwards shall be liable to you only for salary earned and not paid prior to the effective date of the termination less any debits or charges in accordance with Edwards' established policies or any debts you owe Edwards.

**29.** In the event that your employment with Edwards ends at any time either through termination by Edwards or through resignation by you, you will surrender all training materials, account records, customer's/client's statements and customer's/client's files to Edwards, and you agree, in such event, that such termination or resignation, as the case may be, will constitute the forfeiture by you of your right, if any, to receive any commission on transactions effected, insurance business placed or plan payments made subsequent to the date of such termination or resignation.

**30.** With respect to contractual plans, insurance sales, management programs and fee-based accounts, you agree to repay any portion of the commissions or fees received by you that are in excess of the commissions or fees earned by Edwards or Edwards' subsidiary or affiliated company or agency should the

Financial Associate Agreement  —                                              page 4

purchaser or customer/client cease making regular premium, investment, installment or fee payments or cancel or surrender the policy, contract or account. In the event of your termination from Edwards, you will refund the amount of any portion of the prepaid but unearned commissions or fees received by you that exceed the actual commissions or fees received by Edwards at the time of your termination or resignation. You agree that you have no interest in, title to or claim for any commissions or fees received by Edwards after the time of your termination or resignation.

**31.** You will not recruit, entice, induce or solicit, directly or indirectly, during your employment with Edwards or for a period of one year following your termination of employment by Edwards, any employee of Edwards or any of its affiliates for employment with any other organization that does business in securities, commodities and financial futures, insurance or any other lines of business in which Edwards or any of its affiliates is engaged.

**32.** If, at any time you resign from Edwards, provoke your termination, or are terminated for cause, you agree that for a period of one year following your termination, you will not solicit by mail, by phone, by personal meeting, or by any other means, either directly or indirectly, any Account whom you served or whose name became known to you during your employment at Edwards at any office and in any capacity. Your agreement "not to solicit" means that you will not, during your employment and thereafter, initiate any contact or communication of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account to transfer from Edwards to any other person or organization that does business in securities, commodities and financial futures, insurance or any other lines of business in which Edwards or any of its affiliates is engaged, to open a new account with any such person or organization, or to otherwise discontinue its business relationship with Edwards.

**Hold Harmless**

**33.** You will indemnify and hold Edwards harmless from any and all losses suffered by Edwards as a result of the violation by you of any of the aforesaid agreements, any loss from transactions in Accounts serviced by you, any settlements, awards or judgments arising from complaints by customers/clients serviced by you. Both during and after the time you serve as an employee of Edwards (no matter what the reason for termination of your employment), Edwards may find it reasonable in the circumstances to charge you with the amount of any losses or liabilities incurred by the firm as a result of errors, rule violations or violations of Edwards' policy, transactions in Accounts serviced by you or settlements, awards or judgments to customers/clients serviced by you while you were an Edwards employee. In that event, you undertake to promptly pay Edwards the full amount assessed against you by Edwards.

**Arbitration**

**34.** This agreement between you and Edwards contains a predispute arbitration clause in the numbered paragraph immediately following this paragraph. You should read that paragraph now. Before signing this Agreement, you should understand the following:

- You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer/client, or any other person. This means that you are giving up the right to sue in court Edwards, its subsidiaries or employees or any customer/client or any other person concerning matters related to or arising from your employment. This includes giving up the right to a trial by jury.

- A claim alleging employment discrimination, including a sexual harassment claim, in violation of any statute, IS REQUIRED to be arbitrated under this agreement.

- Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

- The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

- The arbitrators do not have to explain the reason(s) for their award.

- The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry, or public arbitrators, as provided by the rules of the arbitration forum in which a claim is filed.

- The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

**35.** Except as provided in paragraph 36, you agree that any controversy or dispute, including, but not limited to, claims of wrongful termination, breach of contract, discrimination, harassment, retaliation, infliction of emotional distress, tortious interference with business or contract, federal, state or local statute or ordinance and/or other theory, arising between you and Edwards shall be submitted for arbitration before the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. If neither the New York Stock Exchange, Inc. nor the National Association of Securities Dealers accepts the controversy, dispute or claim, or any portion thereof, for arbitration before either of them, then the nonaccepted controversy, dispute or claim shall be submitted for arbitration before the American Arbitration Association pursuant to its Securities Arbitration Rules effective May 1, 1993.

**Enforcement**

**36.** In the event you breach any of the covenants of paragraphs 27, 31 or 32, you agree that Edwards will be entitled to injunctive relief. You recognize that Edwards will suffer immediate and irrefutable harm and that money damages will not be adequate to compensate Edwards or to protect and preserve the status quo. Therefore, you consent to the issuance of a temporary restraining order or a preliminary or permanent injunction ordering:

AGE 445—12/04

Financial Associate Agreement                                                                 page 5

(a) that you immediately return to Edwards all records or documents whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that you be enjoined and restrained from using or disclosing any such records or documents, and;

(b) that you be enjoined and restrained from soliciting any Account that you served or whose name became known to you while employed by Edwards in any office or in any capacity, and;

(c) that you be enjoined and restrained from accepting business from any Account who was solicited in violation of paragraph 30 or whose records and information was used in violation of paragraph 25, and;

(d) that you be further enjoined and restrained from recruiting, enticing, inducing or soliciting, directly or indirectly, any employee of Edwards or any of its affiliates, for employment with any other organization that does business in securities, commodities and financial futures, insurance or any other lines of business in which Edwards or its affiliates is engaged.

