Janene M. Marasciullo, Esq. (*Pro Hac Vice*)
Kaufman Dolowich & Voluck, LLP
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Phone: (516) 681-1100
Facsimile: (516) 681-1101
*Attorneys for Defendant Douglas L. Pearl*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

Melissa D. Forbes,

**JUDGE: Thomas P. Griesa**

Plaintiff,

v.

**Civic Action No. 1:08-CV-00552-TPG**

A.G. Edwards & Sons, Inc., Wachovia Securities,
LLC, Wachovia Corporation, and
Douglas L Pearl,

Defendants.

----------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DOUGLAS L. PEARL'S MOTION FOR AN ORDER STAYING THE PRESENT ACTION AND COMPELLING ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the Federal

Arbitration Act ("FAA"), defendant Douglas L. Pearl ("Mr. Pearl") respectfully requests

the Court to compel arbitration of the claims set forth in plaintiff's complaint and stay

further action in this matter pending resolution of the motions to compel arbitration that

are currently before the Court, or in the alternative, to dismiss for failure to state a claim.

In support of this request, Mr. Pearl relies upon this Memorandum of Law, the

Declaration of Janene M. Marasciullo, attached as Exhibit A and Exhibits 1-5 attached

thereto.

There is good cause for Pearl's requests. As explained more fully below,

plaintiff, Melissa D. Forbes ("Forbes") brought this sexual harassment action against her

former employer, co-defendant A.G. Edwards & Sons, Inc., ("Edwards"), Wachovia

Securities, LLC, and Wachovia Corporation (collectively "the Corporate Defendants"),

and her former co-worker, Mr. Pearl, as a result of controversies that arose during her

employment with Edwards. See Compl. ¶¶ 2, 4-9, 16, 18. Significantly, however, both

Ms. Forbes and Mr. Pearl executed pre-dispute arbitration agreements that require them

to arbitrate any employment disputes. Therefore, the Court should compel arbitration in

accordance with the terms of the pre-dispute arbitration agreements and stay this matter

pursuant to the FAA. In the alternative, the Court should dismiss this matter for failure to

state a claim for which relief can be granted.

## STATEMENT OF FACTS

Both Forbes and Pearl are former employees of Edwards. Compl. ¶¶ 2, 4, 5.

Likewise, both Forbes and Pearl executed arbitration agreements in connection with their

employment applications. Compl. ¶ 5, Ex. 1 (Forbes' Employment Agreement), Ex. 2

(Pearl Employment Agreement). Significantly, pursuant to these pre-dispute arbitration

agreements, both Forbes and Pearl agreed to arbitrate any disputes that they had with

Edwards and any Edwards employees. Compl. ¶ 5, Ex. 1, Ex. 2. The pre-dispute

arbitration agreement stated that both Forbes and Pearl, agreed, in pertinent part, to:

- **arbitrate any dispute, claim or controversy that may arise between myself and Edwards, or a customer, or any other person. This means that I am giving up the right to sue in court Edwards, its subsidiaries or employees or any customer or any other person concerning matters related to or arising from my employment. This includes giving up the right to a trial by jury.**

Ex. 1 at p. 4, Ex. 2 at p. 2 (Boldface in the original).

2

In addition, the pre-dispute arbitration agreement expressly indicated that both

Forbes and Pearl agreed to arbitrate any claim involving employment discrimination or

sexual harassment and stated:

- **A claim alleging discrimination, including a sexual harassment claim, in violation of any statute, IS REQUIRED to be arbitrated under this agreement.**

Ex. 1 at p. 4, Ex. 2 at p. 2 (Boldface in the original).    The agreement further provided

that both Forbes and Edwards:

**agreed that any controversy or dispute, including, but not limited to, claims of wrongful termination, breach of contract, discrimination, harassment, retaliation, infliction of emotional distress, tortious interference with business or contract, federal, state or local statute or ordinance and/or other theory, arising between me and Edwards shall be submitted for arbitration before the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. If neither the New York Stock Exchange, Inc. nor the National Association of Securities Dealers accepts the controversy, dispute or claim, or any portion thereof, for arbitration before either of them, then the non-accepted controversy, dispute or claim shall be submitted for arbitration before the American Arbitration Association pursuant to its Securities Arbitration Rules effective May 1, 1993.**

Ex. 1 at p. 4, Ex. 2  at p. 2 (Boldface in the Original).

Finally, the pre-dispute arbitration agreements expressly stated that Forbes and

Pearl were relinquishing their right to a jury trial as well as the procedures commonly

available in court.    The agreements provided, in pertinent part:

- **Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.**

- **The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.**

- **The arbitrators do not have to explain the reason(s) for their award.**

- **The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry, or public arbitrators, as provided by the rules of the arbitration forum in which a claim is filed.**

- **The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.**

Moreover, both Forbes and Pearl signed additional agreements during the course of their employment with Edwards which also require them to arbitrate all employment disputes, including disputes involving allegations of sexual harassment.

Indeed, Forbes signed both a Financial Associate Agreement, ("FA Agreement"), Ex. 3, and a Supplementary Training Agreement for a Financial Associate ("Supplementary FA Agreement"), Ex. 4, which expressly stated that she agreed to "arbitrate any dispute, claim or controversy that may arise between you and you firm . . . or any other person This means that you are giving up the right to sue in court Edwards, its subsidiaries or employees or any customer/client or any other person concerning matters related to or arising from your employment. This includes giving up the right to a trial by jury." at Ex. 3 at p. 4 at ¶ 34, Ex. 4 at p. 1 at ¶ 3. Both the FA Agreement and the Supplementary FA Agreement also expressly stated that "[a] claim alleging alleging discrimination, including a sexual harassment claim, in violation of any statute, **IS REQUIRED** to be arbitrated." Ex. 3 at p. 4 at ¶ 34, Ex. 4 at p. 1 at ¶ 3.

The agreements also explained that there were significant differences between the pre-trial discovery available in arbitration and court litigation. Ex. 3 at p. 4 at ¶ 34, Ex. 4 at p. 1 at ¶ 3. Finally, the FA Agreement and the Supplementary FA Agreement reiterated virtually verbatim that pre-dispute arbitration agreement that Forbes executed in connection with her employment application. It stated that Forbes agreed:

> that any controversy or dispute, including, but not limited to, claims of wrongful termination, breach of contract, discrimination, harassment, retaliation, infliction of emotional distress, tortious interference with business or contract, federal, state or local statute or ordinance and/or

4

other theory, arising between you and Edwards shall be submitted for arbitration before the new York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. If neither the New York Stock Exchange, Inc. nor the National Association of Securities Dealers accepts the controversy, dispute or claim, or any portion thereof, for arbitration before either of them, then the non-accepted controversy, dispute or claim shall be submitted for arbitration before the American Arbitration Association pursuant to its Securities Arbitration Rules effective May 1, 1993.

See Ex. 3 at p. 4 ¶ 34, Ex. 4 at p. 1 at ¶ 4.

Mr. Pearl also executed an additional pre-dispute arbitration agreement. At the time that he applied for his position at Edwards, Mr. Pearl signed the "Uniform Application For Securities Industry Registration Or Transfer", commonly referred to as a "Form U-4," which stated in part:

**I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in item 11 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.**

Ex. 5 at ¶ 5.

In February 2007, Ms. Forbes submitted a sexual harassment claim to Edwards. The complaint in this matter seeks recovery for that purported sexual harassment. Compl. ¶¶ 2, 4-9, 16, 18. Indeed, Ms. Forbes seeks to recover pursuant to both the New York Human Rights Law, Compl., Count III and IV, ¶¶ 38-46, and the New York City Administrative Code, Compl., Count VI and VII, ¶¶ 56-59. She also asserts common law claims against Pearl, which are based upon alleged harassment. Compl. Counts V and VII. The complaint thus makes clear that Ms. Forbes' claims arise from employment-related disputes.

## ARGUMENT

### I.    The Court Should Compel Arbitration of the Claims Set Forth in the Complaint

The FAA "provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable.'" Dean Witter Reynolds v. Byrd, 470 U.S. 213, 218 (1985) citing FAA, 9 U.S.C.§ 2.[1]  Furthermore, the FAA leaves "no place for the exercise of discretion . . . but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issue as to which an arbitration agreement as been signed." Dean Witter, 470 U.S. at 218 (emphasis in the original), citing FAA, 9 U.S.C.§§ 3,4; accord Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991), citing 9 U.S.C. § 4 (holding that the FAA authorizing compelling arbitration when a party "has failed, neglected, or refused to comply with an arbitration agreement."). The FAA also provides for stays of district court litigation when an issue is referred to arbitration.  Gilmer, 500 U.S. at 25, citing 9 U.S.C. § 3.