The above restraints shall apply to each and every Account whom you served or whose name became known to you while employed at Edwards, in any office and in any capacity.

**37.** For the purposes of paragraph 34, you agree to submit to, and confer exclusive jurisdiction on, the United States District Court or State Court that has original jurisdiction for the judicial district or county in which you last worked for Edwards.

**Attorney's Fees and Costs of Enforcement**
**38.** In the event of the breach of any of the provisions of this agreement or any provisions of any other agreement between you and Edwards, you agree to pay any and all costs and fees including, but not limited to, the reasonable attorney's fees incurred by Edwards in connection with the enforcement of the provisions of this agreement or any other agreement between you and Edwards.

**Miscellaneous**
**39.** YOU ACKNOWLEDGE HAVING READ AND REVIEWED THIS AGREEMENT AND THE RESTRICTIVE COVENANTS IN THEIR ENTIRETY. You acknowledge having been given an opportunity to ask questions about it. You have also been given an opportunity to consult with an attorney of your choice. You agree that you fully understand the terms of this document and knowingly and freely agree to abide by them.

**40.** YOU ACKNOWLEDGE THAT YOU HAVE AN ADDITIONAL THIRTY (30) DAYS FROM THE DATE YOU SIGNED THIS AGREEMENT TO CONTINUE TO REVIEW IT AND SEEK LEGAL COUNSEL. At any time within this thirty (30) days, you may rescind this Agreement by discontinuing your employment with Edwards without any of the provisions herein being enforced against you. To the contrary, however, if you continue your employment with Edwards beyond said thirty (30) days, your continuation of employment will constitute your ratification and complete acceptance of this agreement.

**41.** The terms of your employment and these standard provisions will enure to the benefit of, and be binding upon, both you and Edwards and our respective successors and assigns. This Agreement shall be governed by and construed in accordance with the laws of the state of Missouri even though you are not, or cease to be, a resident or employee in that state.

**42.** "insurance," "insurance products" and "insurance policies" shall include any and all products, contracts, policies, services or securities offered by or sold through an insurance company, including, but not limited to, all annuities, fixed or variable, retirement plans, Keogh plans, individual retirement accounts and annuities, life insurance, health insurance, accident insurance, liability insurance, and all other forms of insurance now or hereafter offered by an insurance company. "Insurance transactions" shall include the purchase or sale of any of the above. "insurance commissions" shall include any monies paid by insurance companies or other parties as consideration for the purchase or sale of any of the above.

**43.** If any provisions of this Agreement shall, for any reason, be adjudged to be void, invalid or unenforceable by an arbitrator or arbitration panel, a regulatory body or a court of law, the remainder of this Agreement shall nonetheless continue and remain in full force and effect.

**Sign and return this Agreement to signify your acceptance of the foregoing terms and conditions.**

**A.G. EDWARDS & SONS, INC.**

**Agreed to and accepted**

Financial Associate Signature _____ Date
X _Melissa Forbes_
(Printed Name):
_Melissa Forbes_
Branch Office
_649_

AGE 445—12/96

Financial Associate Agreement



AGE 445—12/04

EXHIBIT

C

# Supplementary Training Agreement for a Financial Associate

**A.G.Edwards**

One North Jefferson
St. Louis, MO 63103

In the event A.G. Edwards & Sons, Inc., a corporation formed under the laws of the state of Delaware ("Edwards"), accepts your application for employment and registration with the New York Stock Exchange, Inc. and the National Association of Securities Dealers, Inc. as a financial associate representing Edwards, you and Edwards agree that this employment may be terminated at any time by either party with or without cause and with or without notice.

In consideration of such acceptance and employment, you agree that:

You require specialized knowledge and skills to perform the duties of a financial associate, which you do not presently possess. You recognize that Edwards will incur significant expense in training and educating you as a financial associate and will disclose to you its business methods and procedures, training and operational manuals and other items and information which are the property of Edwards and which enable Edwards to compete successfully as a broker/dealer. As a major inducement for the disclosures to be made, and the employment and training to be given to you by Edwards and recognizing that it is difficult, if not impossible, to determine the damage to Edwards that may arise in the event you should choose to terminate your employment with Edwards, you agree that:

**1.** You have an obligation to Edwards for the salary, training and other benefits you receive during the training period and the post-licensing period, and you agree that $10,000 is a reasonable estimation of these costs. You and Edwards agree that the obligation will be satisfied upon the earliest occurrence of one of the following:

(a) Thirty-six (36) months of continuous employment with Edwards from the date of your registration; or

(b) The payment by you of the amount of $10,000 to Edwards.