The Supreme Court has repeatedly held that the FAA requires the enforcement of pre-dispute arbitration agreements included in employment contracts.  See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111 (2001); Gilmer, 500 U.S. at 24 (1991).  Indeed, in Gilmer, the Supreme Court specifically held that FAA requires the enforcement of the pre-dispute arbitration agreement contained in the Uniform Application for Securities

---

[1] The FAA, 9 U.S.C. § 2, provides, in pertinent part:

A written provision in any…contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof,…shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Transfer.  500 U.S. at 23-35.  Moreover, the Supreme Court has held that the claims of statutory employment discrimination are not exempt from the FAA, and thus, must be arbitrated if covered by a pre-dispute arbitration agreement in an employment agreement. Indeed, in Circuit City,  532 U.S. at 123, the Supreme Court noted that it "has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protections against discrimination prohibited by federal law."  See also Gilmer, 500 U.S. at 35 (holding that claims under the Age Discrimination Act are subject to mandatory arbitration).  In addition, the Supreme Court found that discrimination claims predicated upon state statutes are subject to mandatory arbitration under the FAA. Circuit City, 532 U.S. at 123-124.

As explained below, both Forbes and Pearl executed multiple agreements that contained clear and unequivocal language by which they agreed to arbitrate any claims arising out their employment with Edwards.  Accordingly, the Court must compel arbitration and stay this matter pending arbitration.  Each issue is addressed in turn.

## A.  Forbes and Pearl Executed Pre-Dispute Agreements that Require Arbitration of the Claims Set forth in Forbes' Complaint

Due to the strong federal policy favoring arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Moses H. Cone Memorial Hosp. v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983).  When deciding motions to compel arbitration in cases that do not involve Federal statutory claims, the Second Circuit has directed District Courts to examine "(1) whether the parties agreed to arbitrate disputes at all; and (2) whether the dispute at issue comes within the scope of the arbtiration agreement."  Ace Capital Re Overseas Ltd. v. Central

7

United Life Ins. Co., 307 F.3d 24, 28 (2d Cir. 2002); accord Moss v. Rent-a-Center, 2007 WL 2362207 (E.D.N.Y. Aug. 15, 2007) at  4.

To determine "whether parties agreed to arbitrate a certain matter," courts should apply generally accepted principles of contract interpretation to determine whether there is an agreement to arbitrate. First Options of Chicago v. Kaplan, 514 U.S. 938, 944 (1995).  However, "broadly phrased arbitration agreements create a presumption of arbitrability which is only overcome if the arbitration agreement is not susceptible to an interpretation that covers the controversy."  Moss v. Rent-a-Center, 2007 WL 2362207 (E.D.N.Y. Aug. 15, 2007) at * 8 citing Bank Julius Baer & Co. v. Waxfield, 424 F.3d 278, 284 (2d Cir. 2005). Indeed, "the presumption in favor of arbitrability is greater when the arbitration clause is broad." Imperatore v. Putnam Lovell NBF Securities, 2006 WL 648214 at * 2 (S.D.N.Y. March 15, 2006) quoting McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light, 858 F.2d 825, 832 (2nd Cir. 1988).  When the agreements are analyzed under this standard, it is clear that the claims set forth in the complaint must be arbitrated.

In this case, there is no dispute that both Forbes and Pearl executed multiple pre-dispute arbitration agreements.  Indeed, in her complaint, plaintiff concedes, as she must, that she executed the FA Agreement, which contains a mandatory arbitration clause that required her to arbitrate any dispute concerning her employment.  Compl. ¶ 5, Ex. 1 at p. 4, Ex. 3 at p. 4 ¶ 34, Ex. 4 at p. 1 at ¶ 3.  She further concedes that she also executed a Uniform Application for Securities Registration (Form U-4), which contains a mandatory arbitration clause that requires the arbitration of claims of employment discrimination.

Compl. ¶ 5.  Likewise, Pearl acknowledges that he also executed several agreements that
contained mandatory arbitration agreements.

Furthermore, even a brief examination of these agreements demonstrates that the
claims asserted in the complaint "come within the scope of the arbitration agreement."
Ace Capital, 307 F.3d at 28.  Indeed, both Forbes and Pearl signed employment
applications that contained an extremely broad arbitration agreement.  In that agreement,
both Forbes and Pearl agreed to arbitrate:

> ... any controversy or dispute, including, but not limited to, claims of
> wrongful termination, breach of contract, discrimination, harassment,
> retaliation, infliction of emotion distress, tortious interference with
> business or contract, federal, state or local statute or ordinance and/or
> other theory ...

Ex. 1 at p. 4, Ex. 2 at p. 2.  The employment application also expressly stated that Forbes
and Pearl understood and agreed that "[a] claim alleging alleging discrimination,
including a sexual harassment claim, in violation of any statute, **IS REQUIRED** to be
arbitrated."  Ex. 1 at p. 4, Ex. 2 at p. 2.  Moreover, the arbitration agreement included in
the employment application required Forbes to arbitrate all employment-related claims
that she might assert against Edwards or its employees.  The agreement stated that Forbes
understood that arbitration clause to "mean[] that I am giving up the right to sue in court
Edwards, its subsidiaries, *or employees* or any customer *or any other person* concerning
matters related to or arising from my employment."  Ex. 1 at p. 4.  Finally, Forbes also
signed two other agreements, the FA Agreement and the FA Supplemental Agreement,
that contained virtually the same language.  Ex. 3 at p. 4 at ¶ 34, Ex. 4 at p. 1 at ¶ 3.

The plain language of these agreements thus demonstrates that Forbes agreed to
arbitration *any dispute against Edwards or its employees* that arose from her employment

at Edwards, including claims of sexual harassment, infliction of emotional distress, *or other theory.* Given the breadth of this language, the presumption of arbitrability is particularly strong. Imperatore v. Putnam Lovell NBF Securities, 2006 WL 648214 * 2. The claims asserted in Forbes' complaint clearly come within the scope of this arbitration agreement. Indeed, the pre-dispute agreements expressly require arbitration of Counts III and IV, which alleged sexual harassment,[2] Counts VI and VII, which alleged retaliation, and Count V, which alleged infliction of emotional distress. Finally, Court VIII, which alleges common law torts, also falls within the definition of claims that are subject to mandatory arbitration.

In light of the plain language of the many pre-dispute arbitration agreements executed by Forbes and Pearl, and the strong federal policy favoring arbitration, Opals on Ice Lingerie, Designs by Bernadette v. Bodylines, 320 F.3d 362, 369 (2nd Cir. 2003), this Court must compel arbitration.

### B.    Forbes Has Not Carried Her Burden of Demonstrating That the Claims Asserted in the Complaint are Not Subject to Arbitration

Although Forbes concedes that she executed mandatory arbitration agreements which require her to arbitrate the disputes set forth in the complaint, she nonetheless claims that the Court should ignore the plain language of these agreements and the strong federal policy favoring arbitration and allow this matter to be litigated in court. In support of these contentions, she asserts that compelling arbitration of her claims would violate her unconstitutional rights to due process and/or a jury trial, Compl., Count I, and

---

[2]  It is well settled that New York Human Rights law claims are arbitrable. See Fletcher v. Kidder Peabody & Co. Inc., 81 N.Y.S.2d 623, 638 (1993); Moss v. Rent-a-Center, 2007 WL 2362207 (E.D.N.Y. Aug. 15, 2007) at * 4.  Likewise, tort claims are subject to mandatory arbitration. See Collins & Aikman Prods. & Co. v Building Sys., 58 F.3d 16, 23 (2nd Cir. 1995).  Thus, courts have ordered arbitration of common law assault and battery claims which were asserted in connection with statutory claims of sexual harassment. Moss v. Rent-a-Center, 2007 WL 2362207 (E.D.N.Y. Aug. 15, 2007) at 4 -8.

would be "unfair" because the many arbitration agreements she signed were "adhesion" contracts. Compl., Count II. These arguments are wholly without merit.

The Second Circuit has unequivocally held that mandatory arbitration agreements do not violate a party's constitutional rights in the absence of state action. See Desiderio v. National Association of Securities Dealers, Inc., 191 F.3d 198, 206 (2d Cir. 1999). In Desiderio, the Court of Appeals held that enforcement of the arbitration provisions set forth in NASD's Form U-4, which requires the arbitration of all employment disputes, including sexual harassment claims, did not violate the constitutional guarantees of due process and a jury trial. 191 F.3d at 206. In reaching this conclusion, the Second Circuit held that because NASD is a private actor, enforcement of the Form U-4 did not involve state action, and thus, could not amount to a deprivation of a constitutional right. Id.

The Desiderio case is fatal to Forbes' constitutional claims. It is beyond cavil that all of the defendants in this matter are private parties. Furthermore, Forbes signed both an employment application and two other agreements (the FA Agreement and the Supplemental FA Agreement) in which she agreed to arbitrate all claims arising out of her employment. These were contracts between private parties that did not involve any state action. Accordingly, enforcement of these pre-dispute arbitration agreements do not involve any state action, and thus, cannot amount to a deprivation of a constitutional right.[3]

---

[3] Furthermore, compelling arbitration will not impact Forbes' substantive rights. As the Supreme Court noted in Gilmer, 500 U.S. at 26, "by agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." Accord Circuit City, 532 U.S. at 123-24.