**2.** You agree that in the event you breach the provisions set forth in paragraph 1, Edwards shall be entitled to monetary damages equal to $10,000, plus interest on such amount at the rate of 10% per annum from the date of your termination until payment in full of your obligation, plus reasonable attorney's fees and all other costs and expenses of collection. You further specifically agree that all money, securities, commodities, other property, commissions or other income earned by you but held or carried by Edwards shall be subject to a general lien in Edwards' favor and to the right of setoff for the partial or complete discharge of this obligation. Said general lien and right of setoff shall be in addition to and not in substitution of any rights and remedies Edwards would otherwise have.

**3.** This agreement between you and Edwards contains a predispute arbitration clause in the numbered paragraph immediately following this paragraph. You should read that paragraph now. Before signing this agreement, you should understand the following:

- You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer/client, or any other person. This means that you are giving up the right to sue in court. Edwards, its subsidiaries or employees or any customer/client or any other person concerning matters related to, or arising from your employment. This includes giving up the right to a trial by jury.

- A claim alleging employment discrimination, including a sexual harassment claim, in violation of any statute, IS REQUIRED to be arbitrated under this agreement.

- Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

- The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

- The arbitrators do not have to explain the reason(s) for their award.

- The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry, or public arbitrators, as provided by the rules of the arbitration forum in which a claim is filed.

- The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

**4.** You agree that any controversy or dispute, including, but not limited to, claims of wrongful termination; breach of contract; discrimination; harassment; retaliation; infliction of emotional distress; and tortuous interference with business or contract or federal, state, or local statute or ordinance and/or other theory arising between you and Edwards shall be submitted for arbitration before the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. If neither the New York Stock Exchange, Inc. nor the National Association of Securities Dealers, Inc. accepts the controversy, dispute or claim, or any portion thereof, for arbitration before either of them, then the nonaccepted controversy, dispute or claim shall be submitted for arbitration before the American Arbitration Association pursuant to its Securities Arbitration Rules effective May 1, 1993.

Supplementary Training Agreement for a Financial Associate                                        page 2

**5.** In the event of the breach of any of the terms of this agreement, you shall pay any and all costs and fees incurred by Edwards in connection with the enforcement of the terms of this agreement, including, but not limited to, Edwards' reasonable attorney's fees.

**6.** You specifically understand that Edwards reserves any and all rights of action it may have against any person or entity that may cause or induce a breach of this agreement.

**7.** In the event that

(a) The office of Edwards to which you are attached is closed; or

(b) Your employment is terminated by Edwards and such termination is not provoked by you because of your agreement, intention or plan to violate any of the terms of this agreement; or

(c) Your employment with Edwards is terminated for whatever reason and you do not become employed with or for any individual or organization that does business in securities, commodities or financial futures, insurance or any other lines of business in which Edwards or any of its affiliates is engaged for a period of thirty-six (36) months from the date of your registration; or

(d) You are employed by Edwards continuously for a period of thirty-six (36) months from the date of your registration,

the provisions of this agreement shall not apply. A change in the office location shall not be deemed a closing of the office for purposes of this paragraph.

**8.** If any provisions of this agreement shall, for any reason, be adjudged to be void, invalid or unenforceable by an arbitrator or arbitration panel, a regulatory body or a court of law, the remainder of the agreement shall nonetheless continue and remain in full force and effect.

**9.** This agreement shall inure to the benefit of Edwards, its affiliates, and any successor in interest to the business of Edwards, whether through merger, acquisition, sale or other transfer.

**10. NOTHING HEREIN IS A PROMISE OF EMPLOYMENT FOR A FIXED TERM.** Edwards may terminate your employment for any reason or for no reason, just as you may resign at any time.

**11. YOU ACKNOWLEDGE HAVING READ AND REVIEWED THIS AGREEMENT AND THE RESTRICTIVE COVENANTS IN THEIR ENTIRETY.** You acknowledge having been given an opportunity to ask questions about it. You have also been given an opportunity to consult with an attorney of your choice. You agree that you fully understand the terms of this document and knowingly and freely agree to abide by them.

**12. YOU ACKNOWLEDGE THAT YOU HAVE AN ADDITIONAL THIRTY (30) DAYS FROM THE DATE YOU SIGNED THIS AGREEMENT TO CONTINUE TO REVIEW IT AND SEEK LEGAL COUNSEL.** At any time within this thirty (30) days, you may rescind this agreement by discontinuing your employment with Edwards without any of the provisions herein being enforced against you. To the contrary, however, if you continue your employment with Edwards beyond said thirty (30) days, your continuation of employment will constitute your ratification and complete acceptance of this agreement.