Likewise, Forbes' contention that the pre-dispute agreement to arbitrate employment disputes is an unenforceable adhesion contract has been squarely rejected. Indeed, the Supreme Court has held that "[m]ere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." Gilmer, 500 U.S. at 33. Furthermore, in Desiderio, the Second Circuit held a pre-dispute arbitration agreement, which binds the employer and the employee and which does not "favor the stronger party unreasonably. . . . is not a contract of adhesion. Desiderio, 191 F.3d at 207; see also Stewart v. Paul, Hastings, Janofsky & Walker, LLP, 201 F. Supp. 2d 291, 294 (S.D.N.Y. 2002) (employment agreement containing arbitration provision enforceable despite fact that employee was obliged to agree to it as a condition of employment); Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144 (2d Cir. 2004)(mandatory arbitration provision which binds both parties to arbitrate disputes does not benefit stronger party unreasonably).

In sum, Forbes has not, and indeed, cannot demonstrate any sound reason to ignore the plain language of the multiple pre-dispute arbitration agreements that she signed. Accordingly, the Court should compel arbitration of the claims set forth in the complaint.

## II.     The Court Must Stay This Action Pending Arbitration

Moreover, if the Court finds that the claims asserted in the complaint are subject to mandatory arbitration, the FAA requires the Court to stay this proceeding. Section 3 of the Federal Arbitration Act provides that once a District Court determines that a claim is subject to mandatory arbitration, it:

> *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the

12

> agreement, providing the applicant for the stay is not in default in
> proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). Thus, pursuant to the FAA, all judicial proceedings must

be stayed once "the court is satisfied that that the issue is arbitrable under an arbitration

agreement." Sinnett v. Friendly Ice Cream Corp., 319 F.Supp.2d 439, 443 (S.D.N.Y.

2004); MBNA America Bank, N.A. v. Hill, 436 F.3d 104 (2nd Cir. 2006) ("A court has a

duty to stay its proceedings if it is satisfied that the issue before it is arbitrable, and '[t]his

duty ... is not diminished when a party bound by an agreement raises a claim founded on

statutory rights.'") citing Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226,

107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Furthermore, the Supreme Court has held that

arbitration agreements must be enforced, even when doing so would result in piecemeal

litigation:

> [T]he Arbitration Act requires district courts to compel arbitration of
> pendent arbitrable claims when one of the parties files a motion to compel,
> even where the result would be the possibly inefficient maintenance of
> separate proceedings in different forums. Accordingly, we reverse the
> decision not to compel arbitration.

Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217 (1985) (holding that FAA "leaves

no place for the exercise of discretion by a district court"); see also Moses H. Cohen

Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983), (affirming an order requiring

enforcement of an arbitration agreement, even though the arbitration would result in

bifurcated proceedings).

As explained above, Forbes and Pearl both agreed to arbitrate any controversy

arising from their employment with Edwards. Accordingly, the Court must refer Forbes'

claims to arbitration and stay this matter pending resolution of the arbitration.

**III.    In the alternative, the Court should dismiss the Complaint because it fails to
state a claim upon which relief can be granted pursuant to FRCP 12(b)(6)**

In this action, Forbes is seeking damages for a dispute arising out of her
employment with Edwards and involving Pearl. The controversy is clearly within the
scope of the arbitration agreement quoted above, and the agreements provide that such
disputes must be arbitrated. As such, Forbes is contractually bound to seek any relief
against Edwards only from an arbitration panel, not this Court. Therefore, the Complaint
must be dismissed for failing to state a cause of action for which relief can be granted
pursuant to FRCP 12(b)(6).

**CONCLUSION**

For the foregoing reasons, Pearl respectfully requests the Court to compel
arbitration of the claims alleged in the Complaint and to stay all proceedings in this
Action pending arbitration. In the alternative, Pearl asks that the Court dismiss the
Complaint without prejudice for failure to state a cause of action upon which relief can be
granted.

Respectfully submitted,

/s/ Janene M. Marasciullo
Janene M. Marasciullo, Esq. (Pro *Hac Vice*)
Jeffery A. Meyer (JM 4468)
Kaufman Dolowich & Voluck LLP
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Phone: (516) 681-1100
Facsimile: (516) 681-1101
*Attorneys for Defendant Douglas L. Pearl*

ND: 4827-3637-4018, v. 1

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 23, 2008, a true and correct copy of NOTICE OF MOTION, MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DOUGLAS L. PEARL'S MOTION FOR AN ORDER STAYING THE PRESENT ACTION AND COMPELLING ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS and attachments thereto were filed electronically with the court using the CM/ECF system, which sent notification to the following parties:

Mark Casazza, Esq.
Rudnick, Addonizio & Pappa
25 Village Court
Hazlett, NJ 07730
Counsel for Plaintiff

Sandra Grannum
Davidson & Grannum LLP
30 Ramland Road
Suite 201
Orangeburg, NY 10962
Counsel for Defendants A.G. Edwards, Wachovia Securities LLC and Wachovia Corp.

/s/ Jeffery Meyers

ND: 4827-3637-4018, v. 1

Janene M. Marasciullo, Esq. ( *Pro Hac Vice)*
Kaufman Dolowich & Voluck, LLP
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Phone: (516) 681-1100
Facsimile: (516) 681-1101
*Attorneys for Defendant Douglas L. Pearl*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
Melissa D. Forbes,

                             Plaintiff,

v.

A.G. Edwards & Sons, Inc., Wachovia Securities,
LLC, Wachovia Corporation, and
Douglas L Pearl,

                             Defendants.

-----------------------------------------------------------------x

**JUDGE: Thomas P. Griesa**

**Civic Action No. 1:08-CV-00552-TPG**

**DECLARATON OF JANENE M.**
**MARASCIULLO IN SUPPORT OF**
**DEFENDANT DOUGLAS L. PEARL'S**
**MOTION FOR AN ORDER STAYING**
**THE PRESENT ACTION AND**
**COMPELLING ARBITRATION OR,**
**IN THE ALTERNATIVE, TO**
**DISMISS THE PRESENT ACTION**

STATE OF NEW YORK    )
                          )ss.
COUNTY OF NASSAU     )

     I, Janene M. Marasciullo, declare under penalty of perjury as follows:

     1.     I am over the age of 18 years and make this declaration based upon my
personal knowledge of the facts recited herein, and where I do not have personal
knowledge, based upon the books and records of corporate defendants, A.G. Edwards.,
Wachovia Securities, LLC, Wachovia Corporation LLC which are kept in the normal
course of business.

     2.     I am a member of the bar of the state of New York, and, counsel for
defendant Douglas L. Pearl ("Pearl").

EXHIBIT A

3.    I submit this declaration in support of Pearl's Motion for an Order Staying the Present Action and Compelling Arbitration, or in the Alternative, to Dismiss.

4.    Ms. Forbes executed several agreements pursuant to which she agreed to arbitrate the disputes set forth in the complaint. See Compl. ¶ 5. True and accurate copies of these agreements are attached as Exhibit 1, (Forbes' Employment Application Agreement), Exhibit 3 (Forbes' Financial Associate Agreement), and Exhibit 4 (Forbes' Supplementary Training Agreement for a Financial Associate).

5.    Mr. Pearl also executed several agreements pursuant to which he agreed to arbitrate the disputes set forth in the complaint. True and accurate copies of those agreements are attached as Exhibit 2 (Pearl's Employment Agreement) and Exhibit 5 (Pearl's Form U-4).

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of April, 2008

Janene M. Marasciullo

ND: 4833-5516-5186, v. 1

# Employment Application

Statement of Policy for A.G. Edwards & Sons, Inc.:
There shall be no discrimination based on race, religion, color, sex, age, disability or national origin in any of the Firm's employment practices and procedures, including recruitment and the advertising of position vacancies.

"Edwards" refers to A.G. Edwards & Sons, Inc.



**EDWARDS**
*The Sunshine State*

REDACTED

Forbes Marketss

## WHERE DID YOU HEAR OF THE JOB?

☐ Classified advertising (which newspaper)
_____

☐ Community agency (which one)
_____

☐ Employment/placement agency (which one)
_____

☐ State employment service (which state)
_____

☐ School (which one)
_____

☐ Job fair (which one)
_____

☐ Current Edwards employee (name)
_____

☐ Edwards open house (date) ___ ___ ___

☐ Came on own accord

☒ Other (describe)
   Temp Agency
   Taylor Hodson

## JOB APPLIED FOR

Kind of work or position applied for:

First choice ___Assistant___

Second choice _____

Salary expected ___$50,000___

Date available ___10/10/04___

☒ Full time    ☐ Part time
☐ Summer      ☐ Temporary
Hours available ___40___

Will you work overtime?  ☒ Yes  ☐ No

PERSONNEL

OCT 18 2004

AGE 141—704

**EXHIBIT 1**

Employment Application

D.O.B. 5/19/79

T. Nolan

page 2

## EMPLOYMENT APPLICATION
Enter all answers legibly and in BLACK INK

We are interested in your qualifications. Help us evaluate your application by filling it out completely and accurately. Print or write legibly.

## GENERAL INFORMATION

| Name (last) | (first) | (middle) | Social Security number | |
|---|---|---|---|---|
| Forbes | Nelson | Duane | | REDACTED |

REDACTED

2

## EMPLOYMENT/MILITARY BACKGROUND

List below all your employment experience, including military experience, starting with your previous or present employer and working backward. To meet the requirements of the Securities and Exchange Commission (SEC), this record must be a complete listing, including full-time and part-time work, self-employment, and unemployment. Attach an additional sheet if necessary. Do not indicate "see resume."