**SIGN AND RETURN THIS AGREEMENT TO SIGNIFY YOUR ACCEPTANCE OF THE FOREGOING TERMS AND CONDITIONS.**

**A.G. EDWARDS & SONS, INC.**

Agreed to and accepted

Financial Associate Signature                          Date
X _Melissa Forbes_

Financial Associate (Print Name)
_Melissa Forbes_

Branch Office
_6?_

EXHIBIT

D

01/30/2008 16:52 FAX 732 888 2780        RUDNICK, ADDONIZIO, PAPPA,                              ☒013



RUDNICK, ADDONIZIO & PAPPA
A Professional Corporation
25 Village Court
Hazlet, New Jersey 07730
(732) 264-4400    File No. L-9536-CZ
Attorneys for Plaintiff

08 CV 00552

MELISSA D. FORBES,

  Plaintiff,

v.

A.G. EDWARDS & SONS, INC., WACHOVIA
SECURITIES, LLC, WACHOVIA
CORPORATION, and DOUGLAS L. PEARL,

Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAN 2 2 2008

U.S.D.C. S.D.N.Y.
CASHIERS

Civil Action

COMPLAINT AND
DEMAND FOR JURY TRIAL

Plaintiff, Melissa D. Forbes (hereinafter referred to as "Forbes") an individual presently residing in the City of New York, County of New York, and State of New York, by way of Complaint against the defendants A.G. Edwards & Sons, Inc. (hereinafter referred to as "A.G. Edwards"), Wachovia Securities, LLC (hereinafter referred to as "Wachovia), Wachovia Corporation (hereinafter referred to a "Wachovia Corp."), Douglas L. Pearl (hereinafter referred to as "Pearl"), herein says as follows:

## JURISDICTION

1.    Jurisdiction of the Court is invoked under the provisions of 28 USC § 1332, federal diversity jurisdiction. The court has supplemental jurisdiction over plaintiff's State law claims pursuant to 28 USC § 1367(a).

## THE PARTIES

2.    Plaintiff Forbes is a female who began her employment with A.G. Edwards in September 2004, in a temporary capacity. She was ultimately hired on a full-time basis on

October 12, 2004, in the title of Financial Associate. She ultimately became a Registered Financial Associate in the beginning of 2006. She was employed in A.G. Edwards Manhattan office located at 280 Park Avenue, New York, New York. During her tenure of employment with A.G. Edwards, Forbes discharged all duties assigned to her competently and enjoyed an excellent reputation with regard to the quality of her work and with regard to her conscientious devotion to her job.

     3.     Defendant A.G. Edwards is a national securities brokerage firm with its corporate headquarters in the State of Missouri, which has been in existence in some form since at least 1887. Presently, A.G. Edwards employs in excess of 7,000 financial consultants and has approximately 700 offices nationwide and in Europe. Recently A.G. Edwards has become a division of defendant Wachovia, which is headquartered in the State of Virginia, which is a subsidiary of defendant Wachovia Corp., which is headquartered in the State of North Carolina. At all times relevant hereto, plaintiff was employed by A.G. Edwards.

     4.     Defendant Pearl is a resident of the State of Massachusetts. At all times relevant hereto, Pearl was an employee of A.G. Edwards, was a member of A.G. Edwards upper management in the position of Institutional Sales Manager, and was otherwise in charge of institutional equity sales for A.G. Edwards. He worked in A.G. Edwards Manhattan offices.

### FACTUAL BACKGROUND

     5.     Forbes began her employment with A.G. Edwards as a Financial Associate on October 12, 2004. She thereafter obtained her Series 7 in November 2005 and her Series 66 in the beginning of 2006, and accordingly, her official job title became Registered Financial Associates. As part of her application process with A.G. Edwards, plaintiff was forced to sign a Financial Associate Agreement, which contained a mandatory arbitration clause. Thereafter,

prior to becoming registered with the New York Stock Exchange ("NYSE") and National Association of Security Dealers (NASD), plaintiff was compelled to sign a Uniform Application for Securities Industry Registration (Form U-4). Plaintiff had no choice about whether to sign the Form U-4 if she wished to be registered and work in the industry; she was required to sign the Form U-4 without exception. Form U-4 requires mandatory arbitration of employment discrimination claims.

6.    In or about July 2006, defendant Pearl began his employment with A.G. Edwards in the position of Institutional Sales Manager, and accordingly, was a member of upper management of A.G. Edwards.

7.    As part of Forbes' job duties and responsibilities with A.G. Edwards, plaintiff attended a Retail Conference in Miami, Florida, which occurred from January 21 – 23, 2007. Pearl, as well as multiple other members of management, other employees and clients of A.G. Edwards also attended the aforementioned Retail Conference. After attending the Conference presentations during the second day of the conference, January 22, 2007, a group of A.G. Edwards' employees attended a group dinner and continued to socialize after dinner at a different establishment. From that point forward during the evening of January 22, 2007, and into the early morning hours of January 23, 2007, defendant Pearl engaged in a course of sexually harassing and otherwise discriminatory conduct towards Forbes, which included the use of profane language, sexually inappropriate language, the use of obscenities, and physically abusive and/or sexually assaultive conduct.