REDACTED

Employment Application

## READ CAREFULLY BEFORE SIGNING

In this application, "I," "me" and "my" refer to the employee applicant. "Edwards" refers to A.G. Edwards & Sons, Inc.

I understand that in compliance with NYSE Rule 407(b), Edwards normally requires employees to close or transfer to Edwards any securities or commodity accounts they have with other firms or financial institutions.

The data given herein is true and accurate to the best of my knowledge and belief. I understand that this information will be verified, for which purpose I authorize and request any and all of my former employers and any other person to furnish to Edwards or any agent acting on its behalf, any information they may have concerning my creditworthiness, character, ability, business activities, educational background and general reputation; together with, in the case of former employers, a history of my employment by them and the reasons for the termination thereof. Moreover, I hereby release each such employer and each such other person from any liability of whatsoever nature by reason of furnishing such information to Edwards or any agent acting on its behalf. I agree to accept the decisions of the New York Stock Exchange, Inc. or any other regulatory authority on approval or denial of my employment.

Further, I recognize that I will be the subject of an investigative background report ordered by Edwards, and that I have the right to request complete and accurate disclosure by Edwards of the nature and scope of the investigation requested. I also recognize that my fingerprints will be forwarded to the Federal Bureau of Investigation for comparison with their files of all arrest records, in compliance with S.E.C. Rule 17f-2.

This agreement contains a pre-dispute arbitration clause immediately below. Before signing this agreement, I read and understood the following:

• I am agreeing to arbitrate any dispute, claim or controversy that may arise between myself and Edwards, or a customer, or any other person. This means that I am giving up the right to sue in court Edwards, its subsidiaries or employees or any customer or any other person concerning matters related to or arising from my employment. This includes giving up the right to a trial by jury.

▸ A claim alleging discrimination, including a sexual harassment claim, in violation of any statute, IS REQUIRED to be arbitrated under this agreement.

▸ Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

▸ The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

• The arbitrators do not have to explain the reason(s) for their award.

• The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry, or public arbitrators, as provided by the rules of the arbitration forum in which a claim is filed.

• The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

In consideration of Edwards undertaking the aforementioned investigation and considering my application for employment, I agree that any controversy or dispute, including, but not limited to, claims of wrongful termination, breach of contract, discrimination, harassment, retaliation, infliction of emotional distress, tortious interference with business or contract, federal, state or local statute or ordinance and/or other theory, arising between me and Edwards shall be submitted for arbitration before the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. If neither the New York Stock Exchange, Inc. nor the National Association of Securities Dealers accepts the controversy, dispute or claim, or any portion thereof, for arbitration before either of them, then the non-accepted controversy, dispute or claim shall be submitted for arbitration before the American Arbitration Association pursuant to its Securities Arbitration Rules effective May 1, 1993. I understand that if Edwards hires me, my employment will be subject to the policy of employment at will. Under this policy, I may resign my employment at any time, with or without cause. Edwards retains the same right with respect to the termination of my employment.

I understand that if Edwards employs me, I will be deemed to be a person associated with a member of the NASD. I agree to abide by the rules and regulations of the NASD and any other securities and commodities exchanges of which Edwards is a member, as well as the rules and regulations of Edwards.

I understand that any misstatement of fact or omission of material information required on this application will be grounds for my immediate dismissal.

Applicant Signature _____ Date 10/16/04
X _____
Applicant (Print Name)
Melissa Forbes

Melissa D. Forbes ☆ Credit/Count CKO
Cost Center
2 pages

AGE 145—7/94

Employment Application                                                                                    page 5

## QUESTIONS RELATING TO S    RITIES REGULATIONS

SEC regulations require that each of the following questions be answered. ARREST RECORDS ARE CHECKED WITH THE FEDERAL BUREAU OF INVESTIGATION (FBI). Arrest records that have been expunged may be reported by the FBI. You may be asked to provide full details along with supporting documentation. Attach a separate sheet if necessary.

1.  (a) Are you at present engaged in any other business, either as a proprietor, partner, officer, director, trustee, employee or otherwise? If "yes," give details, including name and address, your title or capacity, nature of business, duties, compensation received, time spent, etc. _____ ☐ Yes  ☒ No

    (b) Do you currently hold an insurance license? Give details. _____ ☐ Yes  ☒ No
        Do you currently hold a real estate license? Give details. _____ ☐ Yes  ☒ No

2.  (a) Have you ever been refused a bond by a surety company? _____ ☐ Yes  ☒ No

    (b) Has any surety company paid out any funds on your coverage? If answer to either (a) or (b) is "yes," answer in space provided. _____ ☐ Yes  ☒ No

3.  (a) Have you ever been registered or licensed to sell or deal in securities or commodities or to function as an investment advisor by any Federal or State agencies or the NASD? If "Yes," give details. _____ ☐ Yes  ☒ No

    (b) Have you ever been suspended, expelled or otherwise disciplined by any regulatory body or by any such exchange or association; or ever been refused membership therein; or ever withdrawn your application for such membership? _____ ☐ Yes  ☒ No

    (c) Have you ever been associated with any organization, as a director, controlling stockholder, partner, officer, employee or other representative of a broker-dealer which has been, or a principal of which has been, suspended or expelled from any such exchange or registered association, or was refused membership therein, or withdrawn an application for membership; or whose registration as a broker-dealer with the S.E.C. or any State or agency has been denied, suspended or revoked? _____ ☐ Yes  ☒ No

    (d) Are you now subject to an order of the N.A.S.D., any national securities exchange or S.E.C. which, revokes, suspends or denies membership or registration? _____ ☐ Yes  ☒ No

    (e) Have you ever been named as a "cause" in any action mentioned in the preceding questions taken with respect to a broker-dealer? _____ ☐ Yes  ☒ No

    (f) Have you ever been enjoined, temporarily or otherwise from selling or dealing in securities or commodities or from functioning as an investment advisor? _____ ☐ Yes  ☒ No

    (g) Have you ever been a principal or employee of any corporation, firm, or association which was enjoined temporarily or otherwise from selling or dealing in securities or commodities or from functioning as an investment advisor? _____ ☐ Yes  ☒ No

4.  Have you been subject to any final order of state securities commission (or any agency or office performing like functions), state authority that supervises or examines banks, savings associations, or credit unions, state insurance commission (or any agency or office performing like functions), an appropriate federal banking agency or the National Credit Union Administration, that

    (a) bars you from association with an entity regulated by such commission, authority, agency, or office, or from engaging in the business of securities, insurance, banking, savings association activities, or credit union activities; or

    (b) constitutes a final order based on violations of any laws or regulations that prohibit fraudulent, manipulative, or deceptive conduct? _____ ☐ Yes  ☒ No

5.  If answer to question 3 or 4 is yes, supply the following information: Nature of action, action taken by, date of action, name of broker-dealer employed/associated with and nature of your employment/association. Attach separate sheet if necessary.

6.  In your previous business connections or employment in any capacity, have transactions under your attention ever been the subject of complaint or legal proceedings? If "yes," give names and details in space provided. _____ ☐ Yes  ☒ No

7a. (1) Have you ever:

    (a) been convicted of or pled guilty or nolo contender ("no contest") in a domestic, foreign or military court to any felony? _____ ☐ Yes  ☒ No

    (b) been charged with a felony? _____ ☐ Yes  ☒ No

AGE 145—7704

Employment Application    —    page 5

(2) Based upon activities that occurred while you exercised control over it, has an organization ever:

(a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic or foreign court to any felony? ........................................................................................................................................... ☐ Yes ☒ No

(b) been charged with any felony? ........................................................................................................ ☐ Yes ☐ No

7b. (1) Have you ever:

(a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign or military court to a misdemeanor involving: investments or an investment-related business or any fraud, false statements or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses? ......................................................................................................... ☐ Yes ☒ No

(b) been charged with a misdemeanor specified in 7B(1)(a)? ............................................................. ☐ Yes ☒ No

(2) Based upon activities that occurred while you exercised control over it, has an organization ever:

(a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic or foreign court to a misdemeanor specified in 7B(1)(a)? ....................................................................................................... ☐ Yes ☒ No

(b) been charged with a misdemeanor specified in 7B(1)(a)? ............................................................. ☐ Yes ☒ No

8. Have you ever been known personally by any other name, or have you ever conducted business in any other name than that is shown on page two of this application? If "yes," give details including names used and dates of use in space provided below. Include maiden names and names used from a previous marriage. ........................................... ☐ Yes ☒ No

| No. | Number Answers to Correspond to Number of Question(s) Above |
|-----|-----------------------------------------------------------|
|     |                                                           |

Applicant Signature                                    Date
X _____                   8/10/07
Applicant (Print Name)
Molissa Corba

ADE 146—7/04

# Employment Application

EDWARDS.

One North Jefferson
St. Louis, MO 63103

Statement of Policy for A.G. Edwards & Sons, Inc.:
There shall be no discrimination based on race, religion,
color, sex, age, disability or national origin in any of the
Firm's employment practices and procedures, including
recruitment and the advertising of position vacancies.