8.    Defendant Pearl also spoke openly of his powerful status at A.G. Edwards and openly spoke of his upset with the brokers who Forbes worked under, as well as his ability to

3

hire and fire anyone that he desired.  By way of example, althou h not an exhaustive list, some of Pearl's comments to this effect are as follows:

(a)  Pearl openly expressed that he was upset with brok rs that Forbes worked under;

(b)  Pearl stated that he felt the entire sales team did not ta :e him seriously;

(c)  Pearl stated that the institutional sales brokers that For es worked fo "should fear him", that "they didn't know who they were dealing with" and that "things were going to change in a big way;"

(d)  Pearl stated that "no one is safe" and stated that he  as "cleaning up" as it referred to the job security of said brokers.

9.    Simultaneous to the comments being made in t e preceding paragraph, Pearl stated that he needed an assistant in his office and that he wanted Forbes to come work for him as his assistant.  He asked how much she was paid and told her th t if she came to work for him, he would triple her salary.  He further told her that he was plaintiff's bosses' boss, and that he could take their assistant if he wanted to.

10.   In addition, simultaneous to the comments made  bove and in the course of the same conversation, defendant Pearl spoke of his divorce from hi ex-wife and asked Forbes if she was good at interior decorating and asked if she could h m decorate his apartment and house.  Pearl made further statements towards Forbes includin ; but not limited to, to the following:

(a)  While ogling Forbes, Pearl stated to plaintiff that he  ished that they didn't work together;

4

(b) Pearl continuously suggested that they go out by the hotel pool and look at the stars together, and refused plaintiff's request to allow a fellow female employee to come with them;

(c) Pearl admitted to plaintiff that earlier in the evening, a fellow employee and broker by the name of Gordon Lai, had told Pearl that he should "back off of plaintiff," and in that context asked plaintiff if she could believe that Mr. Lai would say such a thing to him since he could have him fired;

(d) Pearl stated to plaintiff that he felt they had great chemistry and that from the moment he saw her, he knew they were good for each other.

11.      Ultimately, in the early morning hours of January 23, 2007, Pearl subjected plaintiff to inappropriate and unwelcome physical advances, including kissing plaintiff over her objection.

12.      Thereafter, Pearl insisted that plaintiff accompany him to his hotel room, to which the plaintiff objected. Pearl fraudulently lured plaintiff to his hotel room by telling plaintiff that he wanted to speak to her about work-related matters, including the Retail Conference and that nothing inappropriate would take place.

13.      Immediately upon entering the hotel room, Pearl physically attacked the plaintiff, attempting to kiss her, to which plaintiff pulled away and excused herself from the room to the bathroom in an attempt to compose herself.

14.      She exited the bathroom to find Pearl completely undressed, at which time he physically grabbed plaintiff, forced his hand up plaintiff's skirt, grabbed her breasts while saying that they should "pretend for one night that we don't work together." Forbes objected and continued to physically pull away, at which time Pearl grabbed plaintiff's hand and placed it on

his naked genital area and used explicitly profane and vulgar language toward her. Plaintiff physically pushed herself away, yelled "stop," and fled Pearl's hotel room.

15.    At all times relevant hereto, the inappropriate, abusive and assaultive behavior, as aforesaid, was unwelcome and objected to by plaintiff Forbes.

16.    Upon returning to work from the Retail Conference, Pearl engaged in a continued course of harassing conduct consisting of e-mails and phone calls in an attempt to get plaintiff to speak with him, and when he did speak with her, he continued with inappropriate language towards Forbes.

17.    Upon information and belief, Pearl has engaged in sexually harassing, discriminating, and/or other inappropriate conduct towards other female employees at A.G. Edwards predating this conduct towards the plaintiff herein.

18.    The conduct of Pearl not only intimidated plaintiff by placing her in fear of her job security, his conduct also suggested that he would reward her if she were to consent to his advances. Said conduct was humiliating, intimidating and demeaning, and otherwise created a hostile and offensive work environment.

19.    Ultimately, based upon all of the conduct as set forth above, plaintiff was forced to resign from her position of employment with A.G. Edwards in August 2007.

20.    A.G. Edwards' management directed, encouraged and participated in the above-described unlawful conduct. Further, A.G. Edwards allowed the discrimination and retaliation to exist so as to amount to a policy or practice of A.G. Edwards.

21.    The mandatory arbitration provisions of plaintiff's Financial Associate Agreement, as well as her Form U-4, are against public policy, serve no public function, provide

6

no public benefit, are contracts of adhesion, and are unenforceable under the law. Further, there was no consideration for the requirement of plaintiff to execute said Agreements.

## COUNT I

## DECLARATORY JUDGMENT

## MANDATORY ARBITRATION OF DISCRIMINATION CLAIMS DEPRIVES PLAINTIFF OF HER DUE PROCESS OF LAW

22.      Plaintiff realleges paragraphs 1 – 21 and incorporates them by reference as paragraphs 1-21 of Count I of this Complaint.