"Edwards" refers to A.G. Edwards & Sons, Inc.

## WHERE DID YOU HEAR OF THE JOB?

☐ Classified advertising (which newspaper)

☐ Community agency (which one)

☐ Employment/placement agency (which one)

☐ State employment service (which state)

☐ School (which one)

☐ Job fair (which one)

☑ Current Edwards employee (name)

☐ Edwards open house (date)

☐ Came on own accord

☐ Other (describe)

## DATE OF APPLICATION

6/14/06

## JOB APPLIED FOR

Kind of work or position applied for:

First choice _Manager Institutional Equity Sales_

Second choice _____

Salary expected _____

Date available  6 / 14 / 06

☑ Full time    ☐ Part time
☐ Summer    ☐ Temporary

Hours available _____

Will you work overtime?   ☐ Yes ☐ No

AGE 145—12/05

# EXHIBIT 2

**READ CAREFULLY BEFORE SIGNING**

In this application, "I," "me" and "my" refer to the employee applicant. "Edwards" refers to A.G. Edwards & Sons, Inc.

I understand that in compliance with NYSE Rule 407(b), Edwards normally requires employees to close or transfer to Edwards any securities or commodity accounts they have with other firms or financial institutions.

The data given herein is true and accurate to the best of my knowledge and belief. I understand that this information will be verified, for which purpose I authorize and request any and all of my former employers and any other person to furnish to Edwards, or any agent acting on its behalf, any information they may have concerning my creditworthiness, character, ability, business activities, educational background and general reputation; together with, in the case of former employers, a history of my employment by them and the reasons for the termination thereof. Moreover, I hereby release each such employer and each such other person from any liability of whatsoever nature by reason of furnishing such information to Edwards or any agent acting on its behalf. I agree to accept the decisions of the New York Stock Exchange, Inc. or any other regulatory authority on approval or denial of my employment.

Further, I recognize that I will be the subject of an investigative background report ordered by Edwards, and that I have the right to request complete and accurate disclosure by Edwards of the nature and scope of the investigation requested. I also recognize that my fingerprints will be forwarded to the Federal Bureau of Investigation for comparison with their files of all arrest records, in compliance with S.E.C. Rule 17F-2.

This agreement contains a pre-dispute arbitration clause immediately below. Before signing this agreement, I read and understood the following:

- I am agreeing to arbitrate any dispute, claim or controversy that may arise between myself and Edwards, or a customer, or any other person. This means that I am giving up the right to sue in court Edwards, its subsidiaries or employees or any customer or any other person concerning matters related to or arising from my employment. This includes giving up the right to a trial by jury.

- A claim alleging discrimination, including a sexual harassment claim, in violation of any statute, IS REQUIRED to be arbitrated under this agreement.

- Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

- The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

- The arbitrators do not have to explain the reason(s) for their award.

- The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry, or public arbitrators, as provided by the rules of the arbitration forum in which a claim is filed.

- The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

In consideration of Edwards undertaking the aforementioned investigation and considering my application for employment, I agree that any controversy or dispute, including, but not limited to, claims of wrongful termination, breach of contract, discrimination, harassment, retaliation, infliction of emotional distress, tortious interference with business or contract, federal, state or local statute or ordinance and/or other theory, arising between me and Edwards shall be submitted for arbitration before the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. If neither the New York Stock Exchange, Inc. nor the National Association of Securities Dealers accepts the controversy, dispute or claim, or any portion thereof, for arbitration before either of them, then the non-accepted controversy, dispute or claim shall be submitted for arbitration before the American Arbitration Association pursuant to its Securities Arbitration Rules effective May 1, 1993. I understand that if Edwards hires me, my employment will be subject to the policy of employment at will. Under this policy, I may resign my employment at any time, with or without cause. Edwards retains the same right with respect to the termination of my employment.

I understand that if Edwards employs me, I will be deemed to be a person associated with a member of the NASD. I agree to abide by the rules and regulations of the NASD and any other securities and commodities exchanges of which Edwards is a member, as well as the rules and regulations of Edwards.

I understand that any misstatement of fact or omission of material information required on this application will be grounds for my immediate dismissal.

Applicant Signature

X _____        Date 6/14/06

Applicant (Print Name)

DOUGLAS L. PEARL

AGE 145—12/05

# Financial Associate Agreement



EDWARDS.

One North Jefferson
St. Louis, MO 63103

In the event A.G. Edwards & Sons, Inc., a corporation formed under the laws of the state of Delaware ("Edwards"), accepts your application for employment and registration with the New York Stock Exchange, Inc., and the National Association of Securities Dealers, Inc. as a Financial Associate for Edwards, and if you accept employment with Edwards, you will be an employee at will of Edwards, and your employment may be terminated with or without cause and with or without notice.

In consideration of such acceptance and employment, you agree that:

1. So long as you serve as an employee of Edwards, you will act only in Edwards' best interest. For that purpose, you will perform your work competently and diligently; and you will observe all directions given by officials of Edwards, all policies announced by Edwards, all regulations and procedures prescribed in Edwards' Policy and Procedures Manuals and other manuals as from time to time are altered or issued, and all applicable rules of regulatory authorities. You will conduct yourself as a loyal and faithful employee of Edwards, and you will in no event take any action which could harm Edwards' business or its relationships with its customers/clients.

2. NOTHING HEREIN IS A PROMISE OF EMPLOYMENT FOR A FIXED TERM. Edwards may terminate your employment for any reason or for no reason, just as you may resign at any time.

**Business Practices**

3. Prior to your registration by the proper authorities, including state authorities, you will not solicit, receive or transmit directly or indirectly, any order in any security and/or insurance product and/or commodity.

4. In the event that prior to your proper registration any person or firm wishes to place an unsolicited order or transaction through you, you will not accept such an order or transaction nor will you transmit the order or transaction to your branch manager or a Financial Consultant. You will, instead, refer such person to the manager of the office.

5. After your registration, you will confine your solicitations to and accept orders only from residents of the states where Edwards is a registered broker/dealer and you are registered as a salesperson for Edwards. You agree that it is your responsibility to contact the St. Louis office of Edwards to determine the registration status of a security in a given state before effecting transactions in that security in that state, and you will not effect any transactions in any security in any state unless such security is registered under the securities law of that state or exempt from such registration or unless such transaction is itself exempt from such law.

In the event you become licensed as an insurance agent, Financial Consultant or solicitor, you will confine your solicitations and insurance business to states where Edwards or an Edwards' subsidiary or affiliated company or agency is properly licensed for the product and/or insurance company involved, and where you are properly licensed for the product and insurance company involved.

In the event new insurance, securities or commodities products are offered by Edwards that require separate licensing, registration or testing prior to the sale thereof, you agree that you will not offer or sell any such products until and unless you are properly licensed, registered or tested for said product.

6. In the event you become licensed to solicit and sell insurance products, you will not solicit or sell any product of any insurance company not approved by Edwards and/or an Edwards' subsidiary or an affiliated company or agency.

7. In dealing with customers/clients of Edwards, you will make no representation that relates to a security not properly registered (or exempted) under the Securities Act of 1933, or which is so incomplete as to be misleading, or which is not based on facts appearing in generally recognized statistical and financial publications, manuals and financial sections of newspapers or available to the public in general. You are not authorized to waive any provision of Edwards' Customer/Client's Agreement or its margin requirements.

8. You will not take or receive, directly or indirectly, a share in the profits of any account of a customer/client, or share in any losses sustained in any such account. You will not borrow money or securities from a customer/client of Edwards unless the customer/client is a financial institution engaged in the business of loaning funds or securities.

9. You will not, without Edwards' prior written permission, effect a cash or margin transaction or maintain a cash or margin account in securities or commodities, or have any direct or indirect financial interest in any such transaction or account, except with or through Edwards.

10. In connection with any underwriting, you understand that you may solicit and accept indications of interest from the public in the securities to be sold between the time of the filing of the Registration Statement with the Securities and Exchange Commission covering such securities and the effective date of the offering. The only printed matter that you will use to solicit such indications of interest is a current preliminary prospectus. If you should distribute such a preliminary prospectus to the public, you will send a revised preliminary prospectus. You will not confirm orders or promise stock on the basis of preliminary allocations made by Edwards' Syndicate Department.

ADE 445-13/04

EXHIBIT 3

Financial Associate Agreement  -

page 2

**11.** You will not in any way represent to any customer/client in connection with any security, commodity or insurance transaction that you or Edwards will indemnify the customer/client against loss.

**12.** You will not rebate, directly or indirectly, to any person, firm or corporation any part of the compensation you may receive from Edwards or an Edwards' subsidiary or affiliated company or agency, and you will not pay any part of such compensation directly or indirectly to any person, firm or corporation as a bonus, commission, fee or other consideration in connection with any securities, commodities and/or insurance business sought by, handled by, or procured for you or Edwards or any subsidiary or affiliated company or agency of Edwards.