23.      The Fifth Amended to the United States Constitution, applicable to actions of the Federal government, guarantees due process of law to the plaintiff

24.      The system of mandating arbitration of employment discrimination claims constitutes action of the Federal government because of:

(a) the plenary regulation of the exchanges by the Federal Securities Acts;

(b) the extensive delegation of regulatory power by the SEC to the exchanges as self-regulatory organizations;

(c) the encouragement given by the SEC to the exchanges to require employees in the securities industry to arbitrate their employment disputes with their employers;

(d) the permission granted by the SEC to the exchanges to modify their rules and regulations to require arbitration of all employment disputes;

7

(e) the approval given by the SEC to the specific arbitration procedure utilized by the exchanges;

(f) the exercise of the judicial power by arbitrators in hearing and deciding statutory and common law disputes in the Securities Industry, which power has traditionally been an exclusive function of federal and state courts;

(g) the action of the courts in enforcing contracts of adhesion by compelling arbitration of employment disputes in the Securities Industry against the will of Securities Industry employees; and

(h) the action of the courts in confirming arbitration awards in employment disputes where the dispute was arbitrated against the will of Securities Industry employees.

25.     Compelling mandatory arbitration in the present case would be unconstitutional because it would deprive plaintiff of her rights to a jury trial under the Seventh Amendment and under the 1991 Civil Rights Act.

26.     Requiring employees to waive their constitutional and statutory rights to a jury trial as a condition of employment imposes an unconstitutional condition on employment, in violation of the due process guarantees of the Fifth Amendment to the United States Constitution, and violates the 1991 Civil Rights Act.

27.     Compelling mandatory arbitration in the present action would be unconstitutional because it would deprive plaintiff of her rights to adjudicate these claims before an Article III court under the Constitution and the 1991 Civil Rights Act.

28.     Requiring employees to agree to waive their constitutional rights to have their claims adjudicated by an Article III court as a condition of employment imposes an

8

unconstitutional condition on employment, in violation of the du : process guarantees of the Fifth Amendment and violates the 1991 Civil Rights Act.

29.    Compelling mandatory arbitration in the present ction would be unconstitutional because the procedures employed in arbitrations under the n les of the NYSE, NASD and FINRA, as described above, would deprive plaintiff of her right : to due process under the Fifth Amendment, including, but not limited to, their rights to have the civil rights and employment laws enforced as written.

30.    Requiring employees to agree to waive their con: titutional rights to due process, including, but not limited to, their rights to have the civil rights and employment laws enforced as written, as a condition of employment imposes an unconstitut onal condition on employment, in violation of the due process guarantees of the Fifth Amendmen .

31.    Compelling mandatory arbitration in the present c se would be unlawful because the arbitration procedures employed by the NYSE, NASD and FINRA operate as a de facto forfeiture of statutorily-mandated rights or benefits afforded by Federal and State employment laws, including, but not limited to, the right to a jury trial, the rigl t to punitive damages, and the right to attorneys' fees, in violation of the due process guarantees of the Fifth Amendment.

32.    Requiring employees to agree to forfeit their i nportant statutorily-mandated rights or benefits afforded by Federal and State employment laws, including, but not limited to, the right to a jury trial, punitive damages, and attorneys' fees, s a condition of employment imposes an unconstitutional condition on employment, in violation of the due process guarantees of the Fifth Amendment.

33.    Plaintiff was deprived of her rights to substantive and procedural due process of law.

9

*WHEREFORE*, plaintiff Forbes demands judgment against defendants as follows:

(a)     Declaration that the practice of A.G. Edwards requiring employees in the securities industries to arbitrate employment disputes involving employment discrimination as a condition of employment and as a condition of registering with the NYSE and NASD is unconstitutional under the Fifth Amendment of the U.S. Constitution, and that plaintiff's cause of action is not subject to mandatory arbitration to the mandatory arbitration rules of NYSE, NASD, FINRA, or any other equivalent Arbitration forum;

(b)     Punitive damages;

(c)     Attorney's fees and costs of suit; and

(d)     Such other and further relief as this Court deems just and proper

## COUNT II

## VOIDANCE OR RESCISSION OF FORM U-4 ARBITRATION CLAUSE UNDER CONTRACT LAW AND EQUITABLE THEORIES

34.     Plaintiff Forbes realleges paragraphs 1 – 33 and incorporates them by reference as paragraphs 1 – 33 of Count II of this Complaint.

35.     Plaintiff Forbes signed a Form U-4 which contained a mandatory arbitration clause. Plaintiff seeks to have the Court declare null and void the arbitration clause in the Form U-4 based upon the following legal theories:

(a)     Plaintiff Forbes did not knowingly and intelligently submit to arbitration;

(b)     Assuming arguendo that she understood what arbitration meant and that by signing the Form U-4 that she was agreeing to arbitrate discrimination

10

claims between her and her employer, plaintiff was not aware of the certain facts which render the NASD and NYSE not suitable to arbitrate claims involving A.G. Edwards. Had plaintiff known of the following fact, she would not have consented to arbitrate her claims before the NYSE or NASD:

> (i) Upon information and belief, defendant A.G. Edwards sits on the Board of Governors of the NASD;

> (ii) Upon information and belief, defendant A.G. Edwards is a voting member of the NYSE; and

> (iii) Upon information and belief, defendant A.G. Edwards provides substantial revenues to the NASD and NYSE.