**13.** Without Edwards' prior written permission, you will not (i) personally lend money or in any manner grant credit to any customer/client of Edwards or (ii) participate in the arrangement of credit for such customer/client outside of the facilities of Edwards or (iii) become personally liable, directly or indirectly, on any evidence of indebtedness executed by any customer/client of Edwards in favor of a creditor of such customer/client or (iv) arrange for the extension or maintenance of credit for the purchase of securities in your own or family securities accounts on better terms than could be offered by Edwards. You also affirm that you are not now in violation of Regulation T of the Federal Reserve Board with respect to securities positions you hold and that you have listed all of your securities or commodities accounts on Schedule A annexed hereto.

**Employment Practices**

**14.** You will become familiar with and abide by the rules and regulations of Edwards, the National Association of Securities Dealers, Inc., the New York Stock Exchange, Inc. and other securities and commodities exchanges of which Edwards is a member. You will also become familiar with and abide by the laws and regulations relative to the securities and/or commodities business of the federal government and of the state or states where you are a registered salesperson. In the event you become registered to sell insurance products, you will become familiar with and abide by the laws and regulations relative to the insurance business of the state or states where you are a registered insurance salesperson.

**15.** You will use the communication equipment provided by Edwards and the programs and services on that equipment for official business purposes only. The communication equipment includes, but is not limited to, e-mail, wires, voice mail, Internet access, facsimile machines, telephones and computers. You acknowledge that you are not entitled to any expectation of privacy when using the communication equipment, programs or services provided by Edwards and the programs and services on that equipment.

**16.** You understand and agree that as part of Edwards' duty to supervise your activities in accordance with the Constitution and Rules of the New York Stock Exchange, Inc., the National Association of Securities Dealers, Inc., and the various commodity exchanges and applicable federal and state securities laws, you will, at any time upon Edwards' request, appear before

AGE 445—1204

an Edwards' officer, committee or person designated by Edwards and give full information upon any subject that relates to such of your activities as are subject to Edwards' supervision, and you will produce, upon Edwards' request, all of your records or documents, including but not limited to, personal bank statements and the like, relative to Edwards' inquiry.

**17.** You will clear any business correspondence written by you (including any handwritten memoranda and notes) with your branch manager prior to mailing such correspondence and retain duplicate copies of all such correspondence. All e-mails, electronic transmissions and faxes relating to the business of Edwards or are sent or received using equipment of Edwards shall be sent or received only in accordance with Edwards policies and procedures.

**18.** Without Edwards' prior consent you will not (i) conduct any television or radio broadcasts with reference to the securities, commodities or insurance business in general or any particular security, commodity or insurance product, (ii) send out any advertisements, reports or market letters relating to any security, commodity or insurance product that has not been approved by Edwards or (iii) publish in any manner any report or article written by you with reference to the securities, commodities or insurance business in general or any particular security, commodity or insurance product.

**19.** You will devote your efforts solely to the business of Edwards and Edwards' subsidiary or affiliated companies and agencies, and, unless prior written approval is granted by Edwards, you will not engage in any other business, occupation, job, work or employment during your employment by Edwards, including, but not limited to, officerships or directorships in any company.

**20.** Unless prior written approval is granted by Edwards, you will not participate, directly or indirectly in any security, commodity or insurance transaction which will not be processed through the facilities of Edwards or an Edwards' subsidiary or affiliated company or agency; nor will you, without Edwards' prior written permission, effect a cash or margin transaction or maintain a cash or margin account in securities or commodities, or have any direct or indirect financial interest in any such transaction or account, except with or through Edwards; nor will you, without Edwards' prior written permission, act on behalf of any party other than Edwards or an Edwards' subsidiary or affiliated company or agency in any matter. You will not contract or incur any indebtedness in the name of Edwards.

**21.** You will not take, accept or receive, directly or indirectly, from any person, firm, corporation or association other than Edwards, or a subsidiary or affiliated company or agency of Edwards, compensation of any nature in connection with any securities, commodities or insurance transaction or transactions, except with the prior written consent of Edwards.

**22.** You shall not discriminate or harass another individual on the basis of race, color, religion, sex, age, national origin, disability or any characteristic protected by law. Nor shall you retaliate against any individual who has expressed concerns about an occurrence of discrimination or harassment. If you

engage in such conduct, you shall bear full responsibility for such conduct and will indemnify and hold Edwards harmless against any and all expenses and liabilities suffered by Edwards as the result of such conduct.

22. You will notify Edwards promptly if, during your employment, you become involved in any litigation or if any judgments are adjudicated against you; or if your registration or license to sell or deal in securities, commodities and/or insurance or to function as an investment advisor is ever refused, suspended or revoked; or if you become enjoined, temporarily or otherwise, from selling or dealing in securities, commodities and/or insurance or from functioning as an investment advisor; or if you are arrested, summoned, arraigned, or indicted for a criminal offense; or if you become involved in bankruptcy proceedings.

24. Both during and after the time you serve as an employee of Edwards, you will not divulge to any person any information received during the course of your employment concerning the business of the firm and its financial affairs.

25. In the event you subsequently wish to be registered with Edwards as a Financial Consultant, you agree that (a) you will give six (6) months' notice prior to formally applying to be a Financial Consultant; (b) you will accept and handle only those customer/client accounts approved by your branch manager; (c) you will execute the appropriate Edwards' Supplementary Training Agreement for a Financial Consultant; and (d) you will participate in the Edwards' Financial Consultant sales training program or other training program prescribed by Edwards' Training Department. You understand and agree that you shall not apply to be a Financial Consultant prior to twenty-four (24) months of continuous employment without your branch manager's approval.

## Compensation

26. Your compensation will be based upon a salary and, in particular situations, a portion of the credit for the commissions or fees generated by accounts serviced by you at the prevailing rate at the office at which you are employed less debits for certain items, including losses arising from transactions undertaken by customers/clients whose accounts are serviced by you, losses from settlements, awards or judgments arising in connection with customer/client complaints, extension charges, account debit balances, loss chargebacks, drafting charges, etc., in accordance with Edwards' established policies. Your compensation credit is conditioned upon your continued employment with Edwards at the time such commissions or fees are paid and received by Edwards and your continued employment with Edwards at the time such commissions or fees are earned and no longer subject to refund by Edwards. In the event the purchaser of any insurance or annuity or contractual plan shall cease making the regular premium or investment payments thereon or shall cancel or surrender such policy or contract, any commissions or credits received thereon that are refundable to the insurance company or other issuer shall be immediately repaid by you to Edwards. In the event a customer/client shall cease making the regular fee payments

for any fee-based account, managed or otherwise, or shall cancel or terminate any fee-based agreement, any fees or credits received thereon that are refundable to the customer/ client shall be immediately repaid by you to Edwards.

## Records and Documents

27. All records and documents, whether original, duplicated, computerized, memorized, handwritten, or in any other form, and the information contained thereon, concerning the business and affairs of Edwards, including without limitation the names, addresses, telephone numbers, financial information, and assets and obligations carried in any account of any customer/client, customer/client lead or prospect ("Account"), and the books, papers, records and recordings furnished to you during your training program, are confidential and are the sole and exclusive property of Edwards. These records, documents and information, whether provided to you by Edwards or by any Account, is entrusted to you as an employee and representative of Edwards. You will not use or remove any documents, records or information from the Edwards office except for the sole purpose of conducting business on behalf of Edwards. You agree not to divulge or disclose these records, documents or information to any third party and, under no circumstances, will you reveal or permit these records, documents or information to become known to any individual or organization that, does business in securities, commodities and financial futures, insurance or any other lines of business in which Edwards or any of its affiliates are engaged.

These records, documents and information are not generally known outside Edwards and are kept confidential within Edwards. This information was acquired by a great expenditure of time, effort and money; is unique and cannot be lawfully duplicated or easily acquired. You agree that these records and documents are the property of Edwards and deserve trade secret protection.

## Termination

28. Edwards may terminate your employment at any time without prior notice with or without cause. Upon your termination for any reason whatsoever, Edwards shall be liable to you only for salary earned and not paid prior to the effective date of the termination less any debits or charges in accordance with Edwards' established policies or any debts you owe Edwards.

29. In the event that your employment with Edwards ends at any time either through termination by Edwards or through resignation by you, you will surrender all training materials, account records, customer's/client's statements and customer's/ client's files to Edwards, and you agree, in such event, that such termination or resignation, as the case may be, will constitute the forfeiture by you of your right. If any to receive any commission on transactions effected, insurance business placed or plan payments made subsequent to the date of such termination or resignation.

30. With respect to contractual plans, insurance sales, management programs and fee-based accounts, you agree to repay any portion of the commissions or fees received by you that are in . . . . excess of the commissions or fees earned by Edwards or Edwards' subsidiary or affiliated company or agency should the

Financial Associate Agreement   —                                                                              page 4

purchaser or customer/client cease making regular premium, investment, installment or fee payments or cancel or surrender the policy, contract or account. In the event of your termination from Edwards, you will refund the amount of any portion of the prepaid but unearned commissions or fees received by you that exceed the actual commissions or fees received by Edwards at the time of your termination or resignation. You agree that you have no interest in, title to or claim for any commissions or fees received by Edwards after the time of your termination or resignation.