(c)     The arbitration clause in Form U-4 is unenforceable for lack of consideration.

(d)     Assuming arguendo that plaintiff knowingly waved her rights and that the Form U-4 is supported by adequate consideration, A.G. Edwards, through its conduct, materially breached an implied covenant of good faith and fair dealing implicit in the employment relationship of plaintiff Forbes and is equitably estopped from seeking enforcement of the pre-dispute arbitration clause.

(e)     A.G. Edwards breached an implied covenant of good faith and fair dealing through its conduct as alleged herein and rendered the Form U-4 null and void or unenforceable by A.G. Edwards.

(f)     The Form U-4 is otherwise void as against public policy and is a contract of adhesion and is unconscionable.

11

36.     Based upon the factual circumstances and for the legal reasons alleged herein, justice requires this Court to find that the contract signed by plaintiff is void and/or unenforceable by A. G. Edwards under contract law.

37.     Alternative, justice demands that plaintiff be allowed to rescind the arbitration clause of the Form U-4 under equitable principles.

*WHEREFORE*, plaintiff Forbes demands judgment against defendants as follows:

(a)     Declaration that the Form U-4 executed by plaintiff is null and void or unenforceable by any of the defendants or that equity requires rescission of the arbitration clauses in the Form U-4;

(b)     Punitive damages;

(c)     Attorney's fees and costs of suit; and

(d)     Such other and further relief as this Court deems just and proper.

## COUNT III

## SEXUAL DISCRIMINATION AND SEXUAL HARASSMENT IN VIOLATION OF NEW YORK HUMAN RIGHTS LAW

38.     Plaintiff Forbes realleges paragraphs 1 – 37 and incorporates them by reference as paragraphs 1 – 37 of Count III of this Complaint.

39.     The State of New York's Human Rights Law, New York State Executive Law Section 296 et seq. ("Human Rights Law"), makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of sex. The Human Rights Law also makes unlawful sexual harassment that creates an abusive and hostile work environment, such that the conditions of employment are altered. The same legal standards that apply to Title VII claims apply to claims brought under the Human Rights Law.

40.    Defendant Pearl is liable in his individual capacit / under the Human Rights Law because he aided and abetted the unlawful conduct as alleged 1erein and because he actually participated in the conduct giving rise to the discrimination claim .

41.    Defendant Pearl is liable in his individual capacit / under the Human Rights Law because he had the power to hire and fire A.G. Edwards emplo vees and aidec and abetted the discriminatory acts as alleged herein.

42.    Defendant A.G. Edwards subjected plaintiff to se cual discrimin:tion in violation of the Human Rights Law, and is liable for the conduct of Pea l due to his managerial status within the company.

*WHEREFORE*, plaintiff Forbes demands judgment agaii st defendants as follows:

(a)    Compensatory, general and special damages;

(b)    Punitive damages;

(c)    Attorney's fees and costs of suit; and

(d)    Such other and further relief as this Court deems just and : roper.

## COUNT IV

## RETALIATION IN VIOLATION OF NEW YORK HI MAN RIGHTS LAW

43.    Plaintiff Forbes realleges paragraphs 1 - 42 and inc orporates them by reference as paragraphs 1 - 42 of Count IV of this Complaint.

44.    The Human Rights Law, specifically New York State Executive Law Section 296(e) makes it unlawful for an employer to discriminate against in employee who has opposed an unlawful employment practice or has assisted or participated i 1 another employee's claim of discrimination.

45.    Plaintiff complained of sex discrimination

13

46.    Defendants retaliated against plaintiff Forbes for her complaints of sex discrimination. By the conduct as alleged herein, defendants A.G. Edwards and Pearl subjected plaintiff to unlawful retaliation in violation of the Human Rights Law

*WHEREFORE*, plaintiff Forbes demands judgment against defendants as follows:

(a)    Compensatory, general and special damages;

(b)    Punitive damages;

(c)    Attorney's fees and costs of suit; and

(d)    Such other and further relief as this Court deems just and proper

## COUNT V

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IN VIOLATION OF NEW YORK COMMON LAW

47.    Plaintiff Forbes realleges paragraphs 1 - 46 and incorporates them by reference as paragraphs 1 – 46 of Count V of this Complaint.

48.    New York law recognizes a cause of action for intentional infliction of emotional distress, which makes unlawful certain extreme and outrageous conduct, including sexual harassment and assaultive conduct that results in severe emotional distress and was intended or committed with a disregard or a substantial probability of causing such distress.