31. You will not recruit, entice, induce or solicit, directly or indirectly during your employment with Edwards or for a period of one year following your termination of employment by Edwards, any employee of Edwards or any of its affiliates for employment with any other organization that does business in securities, commodities and financial futures, insurance or any other lines of business in which Edwards or any of its affiliates is engaged.

32. If, at any time you resign from Edwards, provoke your termination, or are terminated for cause, you agree that for a period of one year following your termination, you will not solicit by mail, by phone, by personal meeting, or by any other means, either directly or indirectly any Account whom you served or whose name became known to you during your employment at Edwards at any office and in any capacity. Your agreement "not to solicit" means that you will not, during your . employment and thereafter, initiate any contact or communication of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account to transfer from Edwards to any other person or organization that does business in securities, commodities and financial futures, insurance or any other lines of business in which Edwards or any of its affiliates is engaged, to open a new account with any such person or organization, or to otherwise discontinue its business relationship with Edwards.

**Hold Harmless**

33. You will indemnify and hold Edwards harmless from any and all losses suffered by Edwards as a result of the violation by you of any of the aforesaid agreements, any loss from. transactions in Accounts serviced by you, any settlements, awards or judgments arising from complaints by customers/ clients serviced by you. Both during and after the time you serve as an employee of Edwards (no matter what the reason for termination of your employment). Edwards may find it reasonable in the circumstances to charge you with the amount of any losses or liabilities incurred by the firm as a result of errors, rule violations or violations of Edwards' policy, transactions in Accounts serviced by you or settlements, awards or judgments to customers/clients serviced by you while you were an Edwards employee. In that event, you undertake to promptly pay Edwards the full amount assessed against you by Edwards.

AGE 445—12/04

**Arbitration**

34. This agreement between you and Edwards contains a predispute arbitration clause in the numbered paragraph immediately following this paragraph. You should read that paragraph now. Before signing this Agreement, you should understand the following:

- You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer/client, or any other person. This means that you are giving up the right to sue in court Edwards, its subsidiaries or employees or any customer/client, or any other person concerning matters related to or arising from your employment. This includes giving up the right to a trial by jury.

- A claim alleging employment discrimination, including a sexual harassment claim, in violation of any statute, IS REQUIRED to be arbitrated under this agreement.

- Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

- The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

- The arbitrators do not have to explain the reason(s) for their award.

- The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry, or public arbitrators, as provided by the rules of the arbitration forum in which a claim is filed.

- The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

35. Except as provided in paragraph 36, you agree that any controversy or dispute, including, but not limited to, claims of wrongful termination, breach of contract, discrimination, harassment, retaliation, infliction of emotional distress, tortious interference with business or contract, federal, state or local statute or ordinance and/or other theory, arising between you and Edwards shall be submitted for arbitration before the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. If neither the New York Stock Exchange, Inc. nor the National Association of Securities Dealers accepts the controversy, dispute or claim, or any portion thereof, for arbitration before either of them, then the nonaccepted controversy, dispute or claim shall be submitted for arbitration before the American Arbitration Association pursuant to its Securities Arbitration Rules effective May 1, 1993.

**Enforcement**

36. In the event you breach any of the covenants of paragraphs 27, 31 or 32, you agree that Edwards will be entitled to injunctive relief. You recognize that Edwards will suffer immediate and irrefutable harm and that money damages will not be adequate to compensate Edwards or to protect and preserve the status quo. Therefore, you consent to the issuance of a . temporary restraining order or a preliminary or permanent injunction ordering:

Financial Associate Agreement

(a) that you immediately return to Edwards all records or documents whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that you be enjoined and restrained from using or disclosing any such records or documents, and;

(b) that you be enjoined and restrained from soliciting any Account that you served or whose name became known to you while employed by Edwards in any office and in any capacity and:

(c) that you be enjoined and restrained from accepting business from any Account who was solicited in violation of paragraph 30 or whose records and information was used in violation of paragraph 25, and;

(d) that you be further enjoined and restrained from recruiting, enticing, inducing or soliciting, directly or indirectly, any employee of Edwards or any of its affiliates, for employment with any other organization that does business in securities, commodities and financial futures, insurance or any other lines of business in which Edwards or its affiliates is engaged.

The above restraints shall apply to each and every Account whom you served or whose name became known to you while employed at Edwards, in any office and in any capacity.

37. For the purposes of paragraph 34, you agree to submit to, and confer exclusive jurisdiction on, the United States District Court or State Court that has original jurisdiction for the judicial district or county in which you last worked for Edwards.

**Attorney's Fees and Costs of Enforcement**

38. In the event of the breach of any of the provisions of this agreement or any provisions of any other agreement between you and Edwards, you agree to pay any and all costs and fees including, but not limited to, the reasonable attorney's fees incurred by Edwards in connection with the enforcement of the provisions of this agreement or any other agreement between you and Edwards.

**Miscellaneous**

39. YOU ACKNOWLEDGE HAVING READ AND REVIEWED THIS AGREEMENT AND THE RESTRICTIVE COVENANTS IN THEIR ENTIRETY. You acknowledge having been given an opportunity to ask questions about it. You have also been given an opportunity to consult with an attorney of your choice. You agree that you fully understand the terms of this document and knowingly and freely agree to abide by them.

40. YOU ACKNOWLEDGE THAT YOU HAVE AN ADDITIONAL THIRTY (30) DAYS FROM THE DATE YOU SIGNED THIS AGREEMENT TO CONTINUE TO REVIEW IT AND SEEK LEGAL COUNSEL. At any time within this thirty (30) days, you may rescind this Agreement by discontinuing your employment with Edwards without any of the provisions herein being enforced against you. To the contrary however, if you continue your employment with Edwards beyond said thirty (30) days, your continuation of employment will constitute your ratification and complete acceptance of this agreement.

41. The terms of your employment and these standard provisions will ensure to the benefit of, and be binding upon, both you and Edwards and our respective successors and assigns. This Agreement shall be governed by and construed in accordance with the laws of the state of Missouri even though you are not, or cease to be, a resident or employee in that state.

42. "Insurance," "insurance products" and "insurance policies" shall include any and all products, contracts, policies, services or securities offered by or sold through an insurance company, including, but not limited to, all annuities, fixed or variable, retirement plans, Keogh plans, individual retirement accounts and annuities, life insurance, health insurance, accident insurance, liability insurance, and all other forms of insurance now or hereafter offered by an insurance company. "Insurance transactions" shall include the purchase or sale of any of the above. "Insurance commissions" shall include any monies paid by insurance companies or other parties as consideration for the purchase or sale of any of the above.

43. If any provisions of this Agreement shall, for any reason, be adjudged to be void, invalid or unenforceable by an arbitrator or arbitration panel, a regulatory body or a court of law, the remainder of this Agreement shall nonetheless continue and remain in full force and effect.

**Sign and return this Agreement to signify your acceptance of the foregoing terms and conditions.**

A.G. EDWARDS & SONS, INC.

Agreed to and accepted

Financial Associate Signature _____ Date ____
X _____
(Printed Name)
Melissa Forbes
Branch Office 619

AGE 445-1294

Financial Associate Agreement



AGE 4G-1204

# Supplementary Training Agreement for a Financial Associate

**A.G. Edwards**

One North Jefferson
St. Louis, MO 63103

In the event A.G. Edwards & Sons, Inc., a corporation formed under the laws of the state of Delaware ("Edwards"), accepts your application for employment and registration with the New York Stock Exchange, Inc. and the National Association of Securities Dealers, Inc. as a financial associate representing Edwards, you and Edwards agree that this employment may be terminated at any time by either party with or without cause and with or without notice.

In consideration of such acceptance and employment, you agree that:

You require specialized knowledge and skills to perform the duties of a financial associate, which you do not presently possess. You recognize that Edwards will incur significant expense in training and educating you as a financial associate and will disclose to you its business methods and procedures, training and operational manuals and other items and information which are the property of Edwards and which enable Edwards to compete successfully as a broker/dealer. As a major inducement for the disclosures to be made, and the employment and training to be given to you by Edwards and recognizing that it is difficult, if not impossible, to determine the damage to Edwards that may arise in the event you should choose to terminate your employment with Edwards, you agree that:

1. You have an obligation to Edwards for the salary, training and other benefits you receive during the training period and the post-licensing period, and you agree that $10,000 is a reasonable estimation of these costs. You and Edwards agree that the obligation will be satisfied upon the earliest occurrence of one of the following:

(a) Thirty-six (36) months of continuous employment with Edwards from the date of your registration; or

(b) The payment by you of the amount of $10,000 to Edwards.

2. You agree that in the event you breach the provisions set forth in paragraph 1, Edwards shall be entitled to monetary damages equal to $10,000, plus interest on such amount at the rate of 10% per annum from the date of your termination until payment in full of your obligation, plus reasonable attorney's fees and all other costs and expenses of collection. You further specifically agree that all money, securities, commodities, other property, commissions or other income earned by you but held or carried by Edwards shall be subject to a general lien in Edwards' favor and to the right of setoff for the partial or complete discharge of this obligation. Said general lien and right of setoff shall be in addition to and not in substitution of any rights and remedies Edwards would otherwise have.