49.    Defendants intentionally caused plaintiff severe emotional distress in violation of New York law.

50.    A.G. Edwards directed, encouraged, and participated in the wrongful conduct alleged herein.

*WHEREFORE*, plaintiff Forbes demands judgment against defendants as follows:

(a)    Compensatory, general and special damages;

(b)    Punitive damages;

14

(c)    Attorney's fees and costs of suit; and

(d)    Such other and further relief as this Court deems just and proper.

## COUNT VI

### SEXUAL DISCRIMINATION AND SEXUAL HARASSMENT IN VIOLATION OF CITY ADMINISTRATIVE CODE

51.    Plaintiff Forbes realleges paragraphs 1 - 50 and incorporates them by reference as paragraphs 1 - 50 of Count VI of this Complaint.

52.    The Administrative Code of the City of New York, Section 8-107 et seq. ("Administrative Code"), makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of sex. The Administrative Code also makes unlawful sexual harassment that creates an abusive and hostile work environment, such that the conditions of employment are altered.

53.    Defendant Pearl is liable in his individual capacity under the Administrative Code on the ground that he aided and abetted the unlawful conduct as alleged herein and because he actually participated in the conduct giving rise to the discrimination claims.

54.    Defendant Pearl is liable in his individual capacity under the Administrative Code because he had the power to hire and fire A.G. Edwards employees and aided and abetted the discriminatory acts as alleged herein.

55.    By the conduct as alleged herein, defendants A.G Edwards and Pearl subjected plaintiff to sexual discrimination in violation of the Administrative Code.

*WHEREFORE,* plaintiff Forbes demands judgment against defendants as follows:

(a)    Compensatory, general and special damages;

15

    (b)    Punitive damages;

    (c)    Attorney's fees and costs of suit; and

    (d)    Such other and further relief as this Court deems just and proper.

## COUNT VII

## RETALIATION IN VIOLATION OF THE ADMINISTRATIVE CODE

56    Plaintiff Forbes realleges paragraphs 1 - 55 and incorporates them by reference as paragraphs 1 – 55 of Count VII of this Complaint.

57.    The Administrative Code, specifically Section 8-107(e), makes it unlawful for an employer to discriminate against any person who has opposed an unlawful employment practice or has assisted or participated in another employee's claim of discrimination.

58.    Plaintiff complained of sex discrimination.

59.    Pursuant to standard operating procedure, defendants retaliated against plaintiff for her complains of sex discrimination.  By the conduct as alleged herein, defendants A.G. Edwards and Pearl subjected plaintiff to unlawful retaliation in violation of the Administrative Code.

*WHEREFORE*, plaintiff Forbes demands judgment against defendants as follows:

    (a)    Compensatory, general and special damages;

    (b)    Punitive damages;

    (c)    Attorney's fees and costs of suit; and

    (d)    Such other and further relief as this Court deems just and proper.

## COUNT VIII

### ASSAULT AND BATTERY
### IN VIOLATION OF NEW YORK COMMON LAW

60. Plaintiff Forbes realleges paragraphs 1 - 59 and incorporates them by reference as paragraphs 1 – 59 of Count VIII of this Complaint.

61. By his conduct as aforesaid. Pearl intentionally. negligently and/or recklessly committed assault and battery against the plaintiff.

62. As a direct and proximate result of Pearl's assau t and battery, plaintiff Forbes suffered and continues to suffer severe emotional distress, pain ; nd suffering, humiliation, and other losses.

*WHEREFORE*, plaintiff Forbes demands judgment again t defendants as follows·

(a) Compensatory, general and special damages;

(b) Punitive damages;

(c) Attorney's fees and costs of suit; and

(d) Such other and further relief as this Court deems ju it and proper.

## COUNT IX

### PUNITIVE DAMAGES

63. Plaintiff Forbes realleges paragraphs 1 - 62 and inc irporates them by reference as paragraphs 1 – 62 of Count IX of this Complaint.

64. The aforesaid actions of defendants were willful, wanton and reckless so as to permit a jury to consider the awarding of punitive damages and/ or exemplary damages to the Plaintiff.

17

01/30/2008 15:57 FAX 732 888 2780          RUDNICK.ADDONIZIO.PAI PA.                    @030

*WHEREFORE*, plaintiff Forbes demands judgment again st defendants as follows:

(a)  Compensatory, general and special damages;

(b)  Punitive damages;

(c)  Attorney's fees and costs of suit; and

(d)  Such other and further relief as this Court deems just and proper.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to the provisions of Rule 4:25-4, the Court is advised that MARK F. CASAZZA, ESQUIRE, is hereby designated as trial counsel.

## JURY DEMAND

Plaintiff hereby demands a trial by a jury of six (6) juror as to all issues raised by these pleadings.

## CERTIFICATION

I hereby certify that pursuant to R. 4:5-1(b)(2), that this matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration, nor is any action or arbitration proceeding contemplated.

RUDNICK, ADDONIZIO & PAPPA
Attorneys for the Plaintiff

By: _____
MARK F. CASAZZA

DATED:  January 19, 2008

18