3. This agreement between you and Edwards contains a predispute arbitration clause in the numbered paragraph immediately following this paragraph. You should read that paragraph now. Before signing this agreement, you should understand the following:

* You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer/client, or any other person. This means that you are giving up the right to sue in court. Edwards, its subsidiaries or employees or any customer/client or any other person concerning matters related to, or arising from your employment. This includes giving up the right to a trial by jury.

* A claim alleging employment discrimination, including a sexual harassment claim, in violation of any statute, IS REQUIRED to be arbitrated under this agreement.

* Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

* The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

* The arbitrators do not have to explain the reason(s) for their award.

* The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry or public arbitrators, as provided by the rules of the arbitration forum in which a claim is filed.

* The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

4. You agree that any controversy or dispute, including, but not limited to, claims of wrongful termination; breach of contract; discrimination; harassment; retaliation; infliction of emotional distress; and tortuous interference with business or contract or federal, state, or local statute or ordinance and/or other theory arising between you and Edwards shall be submitted for arbitration before the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. If neither the New York Stock Exchange, Inc. nor the National Association of Securities Dealers, Inc. accepts the controversy, dispute or claim, or any portion thereof, for arbitration before either of them, then the nonaccepted controversy, dispute or claim shall be submitted for arbitration before the American Arbitration Association pursuant to its Securities Arbitration Rules effective May 1, 1993.

ACBE 409—4/93

**EXHIBIT 4**

1

Supplementary Training Agreement for a Financial Associate      page 2

5. In the event of the breach of any of the terms of this agreement, you shall pay any and all costs and fees incurred by Edwards in connection with the enforcement of the terms of this agreement, including, but not limited to, Edwards' reasonable attorney's fees.

6. You specifically understand that Edwards reserves any and all rights of action it may have against any person or entity that may cause or induce a breach of this agreement.

7. In the event that

(a) The office of Edwards to which you are attached is closed; or

(b) Your employment is terminated by Edwards and such termination is not provoked by you because of your agreement, intention or plan to violate any of the terms of this agreement; or

(c) Your employment with Edwards is terminated for whatever reason and you do not become employed with or for any individual or organization that does business in securities, commodities or financial futures, insurance or any other lines of business in which Edwards or any of its affiliates is engaged for a period of thirty-six (36) months from the date of your registration; or

(d) You are employed by Edwards continuously for a period of thirty-six (36) months from the date of your registration,

the provisions of this agreement shall not apply. A change in the office location shall not be deemed a closing of the office for purposes of this paragraph.

8. If any provisions of this agreement shall, for any reason, be adjudged to be void, invalid or unenforceable by an arbitrator or arbitration panel, a regulatory body or a court of law, the remainder of the agreement shall nonetheless continue and remain in full force and effect.

9. This agreement shall inure to the benefit of Edwards, its affiliates, and any successor in interest to the business of Edwards, whether through merger, acquisition, sale or other transfer.

10. NOTHING HEREIN IS A PROMISE OF EMPLOYMENT FOR A FIXED TERM. Edwards may terminate your employment for any reason or for no reason, just as you may resign at any time.

11. YOU ACKNOWLEDGE HAVING READ AND REVIEWED THIS AGREEMENT AND THE RESTRICTIVE COVENANTS IN THEIR ENTIRETY. You acknowledge having been given an opportunity to ask questions about it. You have also been given an opportunity to consult with an attorney of your choice. You agree that you fully understand the terms of this document and knowingly and freely agree to abide by them.

12. YOU ACKNOWLEDGE THAT YOU HAVE AN ADDITIONAL THIRTY (30) DAYS FROM THE DATE YOU SIGNED THIS AGREEMENT TO CONTINUE TO REVIEW IT AND SEEK LEGAL COUNSEL. At any time within this thirty (30) days, you may rescind this agreement by discontinuing your employment with Edwards without any of the provisions herein being enforced against you. To the contrary, however, if you continue your employment with Edwards beyond said thirty (30) days, your continuation of employment will constitute your ratification and complete acceptance of this agreement.

**SIGN AND RETURN THIS AGREEMENT TO SIGNIFY YOUR ACCEPTANCE OF THE FOREGOING TERMS AND CONDITIONS.**

**A.G. EDWARDS & SONS, INC.**

Agreed to and accepted

Financial Associate Signature        . Date
X _____

Financial Associate (Print Name)
_____

Branch Office
_____

## FORM U-4
### UNIFORM APPLICATION FOR SECURITIES INDUSTRY REGISTRATION OR TRANSFER

FIRM CRD #

SOCIAL SECURITY #

APPLICANT'S CRD #

1. I swear or affirm that I have read and understand the items and instructions on this form and that my answers (including attachments) are true and complete to the best of my knowledge. I understand that I am subject to administrative, civil or criminal penalties if I give false or misleading answers.

2. I apply for registration with the jurisdictions and SROs indicated in Item 11 as may be amended from time to time and, in consideration of the jurisdictions and SROs receiving and considering my application, I submit to the authority of the jurisdictions and SROs and agree to comply with all provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by-laws and rules and regulations of the jurisdictions and SROs as they are or may be adopted, or amended from time to time. I further agree to be subject to and comply with all requirements, rulings, orders, directives and decisions of, and penalties, prohibitions and limitations imposed by the jurisdictions and SROs, subject to right of appeal or review as provided by law.

3. I agree that neither the jurisdictions or SROs nor any person acting on their behalf shall be liable to me for action taken or omitted to be taken in official capacity or in the scope of employment, except as otherwise provided in the statutes, constitutions, certificates of incorporation, by-laws or the rules and regulations of the jurisdictions and SROs.

4. I authorize the jurisdictions and SROs to give any information they may have concerning me to any employer or prospective employer, any federal, state or municipal agency, or any other SRO and I release the jurisdictions and SROs and any person acting on their behalf from any and all liability of whatever nature by reason of furnishing such information.

5. I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in Item 11 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

6. For the purpose of complying with the laws relating to the offer or sale of securities or commodities, I irrevocably appoint the administrator of each jurisdiction indicated in Item 11 as may be amended from time to time, or such other person designated by law, and the successors in such office, my attorney upon whom may be served any notice, process, pleading, subpoena or other document in any action or proceeding against me arising out of or in connection with the offer or sale of securities or commodities, or out of the violation or alleged violation of the laws of such jurisdictions. I consent that any such action or proceeding against me may be commenced in any court of competent jurisdiction and proper venue by service of process upon the appointee as if I were a resident of, and had been lawfully served with process in, the jurisdiction. I request that a copy of any notice, process, pleading, subpoena or other document served hereunder be mailed to my current residential address as reflected in this form or any amendment thereto.

7. I consent that the service of any process, pleading, subpoena, or other document in any investigation or administrative proceeding conducted by the SEC, CFTC or a jurisdiction or in any civil action in which the SEC, CFTC or a jurisdiction are plaintiffs, or the notice of any investigation or proceeding by any SRO against the applicant, may be made by personal service or by regular, registered or certified mail or confirmed telegram to me at my most recent business or home address as reflected in this Form U-4, or any amendment thereto, by leaving such documents or notice at such address, or by any other legally permissible means.

   I further stipulate and agree that any civil action or administrative proceeding instituted by the SEC, CFTC or a jurisdiction may be commenced by the service of process as described herein, and that service of an administrative subpoena shall be effected by such service, and that service as aforesaid shall be taken and held in all courts and administrative tribunals to be valid and binding as if personal service thereof had been made.

8. I authorize all my employers and any other person to furnish to any jurisdiction, SRO, employer, prospective employer, or any agent acting on its behalf, any information they have, including my creditworthiness, character, ability, business activities, educational background, general reputation, history of my employment and, in the case of former employers, complete reasons for my termination. Moreover, I release each employer, former employer and each other person from any and all liability, of whatever nature, by reason of furnishing any of the above information, including that information reported on the Uniform Termination Notice for Securities Industry Registration (Form U-5). I recognize that I may be the subject of an investigative consumer report and waive any requirement of notification with respect to any investigative consumer report ordered by any jurisdiction, SRO, employer, or prospective employer. I understand that I have the right to request complete and accurate disclosure by the jurisdiction, SRO, employer or prospective employer of the nature and scope of the requested investigative consumer report.

9. I understand and certify that the representations in this form apply to all employers with whom I seek registration as indicated in Items 4 and 10 of this form. I agree to update this form by causing an amendment to be filed on a timely basis whenever changes occur to answers previously reported. Further, I represent that, to the extent any information previously submitted is not amended, the information provided in this form is currently accurate and complete.

10. I authorize any employer or prospective employer to file electronically on my behalf any information required in this form or any amendment thereto; I certify that I have reviewed and approved the information to be submitted to any jurisdiction or SRO on this Form U-4 Application; I agree that I will review and approve all disclosure information that will be filed electronically on my behalf; I further agree to waive any objection to the admissibility of the electronically filed records in any criminal, civil, or administrative proceeding.

(All applicants must execute this page.)

06/14/06
DY/DD/YYYY

SIGNATURE OF APPLICANT

DOUGLAS L PEARL
TYPE OR PRINT NAME OF APPLICANT

**EXHIBIT 5**

Form U4 (8/2005)

PAGE 4