August 25, 2008


Honorable Thomas P. Griesa
United States District Court
500 Pearl Street
New York, NY  10007

Re:    Forbes v. A.G. Edwards & Sons, Inc.
       Civil Action No. 08 CV 00552

Dear Judge Griesa:

Please accept this letter brief in lieu of a formal Brief in opposition to Defendants'

Motions to Compel Arbitration or, in the alternative, to Dismiss Plaintiff's Complaint pursuant to

Federal Rules of Civil Procedure 12(b)(6), as well as the Federal Arbitration Act.

### STATEMENT OF FACTS

In September, 2004, Plaintiff Melissa Forbes began working at the NYC office of

Defendant A.G. Edwards & Sons, Inc. on a temporary basis.  Shortly thereafter, she was offered

a full time position as a financial associate and officially became a full time employee on

October 12, 2004.  As a condition of employment, she was required to complete an employment

application which contained a pre-dispute arbitration clause.  This application was signed by her

on October 10, 2004 and is attached hereto as Exhibit A.  It is not signed by any agent of

Defendant Edwards.  She also was required to sign a Financial Associate Agreement which

contained a pre-dispute arbitration clause (attached as Exhibit B) and a Supplementary Training

Agreement for a Financial Associate which contained the same pre-dispute arbitration clause

(attached as Exhibit C).  Those two forms are undated and are not signed by any agent or

employee of Defendant A.G. Edwards & Son, Inc.  On August 8, 2005, Plaintiff completed a U-4

Form (attached at Exhibit D) which contains a paragraph relating to arbitration under Section 15A, Paragraph 5.  Completion of the U-4 was also a requirement of her employment.

Plaintiff and Defendant Douglas L. Pearl, who was member of upper management of A. G. Edwards and a Supervisor of Plaintiff, attended a Retail Conference in Miami, Florida from January 21 – 23, 2007.  During the evening of January 22, 2007 and/or the early morning hours of January 23, 2007 Defendant Pearl physically attacked the plaintiff and abused her sexually.  In addition to the inappropriate, abusive and assaultive behavior, he also engaged in a course of conduct consisting of the use of profane and inappropriate language and otherwise sexually harassing behavior.  Defendant continued his harassing conduct toward Plaintiff at the New York City office following the conference, creating a hostile and offensive work environment.  Due to defendant's conduct, plaintiff was forced to resign her position with A. G. Edwards in August 2007.

Plaintiff sues alleging sexual discrimination, sexual harassment, retaliation, intentional infliction of emotional distress, assault and battery.  Plaintiff also seeks rescission of and/or a declaratory judgment voiding any and all arbitration agreements as set forth herein.

<u>ARGUMENT</u>

**I.    <u>Defendants' Motions To Compel Arbitration Are Premature, As No Discovery Has Occurred To Date.</u>**

Plaintiff should be afforded the opportunity to undertake discovery regarding the issues of signing, consideration and circumstances surrounding Plaintiff's signing of the various applications and agreements and the circumstances surrounding the drafting of the agreements and application. No answers have been filed in this matter to date and therefore no discovery has, as yet, occurred.   Plaintiff is unable to adequately address the issues presented in Defendants'

motion to compel arbitration without having the benefit of discovery. For example, the employment application, the Financial Associate Agreement and Supplementary Training Agreement bear no signatures from Defendant Edwards. The only signature that appears on these documents is Plaintiff's signature. It appears that the agreements are therefore, one-sided, binding only the Plaintiff, not Defendant Edwards. It is crucial that Plaintiff have the opportunity to discover the details surrounding the formulation and consideration for the agreements. Additionally, Plaintiff has requested the full contents of A. G. Edwards & Sons' investigation file concerning the allegations against Mr. Pearl. To date, this file has not been forthcoming. The information contained in that file could be critical in determining whether or not the issues between plaintiff and defendant Pearl are subject to arbitration. The motion should be stayed pending discovery on the issues involved.

**II.    The Agreements to Arbitrate Violate Plaintiff's Due Process, Are Unconscionable And Are Therefore Unenforceable.**

Title VII of the Civil Rights Act of 1964 (Title VII), as well as New York's corresponding employment discrimination statutes, prohibit employment discrimination based on race, color, religion, sex, or national origin. Our federal courts have long struggled with the issue of whether Title VII rights are sufficiently protected if disputes involving such matters are compelled to be arbitrated. Indeed the court in Alexander v. Gardner-Denver Co., 415 U. S. 36 (1974) prohibited any form of compulsory arbitration of Title VII claims. In 1998, the Ninth Circuit ruled that the Form U-4 compulsory arbitration clause was unenforceable with regard to Title VII claims. Duffield v. Robertson Stephens & Co., 144 R.3d 1182, 1190 (9th Cir.), cert. denied, 525 U.S. 982 (1998). The EEOC has issued a policy statement that supports the Duffield conclusion. See EEOC, Notice No. 915.002, Policy Statement on Mandatory Binding Arbitration

of Employment Discrimination Disputes as a Condition of Employment (1997).  Although these holdings have been affected by recent cases, such as <u>Desiderio v. National Ass'n of Securities Dealers,</u> 191 F.3d 198 (2d Cir. 1999) and <u>Circuit City Stores, Inc v. Adams,</u> 532 U.S. 105 (2001) the basic concern remains that a petitioner's rights under a Title VII claim might not be adequately protected by arbitration.

The concerns are multi-faceted.  The arbitrator might not have the expertise to resolve the legal questions that arise in a Title VII action.  <u>Patterson v. Newspaper and Mail Deliverers' Union of New York and Vicinity,</u> 760 F. Supp. 1087 (S.D.N.Y. 1991).  The fact finding process in arbitration is usually not equivalent to judicial fact finding.  <u>Id</u> at 1092.  The record of the proceedings is not as complete. <u>Clarke v. UFI, Inc.,</u> 98 F. Supp. 2d 320 (E.D.N.Y. 2000).  The usual rules of evidence do not apply.  <u>Ibid.</u>  The rights and procedures common to civil trials, discovery, compulsory process, cross-examination, and testimony under oath, often are severely limited or unavailable in an arbitration.  <u>Ibid.</u> The informality of an arbitration makes it a less appropriate forum for Title VII issues than federal courts.  <u>Phillips v. Cigna,</u> 27 F. Supp. 2d 345 (D. Conn. 1998).  The arbitration process does not allow for punitive damages. <u>Patterson,</u> supra.

Additionally, the cost of arbitration might have the effect of chilling the plaintiff's right to bring the cause of action.  The court has held that if a plaintiff cannot afford to pay the arbitrator's fees, he cannot be compelled to arbitrate.  <u>Ball v.SFX Broadcasting, Inc.</u> 165 F. Supp. 2d 230 (N.D.N.Y. 2001).  The imposition of such costs upon an employee has no parallel in the litigation arena.  Arbitration is "not a reasonable substitute for a judicial forum". <u>Ball,</u> 165 F. Supp. 2d at 240.

In 1999 the NASD promulgated the Code of Arbitration Procedures applicable to NASD arbitrations.  Rule 10201(b) provides an exception to mandatory arbitration for employment

discrimination claims. This rule supports the long held reservations that the court has held in regard to subjecting the rights protected by Title VII to the arbitration process.  See National Association of Securities Dealers, Code of Arbitration Procedure, Rule 10201(b) 1973 (amend. Effective Jan. 1, 1999) In 2006, the New York federal court based their decision on Rule 10201(b) and held that "A claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated.  Such a claim may be arbitrated only if the parties have agreed to arbitration, either before or after the dispute arose." Alliance Bernstein Inv. Research and Management, Inc v. Schaffran, 445 F. 3d 121 (2d Cir. 2006).  Therefore the issue becomes whether or not the parties agreed to pre-dispute arbitration.

Plaintiff submits that she did not agree to pre-dispute arbitration.  Although she did sign the agreements, she was not given a choice whether or not she wanted to agree to pre-dispute arbitration.  All of the agreements she signed were required in order to obtain employment with A. G. Edwards.  If she did not sign, she did not get the job.  She did not read the agreements before signing them.  She was not permitted to consult with an attorney before signing them. Without discovery, it is unknown whether she was offered the opportunity to take them home and read them before signing.  The court in Gold v. Deutsche Aktiengesellschaft, 365 F 3d 144, 150 (2d Cir. 2004) recognized that there may be circumstances under which courts will not enforce pre-dispute mandatory arbitration agreements with regard to statutory employment discrimination claims.  In the Gold case, the court held plaintiff Gold bound by the agreement even though he had not read it before he signed it, finding that Mr. Gold should have known better since he had an MBA from a top tier business school.  In the case at hand, Ms. Forbes was fresh out of college, having attended a two year community college and then University of North Florida.  A. G. Edwards was her first full-time job.  Therefore she should not be held to the same

5

standard as Mr. Gold.  She should have been given the opportunity to have the agreements explained to her, or at the very least been able to take them home and discuss them with someone more knowledgeable in the area of employment contracts.

Rule 10201(b) makes the Form U-4 agreement useless in the absence of an additional pre-dispute agreement.  Therefore we need only examine the employment application, the Financial Associate Agreement and the Supplementary Training Agreement of a Financial Associate as to whether the agreements are enforceable contracts.

Under New York law, an arbitration agreement is unconscionable and therefore unenforceable if it contains both procedural and substantive unconscionability. Moss v. Rent-A-Center, Inc., 2007 WL 2362207 at *5 (E.D.N.Y. Aug. 15, 2007), citing Gill v. World Inspection Network Int'l, Inc., 2006 WL 2166821 at *5 (E.D.N.Y. July 31, 2006).  To determine whether there is procedural unconscionability, courts look at whether a party lacked meaningful choice. Courts focus on evidence of high pressure or deceptive tactics, as well as disparity in bargaining power between the parties. Moss, supra, citing Brennan v. Bally Total Fitness, 198 F. Supp.2d 377, 382 (S.D.N.Y.2002).  Ms. Forbes had absolutely no bargaining power.  If she wanted the job, she had to sign the application and the agreements.  She lacked any sort of meaningful choice.

"A contract is substantively unconscionable where its terms are unreasonably favorable to the party against whom unconscionability is claimed.  Generally, arbitration agreements that bind both parties do not favor the stronger party unreasonably." Moss, supra at *6, citing "Desiderio, supra. at 207.  None of those forms are signed by A. G. Edwards or any agents thereof.  They are only signed by Plaintiff.  A. G. Edwards is not bound by the agreements.  The employment application reads, in pertinent part, "I agree that any controversy

or dispute …shall be submitted for arbitration…" The Financial Associate Agreement and the Supplementary Training Agreement for a Financial Associate (which are identical) read, "You are agreeing to arbitrate any dispute…." Nowhere do any of the agreements state that A. G. Edwards agrees to arbitrate such disputes. Here A. G. Edward is not bound. In the <u>Moss</u> case, the agreement stated, "The Company and I mutually consent to the resolution by arbitration…." and was then signed by an agent of the company. As stated above, in the present case, the agreements only state that Ms. Forbes consents to arbitration. The language does not bind Defendant Edwards and the agreements bear no signatures on behalf of Edwards. There is no evidence at all that Edwards agreed to arbitrate any claims they might have. The agreements basically consist only of plaintiff giving up her right to sue. The contract does not mutually bind both parties and unreasonably favors the stronger party. Therefore the agreements are unconscionable and unenforceable.

**III.    Even Assuming Arguendo that the Court Compels Arbitration of Plaintiff's Employment Discrimination Claims, Plaintiff's Claims for Assault, Battery, and Intentional Infliction of Emotional Distress are Exempt from Arbitration.**

In addition to her statutory employment discrimination claims, plaintiff has also made claims against Defendant Pearl for assault, battery and intentional infliction of emotional distress. These claims are based upon the conduct that occurred totally outside of the employment relationship and does not fall within the arbitration agreements. The courts are clear that a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. <u>United Steelworkers of America v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582 (1960) "When evaluating a motion to compel arbitration it must be shown that a valid agreement to arbitrate exists and whether the dispute in question falls within the scope of that

arbitration agreement." <u>Fleetwood Enterprises, Inc. v. Gaskamp,</u> 280 F.3d 1069, 1073 (5th Cir. 2002)  When the court is dealing with claims that do not involve federal statutes, such as plaintiffs claims for assault, battery and intentional infliction of emotional distress, a two-part test must be applied. A court must decide (1) whether the parties agreed to arbitrate; and (2) whether the particular dispute falls within the scope of that agreement.  <u>Manos v. Geissler,</u> 321 F.Supp.2d 588 (S.D.N.Y. 2004) The first part of that test is discussed in Point II of this brief.

In discussing their analysis of the second prong of the test, the court in <u>Manos,</u> states that the Second Circuit has articulated the following approach for determining whether a particular dispute is within the scope of an agreement to arbitrate: (1) the district court must first determine whether the arbitration clause at issue is broad or narrow; (2) if the clause is narrow, the court must determine whether the particular dispute involves a matter that "is on its face within the purview of the clause" or a "collateral matter"; and (3) if the court determines that the arbitration clause is narrow and the particular dispute involves a "collateral matter," the court should not compel arbitration of that dispute. <u>Manos,</u> supra, citing <u>Louis Dreyfus Nogoce S.A. v. Blystad Shipping & Trading Inc,</u> 252 F.3d 218, 224 (2d Cir.2001).  In the arbitration agreements at issue in this case, by setting forth specific instances to which the agreement applies, Edwards has formulated a narrow arbitration clause.  Sexual assault, battery and intentional infliction of emotional distress by physical assault are clearly collateral matters and therefore arbitration should not be compelled as to those counts.  Even if the court rules that the clause is broad, the court must ask whether the claim alleged implicates issue of contract construction or the parties' rights and obligations under it.  "Claims that present no question involving construction of the contract, and no questions in respect of the parties' rights and obligations under it, are beyond the scope of the arbitration agreement." <u>Collins & Aikman</u>

Products Co. v. Building Systems, Inc, 58 F.3d 16 (2nd Cir. 1995) The actual act of sexual assault that occurred on the night of Jan 22/23, 2007 could not have been envisioned to be encompassed by the arbitration agreement.  It does not involve the parties' rights and obligations under the employment contract or other agreements.  It is totally outside the scope of the employment-related agreement.

Courts have repeatedly held that intentional torts do not fall within even broadly construed arbitration agreements.  The court in Fuller v. Guthrie, 565 F.2d 259, 261 (2d Cir. 1977) held that "it is highly unlikely that the parties could have foreseen, no less intended, to provide a forum for wholly unexpected tortious behavior."  Similarly in Voss v. American Federation of Musicians, 507 F. Supp. 144 (S.D.N.Y. 1980) the court refused to compel arbitration of a defamation count.  A claim must involve "a significant issue of plaintiff's job performance" to require mandatory arbitration." Morgan v. Smith Barney Harris Upham & Co, 729 F.2d 1163, 1167 (8th Cir. 1984) The court in Hill v Hilliard, 945 S.W.2d 948 (1996), with very similar facts to the present case, thoroughly analyzed the issue concluding that while issues of sexual harassment and retaliation all related to the employment, the only connection that the torts of sexual assault and battery had with plaintiff's employment is that they were committed by a co-worker and occurred while on a business trip.  They held that the acts of defendant employee are independent of the employment relationship and that personal tort claims of rape, assault and battery were not subject to arbitration.  Similarly, the claims of sexual assault, battery and intentional infliction of emotional distress neither pertain to nor have a connection with Forbes' employment.  They cannot fall within the scope of the arbitration agreement.

Defendant Pearl cites the Moss case in his brief on the issue.  However, this case is distinguishable from the present case because the arbitration agreement in Moss specifically

states that tort claims are covered by the agreement. They also cite <u>Collins</u> which reliance is likewise misplaced. <u>Collins</u> holds that the court must examine the allegations in the complaint and determine if the allegations themselves "touch matters covered by the parties agreements". <u>Collins,</u> supra at 21. In fact, the court in <u>Collins,</u> supra, held that claims for tortious interference, fraud and rescission were not arbitrable.

The issue is also well analyzed in the recent case of <u>Jones v. Halliburton Co,</u> 2008 WL 2019463 (S.C. Tex). In that case the plaintiff was sexually assaulted by a co-employee while both worked for defendant Halliburton in Iraq. In this case the court found that plaintiff's claims of assault and battery and intentional infliction of emotional distress arising out of the assault were not within the scope of the arbitration process and the court refused to compel arbitration of those claims. They based their decision on the fact that the plaintiff could maintain these claims without reference to her employment. This reasoning also applies in the present case. "The fact that the rape was perpetrated by a Halliburton employee does not mean the assault necessarily had anything at all to do with the plaintiff's employment." <u>Jones, supra</u> at *9. The court in <u>Jones,</u> supra cites <u>Smith ex rel. Smith v. Captain D's, LLC,</u> 963 So.2d 1116 (Miss.2007), cert denied, --U.S. --, 2008 WL 695643 (Mar.17, 2008) which held that an employee's claim that she was raped by a supervisor could not be considered within the scope of a provision requiring the employee to arbitrate all claims related to her employment. The court in that case while interpreting the arbitration agreement under the FAA declared, "While recognizing the breadth of the language in the arbitration provision, we unquestionably find that a claim of sexual assault neither pertains to nor has a connection with plaintiff's employment." <u>Id.</u> at 1120,21.

In light of the facts of the case and the court holdings cited, the Court must not compel arbitration as to the issues of sexual assault, battery and intentional infliction of emotional distress and must allow them to be litigated in the federal courts.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff Forbes respectfully requests that the Court refuse to compel arbitration and that the cause of action remain in the federal court. Alternatively, the counts of assault, battery and intentional infliction of emotional distress should be allowed to proceed in the federal courts while all other proceedings are stayed pending arbitration.

Respectfully submitted,
s/ Mark F. Casazza
MARK F. CASAZZA, ESQUIRE

CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of August, 2008, this Letter Brief in lieu of a formal Brief in Opposition to Defendants' Motions was filed electronically and a copy was served via the ECF Notification System upon:

Sandra D. Grannum, Esquire
Davidson & Grannum, LLP
30 Ramland Road, Suite 201, Orangeburg, NY  10962
E-Mail:  sgrannum@davidsongrannum.com

Janene M. Marasciullo, Esquire
Kaufman, Schneider & Bianco, LLP
135 Crossways Park Drive, Woodbury, NY  11797
E-Mail:  jmarasciullo@kdvlaw.com

s/  Mark F. Casazza
MARK F. CASAZZA, ESQUIRE

Dated:  August 25, 2008

# EMPLOYMENT APPLICATION

Enter all answers legibly and in **BLACK INK**

We are interested in your qualifications. Help us evaluate your application by filling it out completely and accurately. Print or write legibly.

## GENERAL INFORMATION

| Name (last) | (first) | (middle) | Social Security number |
|---|---|---|---|
| Forbes | Melissa | Dyane | 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 |

| Present address (street and number) | (city) | (state)  (ZIP code) | Home phone |
|---|---|---|---|
| 1675 York Ave  33G | New York, NY | 10128 | (904)234-0885 |

| Emergency contact name | Relationship | Phone | Other phone/pager |
|---|---|---|---|
| Sean Massey | Fiance | (904)382-8736 | (201)286-7333 |

Have you ever applied at A.G. Edwards before? ☐ Yes ☒ No   If yes, when?

Were you ever employed by A.G. Edwards before? ☐ Yes ☒ No   If yes, when?   Location?

Are you eligible for employment in the United States? ☒ Yes ☐ No

## EDUCATIONAL DATA

| Name of school | Location | Dates attended From (mo./yr.) | To (mo./yr.) | Grade average | Major course | Diploma/ degree |
|---|---|---|---|---|---|---|
| High school Lake Mary High | Lake Mary, FL | 08/94 | 05/97 | 3.5 | | Diploma |
| College Seminole Comm. College | Sanford, FL | 08/97 | 05/01 | 3.6 | | A.A. |
| College University of North Florida | Jacksonville, FL | 08/01 | 12/03 | 3.4 | International Business | B.A. |
| Trade, business or other | | | | | | |

College/high school extracurricular activities, including honoraries, offices held (do not include activities that reveal age, race, religion, national origin, sex or disability):

## OTHER SKILLS/TRAINING

Check all the skills you have from the following list:

☒ Type 40 wpm   ☒ Filing   ☒ Spreadsheet software (list) MS Excel
☐ Shorthand ___ wpm   ☐ Switchboard   ☒ Word processing software (list) MS Word
☐ Dictaphone   ☐ Calculator/10-key   ☒ Other computer software (list) MS Access, MS PowerPoint, Adobe Photoshop

List other experience, skills, activities or training you believe reflect your ability to perform the desired position:

## BUSINESS REFERENCES

| Name | Company name and address | Daytime phone | Relationship |
|---|---|---|---|
| Julie Lane | Westport Corp - Islip, NY | 631-321-0425 | Friend |
| Steve Kleshner | AT&T Wireless NY, NY | 917-838-3370 | old coworker |
| Remy Balfelt | Walgreens Jacksonville, FL | 904-403-9106 | Friend |

AGE 145—7/04

# EMPLOYMENT/MILITARY BACKGROUND

List below all your employment experience, including military experience, starting with your previous or present employer and working backward. To meet the requirements of the Securities and Exchange Commission (SEC), this record must be a complete listing, including full-time and part-time work, self-employment, and unemployment. Attach an additional sheet if necessary. Do not indicate "see resume."

| Company name (present or most recent employer) | Address (street) | City | State | ZIP code |
|---|---|---|---|---|
| Taylor Hodson | W. 19th Street | New York | NY | 10011 |

| Job title | Hours worked per week | Employed from (mo./yr.) | | To (mo./yr.) |
|---|---|---|---|---|
| Temporary Employee | 40 | 9/04 | | Current |

| Duties | | Rate of pay (starting) | (ending or present) |
|---|---|---|---|
| | | $19/hr. | $19/hr. |

| Supervisor's name | Phone | Reason for leaving |
|---|---|---|
| Erin Harting | 212.924.8300 | Permanent Position |

| Company name | Address (street) | City | State | ZIP code |
|---|---|---|---|---|
| Resource Point | | Jacksonville | FL | 32256 |

| Job title | Hours worked per week | Employed from (mo./yr.) | To (mo./yr.) |
|---|---|---|---|
| Marketing Analyst | 40+ | 7/03 | 01/04 |

| Duties | Rate of pay (starting) | (ending or present) |
|---|---|---|
| Designed Product Catalog, market research | $0 | $0 |

| Supervisor's name | Phone | Reason for leaving |
|---|---|---|
| Jyoti Mujmader | | Internship |

| Company name | Address (street) | City | State | ZIP code |
|---|---|---|---|---|
| Algo Más | NA | Costa Rica | | |

| Job title | Hours worked per week | Employed from (mo./yr.) | To (mo./yr.) |
|---|---|---|---|
| Business Analyst | 50+ | 06/02 | 08/02 |

| Duties | Rate of pay (starting) | (ending or present) |
|---|---|---|
| Business Plan, Interviewing, recruiting | $0 | $0 |

| Supervisor's name | Phone | Reason for leaving |
|---|---|---|
| Sharon Duffy | NA | Volunteer |

| Company name | Address (street) | City | State | ZIP code |
|---|---|---|---|---|
| Areawide Cellular | | Jacksonville | FL | 32250 |

| Job title | Hours worked per week | Employed from (mo./yr.) | To (mo./yr.) |
|---|---|---|---|
| Sales Reprentative | 40 | 08/01 | 02/02 |

| Duties | Rate of pay (starting) | (ending or present) |
|---|---|---|
| Inventory, Purchasing, merchandising | $30,000 | $30,000 |

| Supervisor's name | Phone | Reason for leaving |
|---|---|---|
| Josh Hazen | NA | School |

May we contact your present employer for a reference? ☑ Yes ☐ No
Were any of the above employers members of the New York Stock Exchange (NYSE), the National Association of Securities Dealers (NASD), the Chicago Board of Trade or any other securities or commodities self-regulatory organization? ☐ Yes ☒ No

## READ CAREFULLY BEFORE SIGNING

**In this application, "I," "me" and "my" refer to the employee applicant. "Edwards" refers to A.G. Edwards & Sons, Inc.**

I understand that in compliance with NYSE Rule 407(b), Edwards normally requires employees to close or transfer to Edwards any securities or commodity accounts they have with other firms or financial institutions.

The data given herein is true and accurate to the best of my knowledge and belief. I understand that this information will be verified, for which purpose I authorize and request any and all of my former employers and any other person to furnish to Edwards, or any agent acting on its behalf, any information they may have concerning my creditworthiness, character, ability, business activities, educational background and general reputation; together with, in the case of former employers, a history of my employment by them and the reasons for the termination thereof. Moreover, I hereby release each such employer and each such other person from any liability of whatsoever nature by reason of furnishing such information to Edwards or any agent acting on its behalf. I agree to accept the decisions of the New York Stock Exchange, Inc. or any other regulatory authority on approval or denial of my employment.

Further, I recognize that I will be the subject of an investigative background report ordered by Edwards, and that I have the right to request complete and accurate disclosure by Edwards of the nature and scope of the investigation requested. I also recognize that my fingerprints will be forwarded to the Federal Bureau of Investigation for comparison with their files of all arrest records, in compliance with S.E.C. Rule 17F-2.

**This agreement contains a pre-dispute arbitration clause immediately below. Before signing this agreement, I read and understood the following:**

- **I am agreeing to arbitrate any dispute, claim or controversy that may arise between myself and Edwards, or a customer, or any other person. This means that I am giving up the right to sue in court Edwards, its subsidiaries or employees or any customer or any other person concerning matters related to or arising from my employment. This includes giving up the right to a trial by jury.**

- **A claim alleging discrimination, including a sexual harassment claim, in violation of any statute, IS REQUIRED to be arbitrated under this agreement.**

- **Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.**

- **The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.**

- **The arbitrators do not have to explain the reason(s) for their award.**

- **The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry, or public arbitrators, as provided by the rules of the arbitration forum in which a claim is filed.**

- **The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.**

**In consideration of Edwards undertaking the aforementioned investigation and considering my application for employment, I agree that any controversy or dispute, including, but not limited to, claims of wrongful termination, breach of contract, discrimination, harassment, retaliation, infliction of emotional distress, tortious interference with business or contract, federal, state or local statute or ordinance and/or other theory, arising between me and Edwards shall be submitted for arbitration before the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. If neither the New York Stock Exchange, Inc. nor the National Association of Securities Dealers accepts the controversy, dispute or claim, or any portion thereof, for arbitration before either of them, then the non-accepted controversy, dispute or claim shall be submitted for arbitration before the American Arbitration Association pursuant to its Securities Arbitration Rules effective May 1, 1993. I understand that if Edwards hires me, my employment will be subject to the policy of employment at will. Under this policy, I may resign my employment at any time, with or without cause. Edwards retains the same right with respect to the termination of my employment.**

**I understand that if Edwards employs me, I will be deemed to be a person associated with a member of the NASD. I agree to abide by the rules and regulations of the NASD and any other securities and commodities exchanges of which Edwards is a member, as well as the rules and regulations of Edwards.**

**I understand that any misstatement of fact or omission of material information required on this application will be grounds for my immediate dismissal.**

| Applicant Signature | Date |
|---|---|
| X  _Melissa Forbes_ | 10/10/04 |

**Applicant (Print Name)**

Melissa Forbes

14584-4-0704

## READ CAREFULLY BEFORE SIGNING

**In this application, "I," "me" and "my" refer to the employee applicant. "Edwards" refers to A.G. Edwards & Sons, Inc.**

I understand this in compliance with NYSE Rule 407(b), Edwards normally requires employees to close or transfer to Edwards any securities or commodity accounts they have with other firms or financial institutions.

The data given herein is true and accurate to the best of my knowledge and belief. I understand that this information will be verified, for which purpose I authorize and request any and all of my former employers and any other person to furnish to Edwards, or any agent acting on its behalf, any information they may have concerning my creditworthiness, character, ability, business activities, educational background and general reputation; together with, in the case of former employers, a history of my employment by them and the reasons for the termination thereof. Moreover, I hereby release each such employer and each such other person from any liability of whatsoever nature by reason of furnishing such information to Edwards or any agent acting on its behalf. I agree to accept the decisions of the New York Stock Exchange, Inc. or any other regulatory authority on approval or denial of my employment.

Further, I recognize that I will be the subject of an investigative background report ordered by Edwards, and that I have the right to request complete and accurate disclosure by Edwards of the nature and scope of the investigation requested. I also recognize that my fingerprints will be forwarded to the Federal Bureau of Investigation for comparison with their files of all arrest records, in compliance with S.E.C. Rule 17F-2.

**This agreement contains a pre-dispute arbitration clause immediately below. Before signing this agreement, I read and understood the following:**

- **I am agreeing to arbitrate any dispute, claim or controversy that may arise between myself and Edwards, or a customer, or any other person. This means that I am giving up the right to sue in court Edwards, its subsidiaries or employees or any customer or any other person concerning matters related to or arising from my employment. This includes giving up the right to a trial by jury.**

- **A claim alleging discrimination, including a sexual harassment claim, in violation of any statute, IS REQUIRED to be arbitrated under this agreement.**

- **Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.**

- **The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.**

- **The arbitrators do not have to explain the reason(s) for their award.**

- **The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry, or public arbitrators, as provided by the rules of the arbitration forum in which a claim is filed.**

- **The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.**

**In consideration of Edwards undertaking the aforementioned investigation and considering my application for employment, I agree that any controversy or dispute, including, but not limited to, claims of wrongful termination, breach of contract, discrimination, harassment, retaliation, infliction of emotional distress, tortious interference with business or contract, federal, state or local statute or ordinance and/or other theory, arising between me and Edwards shall be submitted for arbitration before the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. If neither the New York Stock Exchange, Inc. nor the National Association of Securities Dealers accepts the controversy, dispute or claim, or any portion thereof, for arbitration before either of them, then the non-accepted controversy, dispute or claim shall be submitted for arbitration before the American Arbitration Association pursuant to its Securities Arbitration Rules effective May 1, 1993. I understand that if Edwards hires me, my employment will be subject to the policy of employment at will. Under this policy, I may resign my employment at any time, with or without cause. Edwards retains the same right with respect to the termination of my employment.**

**I understand that if Edwards employs me, I will be deemed to be a person associated with a member of the NASD. I agree to abide by the rules and regulations of the NASD and any other securities and commodities exchanges of which Edwards is a member, as well as the rules and regulations of Edwards.**

**I understand that any misstatement of fact or omission of material information required on this application will be grounds for my immediate dismissal.**

| Applicant Signature | Date |
|---|---|
| X _Melissa Forbes_ | 10/10/04 |

**Applicant (Print Name)**
Melissa Forbes

---

Melissa D. Forbes ☆ Credit/Court CK Okh!

Cost Center

2 pages    4
Exhibit A

# Financial Associate Agreement



**EDWARDS**

One North Jefferson
St. Louis, MO 63103

**In the event A.G. Edwards & Sons, Inc., a corporation formed under the laws of the state of Delaware ("Edwards"), accepts your application for employment and registration with the New York Stock Exchange, Inc., and the National Association of Securities Dealers, Inc. as a Financial Associate for Edwards, and if you accept employment with Edwards, you will be an employee at will of Edwards, and your employment may be terminated with or without cause and with or without notice.**

In consideration of such acceptance and employment, you agree that:

**1.** So long as you serve as an employee of Edwards, you will act only in Edwards' best interest. For that purpose, you will perform your work competently and diligently; and you will observe all directions given by officials of Edwards, all policies announced by Edwards, all regulations and procedures prescribed in Edwards' Policy and Procedures Manuals and other manuals as from time to time are altered or issued, and all applicable rules of regulatory authorities. You will conduct yourself as a loyal and faithful employee of Edwards, and you will in no event take any action which could harm Edwards' business or its relationships with its customers/clients.

**2. NOTHING HEREIN IS A PROMISE OF EMPLOYMENT FOR A FIXED TERM.** Edwards may terminate your employment for any reason or for no reason, just as you may resign at any time.

## Business Practices

**3.** Prior to your registration by the proper authorities, including state authorities, you will not solicit, receive or transmit, directly or indirectly, any order in any security and/or insurance product and/or commodity.

**4.** In the event that prior to your proper registration any person or firm wishes to place an unsolicited order or transaction through you, you will not accept such an order or transaction nor will you transmit the order or transaction to your branch manager or a Financial Consultant. You will, instead, refer such person to the manager of the office.

**5.** After your registration, you will confine your solicitations to and accept orders only from residents of the states where Edwards is a registered broker/dealer and you are registered as a salesperson for Edwards. You agree that it is your responsibility to contact the St. Louis office of Edwards to determine the registration status of a security in a given state before effecting transactions in that security in that state, and you will not effect any transactions in any security in any state unless such security is registered under the securities law of that state or exempt from such registration or unless such transaction is itself exempt from such law.

In the event you become licensed as an insurance agent, Financial Consultant or solicitor, you will confine your solicitations and insurance business to states where Edwards or an Edwards' subsidiary or affiliated company or agency is properly licensed for the product and/or insurance company involved, and where you are properly licensed for the product and insurance company involved.

In the event new insurance, securities or commodities products are offered by Edwards that require separate licensing, registration or testing prior to the sale thereof, you agree that you will not offer or sell any such products until and unless you are properly licensed, registered or tested for said product.

**6.** In the event you become licensed to solicit and sell insurance products, you will not solicit or sell any product of any insurance company not approved by Edwards and/or an Edwards' subsidiary or an affiliated company or agency.

**7.** In dealing with customers/clients of Edwards, you will make no representation that relates to a security not properly registered (or exempted) under the Securities Act of 1933, or which is so incomplete as to be misleading, or which is not based on facts appearing in generally recognized statistical and financial publications, manuals and financial sections of newspapers or available to the public in general. You are not authorized to waive any provision of Edwards' Customer/Client's Agreement or its margin requirements.

**8.** You will not take or receive, directly or indirectly, a share in the profits of any account of a customer/client, or share in any losses sustained in any such account. You will not borrow money or securities from a customer/client of Edwards unless the customer/client is a financial institution engaged in the business of loaning funds or securities.

**9.** You will not, without Edwards' prior written permission, effect a cash or margin transaction or maintain a cash or margin account in securities or commodities, or have any direct or indirect financial interest in any such transaction or account, except with or through Edwards.

**10.** In connection with any underwriting, you understand that you may solicit and accept indications of interest from the public in the securities to be sold between the time of the filing of the Registration Statement with the Securities and Exchange Commission covering such securities and the effective date of the offering. The only printed matter that you will use to solicit such indications of interest is a current preliminary prospectus. If you should distribute such a preliminary prospectus to the public, you will send a revised preliminary prospectus. You will not confirm orders or promise stock on the basis of preliminary allocations made by Edwards' Syndicate Department.

AGE 445—12/04

**11.** You will not in any way represent to any customer/client in connection with any security, commodity or insurance transaction that you or Edwards will indemnify the customer/client against loss.

**12.** You will not rebate, directly or indirectly, to any person, firm or corporation any part of the compensation you may receive from Edwards or an Edwards' subsidiary or affiliated company or agency, and you will not pay any part of such compensation directly or indirectly to any person, firm or corporation as a bonus, commission, fee or other consideration in connection with any securities, commodities and/or insurance business sought by, handled by, or procured for you or Edwards or any subsidiary or affiliated company or agency of Edwards.

**13.** Without Edwards' prior written permission, you will not (i) personally lend money or in any manner grant credit to any customer/client of Edwards or (ii) participate in the arrangement of credit for such customer/client outside of the facilities of Edwards or (iii) become personally liable, directly or indirectly, on any evidence of indebtedness executed by any customer/client of Edwards in favor of a creditor of such customer/client or (iv) arrange for the extension or maintenance of credit for the purchase of securities in your own or family securities accounts on better terms than could be offered by Edwards. You also affirm that you are not now in violation of Regulation T of the Federal Reserve Board with respect to securities positions you hold and that you have listed all of your securities or commodities accounts on Schedule A annexed hereto.

### Employment Practices

**14.** You will become familiar with and abide by the rules and regulations of Edwards, the National Association of Securities Dealers, Inc., the New York Stock Exchange, Inc. and other securities and commodities exchanges of which Edwards is a member. You will also become familiar with and abide by the laws and regulations relative to the securities and/or commodities business of the federal government and of the state or states where you are a registered salesperson. In the event you become registered to sell insurance products, you will become familiar with and abide by the laws and regulations relative to the insurance business of the state or states where you are a registered insurance salesperson.

**15.** You will use the communication equipment provided by Edwards and the programs and services on that equipment for official business purposes only. The communication equipment includes, but is not limited to, e-mail, wires, voice mail, Internet access, facsimile machines, telephones and computers. You acknowledge that you are not entitled to any expectation of privacy when using the communication equipment, programs or services provided by Edwards and the programs and services on that equipment.

**16.** You understand and agree that as part of Edwards' duty to supervise your activities in accordance with the Constitution and Rules of the New York Stock Exchange, Inc., the National Association of Securities Dealers, Inc., and the various commodity exchanges and applicable federal and state securities laws, you will, at any time upon Edwards' request, appear before

an Edwards' officer, committee or person designated by Edwards and give full information upon any subject that relates to such of your activities as are subject to Edwards' supervision, and you will produce, upon Edwards' request, all of your records or documents, including but not limited to, personal bank statements and the like, relative to Edwards' inquiry.

**17.** You will clear any business correspondence written by you (including any handwritten memoranda and notes) with your branch manager prior to mailing such correspondence and retain duplicate copies of all such correspondence. All e-mails, electronic transmissions and faxes relating to the business of Edwards or are sent or received using equipment of Edwards shall be sent or received only in accordance with Edwards policies and procedures.

**18.** Without Edwards' prior consent you will not (i) conduct any television or radio broadcasts with reference to the securities, commodities or insurance business in general or any particular security, commodity or insurance product, (ii) send out any advertisements, reports or market letters relating to any security, commodity or insurance product that has not been approved by Edwards or (iii) publish in any manner any report or article written by you with reference to the securities, commodities or insurance business in general or any particular security, commodity or insurance product.

**19.** You will devote your efforts solely to the business of Edwards and Edwards' subsidiary or affiliated companies and agencies, and, unless prior written approval is granted by Edwards, you will not engage in any other business, occupation, job, work or employment during your employment by Edwards, including, but not limited to, officerships or directorships in any company.

**20.** Unless prior written approval is granted by Edwards, you will not participate, directly or indirectly, in any security, commodity or insurance transaction which will not be processed through the facilities of Edwards or an Edwards' subsidiary or affiliated company or agency; nor will you, without Edwards' prior written permission, effect a cash or margin transaction or maintain a cash or margin account in securities or commodities, or have any direct or indirect financial interest in any such transaction or account, except with or through Edwards; nor will you, without Edwards' prior written permission, act on behalf of any party other than Edwards or an Edwards' subsidiary or affiliated company or agency in any matter. You will not contract or incur any indebtedness in the name of Edwards.

**21.** You will not take, accept or receive, directly or indirectly, from any person, firm, corporation or association other than Edwards, or a subsidiary or affiliated company or agency of Edwards, compensation of any nature in connection with any securities, commodities or insurance transaction or transactions, except with the prior written consent of Edwards.

**22.** You shall not discriminate or harass another individual on the basis of race, color, religion, sex, age, national origin, disability, or any characteristic protected by law. Nor shall you retaliate against any individual who has expressed concerns about an occurrence of discrimination or harassment. If you

engage in such conduct, you shall bear full responsibility for such conduct and will indemnify and hold Edwards harmless against any and all expenses and liabilities suffered by Edwards as the result of such conduct.

**23.** You will notify Edwards promptly if, during your employment, you become involved in any litigation or if any judgments are adjudicated against you; or if your registration or license to sell or deal in securities, commodities and/or insurance or to function as an investment advisor is ever refused, suspended or revoked; or if you become enjoined, temporarily or otherwise, from selling or dealing in securities, commodities and/or insurance or from functioning as an investment advisor; or if you are arrested, summoned, arraigned, or indicted for a criminal offense; or if you become involved in bankruptcy proceedings.

**24.** Both during and after the time you serve as an employee of Edwards, you will not divulge to any person any information received during the course of your employment concerning the business of the firm and its financial affairs.

**25.** In the event you subsequently wish to be registered with Edwards as a Financial Consultant, you agree that (a) you will give six (6) months' notice prior to formally applying to be a Financial Consultant; (b) you will accept and handle only those customer/client accounts approved by your branch manager; (c) you will execute the appropriate Edwards' Supplementary Training Agreement for a Financial Consultant; and (d) you will partcipate in the Edwards' Financial Consultant sales training program or other training program prescribed by Edwards' Training Department. You understand and agree that you shall not apply to be a Financial Consultant prior to twenty-four (24) months of continuous employment without your branch manager's approval.

**Compensation**

**26.** Your compensation will be based upon a salary and, in particular situations, a portion of the credit for the commissions or fees generated by accounts serviced by you at the prevailing rate at the office at which you are employed less debits for certain items, including losses arising from transactions undertaken by customers/clients whose accounts are serviced by you, losses from settlements, awards or judgments arising in connection with customer/client complaints, extension charges, account debit balances, loss chargebacks, drafting charges, etc., in accordance with Edwards' established policies. Your compensation credit is conditioned upon your continued employment with Edwards at the time such commissions or fees are paid and received by Edwards and your continued employment with Edwards at the time such commissions or fees are earned and no longer subject to refund by Edwards. In the event the purchaser of any insurance or annuity or contractual plan shall cease making the regular premium or investment payments thereon or shall cancel or surrender such policy or contract, any commissions or credits received thereon that are refundable to the insurance company or other issuer shall be immediately repaid by you to Edwards. In the event a customer/client shall cease making the regular fee payments

for any fee-based account, managed or otherwise, or shall cancel or terminate any fee-based agreement, any fees or credits received thereon that are refundable to the customer/client shall be immediately repaid by you to Edwards.

**Records and Documents**

**27.** All records and documents, whether original, duplicated, computerized, memorized, handwritten, or in any other form, and the information contained thereon, concerning the business and affairs of Edwards, including without limitation the names, addresses, telephone numbers, financial information, and assets and obligations carried in any account of any customer/client, customer/client lead or prospect ("Account"), and the books, papers, records and recordings furnished to you during your training program, are confidential and are the sole and exclusive property of Edwards. These records, documents and information, whether provided to you by Edwards or by any Account, is entrusted to you as an employee and representative of Edwards. You will not use or remove any documents, records or information from the Edwards office except for the sole purpose of conducting business on behalf of Edwards. You agree not to divulge or disclose these records, documents or information to any third party and, under no circumstances, will you reveal or permit these records, documents or information to become known to any individual or organization that does business in securities, commodities and financial futures, insurance or any other lines of business in which Edwards or any of its affiliates are engaged.

These records, documents and information are not generally known outside Edwards and are kept confidential within Edwards. This information was acquired by a great expenditure of time, effort and money, is unique and cannot be lawfully duplicated or easily acquired. You agree that these records and documents are the property of Edwards and deserve trade secret protection.

**Termination**

**28.** Edwards may terminate your employment at any time without prior notice with or without cause. Upon your termination for any reason whatsoever, Edwards shall be liable to you only for salary earned and not paid prior to the effective date of the termination less any debits or charges in accordance with Edwards' established policies or any debts you owe Edwards.

**29.** In the event that your employment with Edwards ends at any time either through termination by Edwards or through resignation by you, you will surrender all training materials, account records, customer's/client's statements and customer's/client's files to Edwards, and you agree, in such event, that such termination or resignation, as the case may be, will constitute the forfeiture by you of your right, if any, to receive any commission on transactions effected, insurance business placed or plan payments made subsequent to the date of such termination or resignation.

**30.** With respect to contractual plans, insurance sales, management programs and fee-based accounts, you agree to repay any portion of the commissions or fees received by you that are in excess of the commissions or fees earned by Edwards or Edwards' subsidiary or affiliated company or agency should the

AGE 445—12/04                                    Exhibit B

purchaser or customer/client cease making regular premium, investment, installment or fee payments or cancel or surrender the policy, contract or account. In the event of your termination from Edwards, you will refund the amount of any portion of the prepaid but unearned commissions or fees received by you that exceed the actual commissions or fees received by Edwards at the time of your termination or resignation. You agree that you have no interest in, title to or claim for any commissions or fees received by Edwards after the time of your termination or resignation.

**31.** You will not recruit, entice, induce or solicit, directly or indirectly, during your employment with Edwards or for a period of one year following your termination of employment by Edwards, any employee of Edwards or any of its affiliates for employment with any other organization that does business in securities, commodities and financial futures, insurance or any other lines of business in which Edwards or any of its affiliates is engaged.

**32.** If, at any time you resign from Edwards, provoke your termination, or are terminated for cause, you agree that for a period of one year following your termination, you will not solicit by mail, by phone, by personal meeting, or by any other means, either directly or indirectly, any Account whom you served or whose name became known to you during your employment at Edwards at any office and in any capacity. Your agreement "not to solicit" means that you will not, during your employment and thereafter, initiate any contact or communication of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account to transfer from Edwards to any other person or organization that does business in securities, commodities and financial futures, insurance or any other lines of business in which Edwards or any of its affiliates is engaged, to open a new account with any such person or organization, or to otherwise discontinue its business relationship with Edwards.

### Hold Harmless

**33.** You will indemnify and hold Edwards harmless from any and all losses suffered by Edwards as a result of the violation by you of any of the aforesaid agreements, any loss from transactions in Accounts serviced by you, any settlements, awards or judgments arising from complaints by customers/clients serviced by you. Both during and after the time you serve as an employee of Edwards (no matter what the reason for termination of your employment), Edwards may find it reasonable in the circumstances to charge you with the amount of any losses or liabilities incurred by the firm as a result of errors, rule violations or violations of Edwards' policy, transactions in Accounts serviced by you or settlements, awards or judgments to customers/clients serviced by you while you were an Edwards employee. In that event, you undertake to promptly pay Edwards the full amount assessed against you by Edwards.

### Arbitration

**34.** This agreement between you and Edwards contains a predispute arbitration clause in the numbered paragraph immediately following this paragraph. You should read that paragraph now. Before signing this Agreement, you should understand the following:

- You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer/client, or any other person. This means that you are giving up the right to sue in court Edwards, its subsidiaries or employees or any customer/client or any other person concerning matters related to or arising from your employment. This includes giving up the right to a trial by jury.

- A claim alleging employment discrimination, including a sexual harassment claim, in violation of any statute, **IS REQUIRED** to be arbitrated under this agreement.

- Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

- The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

- The arbitrators do not have to explain the reason(s) for their award.

- The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry, or public arbitrators, as provided by the rules of the arbitration forum in which a claim is filed.

- The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

**35.** Except as provided in paragraph 36, you agree that any controversy or dispute, including, but not limited to, claims of wrongful termination, breach of contract, discrimination, harassment, retaliation, infliction of emotional distress, tortious interference with business or contract, federal, state or local statute or ordinance and/or other theory, arising between you and Edwards shall be submitted for arbitration before the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. If neither the New York Stock Exchange, Inc. nor the National Association of Securities Dealers accepts the controversy, dispute or claim, or any portion thereof, for arbitration before either of them, then the nonaccepted controversy, dispute or claim shall be submitted for arbitration before the American Arbitration Association pursuant to its Securities Arbitration Rules effective May 1, 1993.

### Enforcement

**36.** In the event you breach any of the covenants of paragraphs 27, 31 or 32, you agree that Edwards will be entitled to injunctive relief. You recognize that Edwards will suffer immediate and irrefutable harm and that money damages will not be adequate to compensate Edwards or to protect and preserve the status quo. Therefore, you consent to the issuance of a temporary restraining order or a preliminary or permanent injunction ordering:

(a) that you immediately return to Edwards all records or documents whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that you be enjoined and restrained from using or disclosing any such records or documents, and;

(b) that you be enjoined and restrained from soliciting any Account that you served or whose name became known to you while employed by Edwards in any office and in any capacity, and;

(c) that you be enjoined and restrained from accepting business from any Account who was solicited in violation of paragraph 30 or whose records and information was used in violation of paragraph 25, and;

(d) that you be further enjoined and restrained from recruiting, enticing, inducing or soliciting, directly or indirectly, any employee of Edwards or any of its affiliates, for employment with any other organization that does business in securities, commodities and financial futures, insurance or any other lines of business in which Edwards or its affiliates is engaged.

The above restraints shall apply to each and every Account whom you served or whose name became known to you while employed at Edwards, in any office and in any capacity.

**37.** For the purposes of paragraph 34, you agree to submit to, and confer exclusive jurisdiction on, the United States District Court or State Court that has original jurisdiction for the judicial district or county in which you last worked for Edwards.

**Attorney's Fees and Costs of Enforcement**
**38.** In the event of the breach of any of the provisions of this agreement or any provisions of any other agreement between you and Edwards, you agree to pay any and all costs and fees including, but not limited to, the reasonable attorney's fees incurred by Edwards in connection with the enforcement of the provisions of this agreement or any other agreement between you and Edwards.

**Miscellaneous**
**39. YOU ACKNOWLEDGE HAVING READ AND REVIEWED THIS AGREEMENT AND THE RESTRICTIVE COVENANTS IN THEIR ENTIRETY.** You acknowledge having been given an opportunity to ask questions about it. You have also been given an opportunity to consult with an attorney of your choice. You agree that you fully understand the terms of this document and knowingly and freely agree to abide by them.

**40. YOU ACKNOWLEDGE THAT YOU HAVE AN ADDITIONAL THIRTY (30) DAYS FROM THE DATE YOU SIGNED THIS AGREEMENT TO CONTINUE TO REVIEW IT AND SEEK LEGAL COUNSEL.** At any time within this thirty (30) days, you may rescind this Agreement by discontinuing your employment with Edwards without any of the provisions herein being enforced against you. To the contrary, however, if you continue your employment with Edwards beyond said thirty (30) days, your continuation of employment will constitute your ratification and complete acceptance of this agreement.

**41.** The terms of your employment and these standard provisions will enure to the benefit of, and be binding upon, both you and Edwards and our respective successors and assigns. This Agreement shall be governed by and construed in accordance with the laws of the state of Missouri even though you are not, or cease to be, a resident or employee in that state.

**42.** "Insurance," "insurance products" and "insurance policies" shall include any and all products, contracts, policies, services or securities offered by or sold through an insurance company, including, but not limited to, all annuities, fixed or variable, retirement plans, Keogh plans, individual retirement accounts and annuities, life insurance, health insurance, accident insurance, liability insurance, and all other forms of insurance now or hereafter offered by an insurance company. "Insurance transactions" shall include the purchase or sale of any of the above. "Insurance commissions" shall include any monies paid by insurance companies or other parties as consideration for the purchase or sale of any of the above.

**43.** If any provisions of this Agreement shall, for any reason, be adjudged to be void, invalid or unenforceable by an arbitrator or arbitration panel, a regulatory body or a court of law, the remainder of this Agreement shall nonetheless continue and remain in full force and effect.

**Sign and return this Agreement to signify your acceptance of the foregoing terms and conditions.**

**A.G. EDWARDS & SONS, INC.**

**Agreed to and accepted**

| Financial Associate Signature | Date |
|---|---|
| X _Melissa Forbes_ | |
| **(Printed Name)** | |
| Melissa Forbes | |
| **Branch Office** 649 | |

AGE 445–12/04                    Exhibit B

# Supplementary Training Agreement for a Financial Associate

*A.G.Edwards*

One North Jefferson
St. Louis, MO 63103

---

**In the event A.G. Edwards & Sons, Inc., a corporation formed under the laws of the state of Delaware ("Edwards"), accepts your application for employment and registration with the New York Stock Exchange, Inc. and the National Association of Securities Dealers, Inc. as a financial associate representing Edwards, you and Edwards agree that this employment may be terminated at any time by either party with or without cause and with or without notice.**

In consideration of such acceptance and employment, you agree that:

You require specialized knowledge and skills to perform the duties of a financial associate, which you do not presently possess. You recognize that Edwards will incur significant expense in training and educating you as a financial associate and will disclose to you its business methods and procedures, training and operational manuals and other items and information which are the property of Edwards and which enable Edwards to compete successfully as a broker/dealer. As a major inducement for the disclosures to be made, and the employment and training to be given to you by Edwards and recognizing that it is difficult, if not impossible, to determine the damage to Edwards that may arise in the event you should choose to terminate your employment with Edwards, you agree that:

**1.**    You have an obligation to Edwards for the salary, training and other benefits you receive during the training period and the post-licensing period, and you agree that $10,000 is a reasonable estimation of these costs. You and Edwards agree that the obligation will be satisfied upon the earliest occurrence of one of the following:

(a)    Thirty-six (36) months of continuous employment with Edwards from the date of your registration; or

(b)    The payment by you of the amount of $10,000 to Edwards.

**2.**    You agree that in the event you breach the provisions set forth in paragraph 1, Edwards shall be entitled to monetary damages equal to $10,000, plus interest on such amount at the rate of 10% per annum from the date of your termination until payment in full of your obligation, plus reasonable attorney's fees and all other costs and expenses of collection. You further specifically agree that all money, securities, commodities, other property, commissions or other income earned by you but held or carried by Edwards shall be subject to a general lien in Edwards' favor and to the right of setoff for the partial or complete discharge of this obligation. Said general lien and right of setoff shall be in addition to and not in substitution of any rights and remedies Edwards would otherwise have.

**3.**    This agreement between you and Edwards contains a predispute arbitration clause in the numbered paragraph immediately following this paragraph. You should read that paragraph now. Before signing this agreement, you should understand the following:

- You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer/client, or any other person. This means that you are giving up the right to sue in court Edwards, its subsidiaries or employees or any customer/client or any other person concerning matters related to or arising from your employment. This includes giving up the right to a trial by jury.

- A claim alleging employment discrimination, including a sexual harassment claim, in violation of any statute, **IS REQUIRED** to be arbitrated under this agreement.

- Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

- The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

- The arbitrators do not have to explain the reason(s) for their award.

- The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry, or public arbitrators, as provided by the rules of the arbitration forum in which a claim is filed.

- The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

**4.**    You agree that any controversy or dispute, including, but not limited to, claims of wrongful termination; breach of contract; discrimination; harassment; retaliation; infliction of emotional distress; and tortuous interference with business or contract or federal, state, or local statute or ordinance and/or other theory arising between you and Edwards shall be submitted for arbitration before the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. If neither the New York Stock Exchange, Inc. nor the National Association of Securities Dealers, Inc. accepts the controversy, dispute or claim, or any portion thereof, for arbitration before either of them, then the nonaccepted controversy, dispute or claim shall be submitted for arbitration before the American Arbitration Association pursuant to its Securities Arbitration Rules effective May 1, 1993.

AGE 438—8/03

Supplementary Training Agreement for a Financial Associate                                                                 page 2

**5.**  In the event of the breach of any of the terms of this agreement, you shall pay any and all costs and fees incurred by Edwards in connection with the enforcement of the terms of this agreement, including, but not limited to, Edwards' reasonable attorney's fees.

**6.**  You specifically understand that Edwards reserves any and all rights of action it may have against any person or entity that may cause or induce a breach of this agreement.

**7.**  In the event that

    (a) The office of Edwards to which you are attached is closed; or

    (b) Your employment is terminated by Edwards and such termination is not provoked by you because of your agreement, intention or plan to violate any of the terms of this agreement; or

    (c) Your employment with Edwards is terminated for whatever reason and you do not become employed with or for any individual or organization that does business in securities, commodities or financial futures, insurance or any other lines of business in which Edwards or any of its affiliates is engaged for a period of thirty-six (36) months from the date of your registration; or

    (d) You are employed by Edwards continuously for a period of thirty-six (36) months from the date of your registration,

the provisions of this agreement shall not apply. A change in the office location shall not be deemed a closing of the office for purposes of this paragraph.

**8.**  If any provisions of this agreement shall, for any reason, be adjudged to be void, invalid or unenforceable by an arbitrator or arbitration panel, a regulatory body or a court of law, the remainder of the agreement shall nonetheless continue and remain in full force and effect.

**9.**  This agreement shall inure to the benefit of Edwards, its affiliates, and any successor in interest to the business of Edwards, whether through merger, acquisition, sale or other transfer.

**10.  NOTHING HEREIN IS A PROMISE OF EMPLOYMENT FOR A FIXED TERM.** Edwards may terminate your employment for any reason or for no reason, just as you may resign at any time.

**11.  YOU ACKNOWLEDGE HAVING READ AND REVIEWED THIS AGREEMENT AND THE RESTRICTIVE COVENANTS IN THEIR ENTIRETY.** You acknowledge having been given an opportunity to ask questions about it. You have also been given an opportunity to consult with an attorney of your choice. You agree that you fully understand the terms of this document and knowingly and freely agree to abide by them.

**12.  YOU ACKNOWLEDGE THAT YOU HAVE AN ADDITIONAL THIRTY (30) DAYS FROM THE DATE YOU SIGNED THIS AGREEMENT TO CONTINUE TO REVIEW IT AND SEEK LEGAL COUNSEL.** At any time within this thirty (30) days, you may rescind this agreement by discontinuing your employment with Edwards without any of the provisions herein being enforced against you. To the contrary, however, if you continue your employment with Edwards beyond said thirty (30) days, your continuation of employment will constitute your ratification and complete acceptance of this agreement.

**SIGN AND RETURN THIS AGREEMENT TO SIGNIFY YOUR ACCEPTANCE OF THE FOREGOING TERMS AND CONDITIONS.**

**A.G. EDWARDS & SONS, INC.**

**Agreed to and accepted**

| Financial Associate Signature | Date |
| --- | --- |
| X  *Melissa Forbes* | |

**Financial Associate (Print Name)**
*Melissa Forbes*

**Branch Office**
*6YA*

Exhibit C

AGE 438—6/03

# FORM U4
## UNIFORM APPLICATION FOR SECURITIES INDUSTRY REGISTRATION OR TRANSFER

**U4 - INITIAL**
**07/27/2005**

Rev. Form U4 (06/2003)

### 1. GENERAL INFORMATION

| | | | |
|---|---|---|---|
| **First Name:** MELISSA | **Middle Name:** D | **Last Name:** FORBES | **Suffix:** |
| **Firm CRD #:** 4 | **Firm Name:** A. G. EDWARDS & SONS, INC. | **Employment Date (MM/DD/YYYY):** 10/12/2004 | **CRD Branch #:** |
| **Firm Billing Code:** 0649 | **Individual CRD #:** 4873107 | **Individual SSN:** 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 | |
| **Office of Employment Address Street 1:** 280 PARK AVENUE | | **Office of Employment Address Street 2:** 29TH FLOOR | |
| **City:** NEW YORK | **State:** New York | **Country:** USA | **Postal Code:** 10017 |

**Private Residence Check Box:**
If the Office of Employment address is a private residence, check this box. ☐

Rev. Form U4 (06/2003)

### 2. FINGERPRINT INFORMATION

Electronic Filing Representation

○ By selecting this option, I represent that I am submitting, have submitted, or promptly will submit to the appropriate *SRO* a fingerprint card as required under applicable *SRO* rules; or

Fingerprint card barcode

● By selecting this option, I represent that I have been employed continuously by the *filing firm* since the last submission of a fingerprint card to CRD and am not required to resubmit a fingerprint card at this time; or,

○ By selecting this option, I represent that I have been employed continuously by the *filing firm* and my fingerprints have been processed by an *SRO* other than NASD. I am submitting, have submitted, or promptly will submit the processed results for posting to CRD.

Exceptions to the Fingerprint Requirement

○ By selecting one or more of the following two options, I affirm that I am exempt from the federal fingerprint requirement because I/*filing firm* currently satisfy(ies) the requirements of at least one of the permissive exemptions indicated below pursuant to Rule 17f-2 under the Securities Exchange Act of 1934, including any notice or application requirements specified therein:

☐ Rule 17f-2(a)(1)(i)

☐ Rule 17f-2(a)(1)(iii)

Investment Adviser Representative Only Applicants

○ I affirm that I am applying only as an investment adviser representative and that I am not also applying or have not also applied with this *firm* to become a broker-dealer representative. If this radio button/box is selected, continue below.

○ I am applying for registration only in *jurisdictions* that do not have fingerprint card filing requirements, or

○ I am applying for registration in *jurisdictions* that have fingerprint card filing requirements and I am submitting, have submitted, or promptly will submit the appropriate fingerprint card directly to the *jurisdictions* for processing pursuant to applicable *jurisdiction* rules.

Rev. Form U4 (06/2003)

### 3. REGISTRATIONS WITH UNAFFILIATED FIRMS

Some *jurisdictions* prohibit "dual registration," which occurs when an individual chooses to maintain a concurrent registration as a representative/agent with two or more *firms* (either BD or IA *firms*) that are not affiliated. *Jurisdictions* that prohibit dual registration would not, for example, permit a broker-dealer agent working with brokerage *firm* A to maintain a registration with

Exhibit D

brokerage *firm* B if *firms* A and B are not owned or controlled by a common parent. Before seeking a dual registration status, you should consult the applicable rules or statutes of the *jurisdictions* with which you seek registration for prohibitions on dual registrations or any liability provisions.

Please indicate whether the individual will maintain a "dual registration" status by answering the questions in this section. (Note: An individual should answer 'yes' only if the individual is currently registered and is seeking registration with a *firm* (either BD or IA) that is not affiliated with the individual's current employing *firm*. If this is an initial application, an individual must answer 'no' to these questions; a "dual registration" may be initiated only after an initial registration has been established).

Answer "yes" or "no" to the following questions:                                        **Yes**    **No**

**A.** Will *applicant* maintain registration with a broker-dealer that is not *affiliated* with the *filing firm*? If you answer       ○        ●
"yes," list the *firm*(s) in Section 12 (Employment History).

**B.** Will *applicant* maintain registration with an investment adviser that is not *affiliated* with the *filing firm*? If you       ○        ●
answer "yes," list the *firm*(s) in Section 12 (Employment History).

---

Rev. Form U4 (06/2003)

## 4. SRO REGISTRATIONS

**Check appropriate *SRO* Registration requests.**
**Qualifying examinations will be automatically scheduled if needed. If you are only scheduling or re-scheduling an exam, skip this section and complete Section 7 (EXAMINATION REQUESTS).**

| REGISTRATION CATEGORY | NASD | NYSE | AMEX | BSE | NSX | PCX | CBOE | CHX | PHLX | ISE |
|---|---|---|---|---|---|---|---|---|---|---|
| OP - Registered Options Principal (S4) | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| IR - Investment Company and Variable Contracts Products Rep. (S6) | ☐ | ☐ | ☐ | ☐ | | | | | | |
| GS - Full Registration/General Securities Representative (S7) | ☑ | ☑ | ☑ | ☐ | ☐ | ☑ | ☑ | ☐ | ☑ | ☐ |
| TR - Securities Trader (S7) | | ☐ | ☐ | | | | | | | |
| TS - Trading Supervisor (S7) | | ☐ | ☐ | | | | | | | |
| SU - General Securities Sales Supervisor (S9 and S10) | ☐ | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | |
| BM - Branch Office Manager (S9 and S10) | | ☐ | | | | | | | | |
| SM - Securities Manager (S12) | | ☐ | | | | | | | | |
| AR - Assistant Representative/Order Processing (S11) | ☐ | | | | ☐ | | | ☐ | | |
| REGISTRATION CATEGORY | NASD | NYSE | AMEX | BSE | NSX | PCX | CBOE | CHX | PHLX | ISE |
| IE - United Kingdom - Limited General Securities Registered Representative (S17) | ☐ | ☐ | ☐ | | | ☐ | | | ☐ | |
| DR - Direct Participation Program Representative (S22) | ☐ | | ☐ | | ☐ | | | ☐ | | |
| GP - General Securities Principal (S24) | ☐ | | ☐ | ☐ | | | | ☐ | | |
| IP - Investment Company and Variable Contracts Products Principal (S26) | ☐ | | ☐ | | | | | | | |
| FA - Foreign Associate | ☐ | | | | | | | | | |
| FN - Financial and Operations Principal (S27) | ☐ | | ☐ | ☐ | | | ☐ | | | |
| FI - Introducing Broker-Dealer/Financial and Operations Principal (S28) | ☐ | | | | ☐ | | | | | |
| RS - Research Analyst (S86, S87) | ☐ | | | | | | | | | |
| RP - Research Principal | ☐ | | | | | | | | | |
| DP - Direct Participation Program Principal (S39) | ☐ | | ☐ | | ☐ | | | ☐ | | |
| OR - Options Representative (S42) | ☐ | | | | | | | ☐ | | |
| REGISTRATION CATEGORY | NASD | NYSE | AMEX | BSE | NSX | PCX | CBOE | CHX | PHLX | ISE |

2

Exhibit D

| REGISTRATION CATEGORY | NASD | NYSE | AMEX | BSE | NSX | PCX | CBOE | CHX | PHLX | ISE |
|---|---|---|---|---|---|---|---|---|---|---|
| MR - Municipal Securities Representative (S52) | ☐ | | ☐ | | ☐ | | | ☐ | | |
| MP - Municipal Securities Principal (S53) | ☐ | | | | | | | ☐ | | |
| CS - Corporate Securities Representative (S62) | ☐ | | ☐ | | | | | ☐ | | |
| RG - Government Securities Representative (S72) | ☐ | | | | | | | | | |
| PG - Government Securities Principal (S73) | ☐ | | | | | | | | | |
| SA - Supervisory Analyst (S16) | ☐ | ☐ | ☐ | | | | | | | |
| PR - Limited Representative - Private Securities Offerings (S82) | ☐ | | ☐ | | | | | | | |
| CD - Canada-Limited General Securities Registered Representative (S37) | ☐ | | ☐ | | | ☐ | ☐ | | | |
| CN - Canada-Limited General Securities Registered Representative (S38) | ☐ | | ☐ | | | ☐ | ☐ | | | |
| **REGISTRATION CATEGORY** | **NASD** | **NYSE** | **AMEX** | **BSE** | **NSX** | **PCX** | **CBOE** | **CHX** | **PHLX** | **ISE** |
| ET - Equity Trader (S55) | ☐ | | ☐ | | ☐ | | | | | |
| AM - Allied Member | | ☐ | ☐ | | | | | | | |
| AP - Approved Person | | ☐ | ☐ | | | | | | | |
| LE - Securities Lending Representative | | | | | | | | | | |
| LS - Securities Lending Supervisor | | | | | | | | | | |
| ME - Member Exchange | | ☐ | ☐ | ☐ | ☐ | | | | | |
| FE - Floor Employee | | ☐ | ☐ | ☐ | | ☐ | | | | |
| OF - Officer | | ☐ | ☐ | | | ☐ | | | | |
| CO - Compliance Official (S14) | | ☐ | | | | | | | | |
| **REGISTRATION CATEGORY** | **NASD** | **NYSE** | **AMEX** | **BSE** | **NSX** | **PCX** | **CBOE** | **CHX** | **PHLX** | **ISE** |
| CF - Compliance Official Specialist (S14A) | | ☐ | | | | | | | | |
| PM - Floor Member Conducting Public Business | | ☐ | ☐ | | | | | | | |
| PC - Floor Clerk Conducting Public Business | | ☐ | ☐ | | | | | | | |
| SC - Specialist Clerk (S21) | | ☐ | ☐ | | | | | | | |
| TA - Trading Assistant (S25) | | ☐ | | | | | | | | |
| SF - Single Stock Futures (S43) | ☐ | | | | | | | | | |
| FP - Municipal Fund (S51) | ☐ | | | | | | | | | |
| IF - In-Firm Delivery Proctor | ☐ | ☐ | | | | | | | | |
| MM - Market Maker | | | | | | ☐ | | | | |
| **REGISTRATION CATEGORY** | **NASD** | **NYSE** | **AMEX** | **BSE** | **NSX** | **PCX** | **CBOE** | **CHX** | **PHLX** | **ISE** |
| FB - Floor Broker | | | | | | ☐ | | | | |
| MB - Market Maker acting as Floor Broker | | | | | | ☐ | | | | |
| Other _____ (Paper Form Only) | | | | | | | | | | |

Rev. Form U4 (06/2003)

## 5. JURISDICTION REGISTRATION

**Check appropriate *jurisdiction(s)* for broker-dealer agent (AG) and/or investment adviser representative (RA) registration requests.**

| JURISDICTION | AG | RA | JURISDICTION | AG | RA | JURISDICTION | AG | RA | JURISDICTION | AG | RA |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | ☐ | ☐ | Illinois | ☐ | ☐ | Montana | ☐ | ☐ | Puerto Rico | ☐ | ☐ |
| Alaska | ☐ | ☐ | Indiana | ☐ | ☑ | Nebraska | ☐ | ☐ | Rhode Island | ☐ | ☐ |

Exhibit D

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Arizona | ☐ | ☐ | Iowa | ☐ | ☐ | Nevada | ☐ | ☐ | South Carolina | ☐ | ☐ |
| Arkansas | ☐ | ☐ | Kansas | ☐ | ☐ | New Hampshire | ☐ | ☐ | South Dakota | ☐ | ☐ |
| California | ☐ | ☐ | Kentucky | ☐ | ☐ | New Jersey | ☐ | ☐ | Tennessee | ☐ | ☐ |
| Colorado | ☐ | ☐ | Louisiana | ☐ | ☐ | New Mexico | ☐ | ☐ | Texas | ☐ | ☐ |
| Connecticut | ☐ | ☐ | Maine | ☐ | ☐ | New York | ☐ | ☐ | Utah | ☐ | ☐ |
| Delaware | ☐ | ☐ | Maryland | ☐ | ☐ | North Carolina | ☐ | ☐ | Vermont | ☐ | ☐ |
| District of Columbia | ☐ | ☐ | Massachusetts | ☐ | ☐ | North Dakota | ☐ | ☐ | Virginia | ☐ | ☐ |
| Florida | ☐ | ☐ | Michigan | ☐ | ☐ | Ohio | ☐ | ☐ | Washington | ☐ | ☐ |
| Georgia | ☐ | ☐ | Minnesota | ☐ | ☐ | Oklahoma | ☐ | ☐ | West Virginia | ☐ | ☐ |
| Hawaii | ☐ | ☐ | Mississippi | ☐ | ☐ | Oregon | ☐ | ☐ | Wisconsin | ☐ | ☐ |
| Idaho | ☐ | ☐ | Missouri | ☐ | ☐ | Pennsylvania | ☐ | ☐ | Wyoming | ☐ | ☐ |

**AGENT OF THE ISSUER REGISTRATION (AI)** ☐ **Indicate 2 letter *jurisdiction* code(s):**_____

---

Rev. Form U4 (06/2003)

## 6. REGISTRATION REQUESTS WITH AFFILIATED FIRMS

Will *applicant* maintain registration with *firm*(s) under common ownership or control with the *filing firm*?
If "yes", fill in the details to indicate a request for registration with additional *firm*(s).

○ Yes    ◉ No

No Information Filed

Rev. Form U4 (06/2003)

## 7. EXAMINATION REQUESTS

**Scheduling or Rescheduling Examinations** Complete this section only if you are scheduling or rescheduling an examination or continuing education session. Do <u>not</u> select the Series 63 (S63) or Series 65 (S65) examinations in this section if you have completed Section 5 (JURISDICTION REGISTRATION) and have selected registration in a *jurisdiction*. If you have completed Section 5 (JURISDICTION REGISTRATION), and requested an AG registration in a *jurisdiction* that requires that you pass the S63 examination, an S63 examination will be automatically scheduled for you upon submission of this Form U4. If you have completed Section 5 (JURISDICTION REGISTRATION), and requested an RA registration in a *jurisdiction* that requires that you pass the S65 examination, an S65 examination will be automatically scheduled for you upon submission of this Form U4.

| | | | | | |
|---|---|---|---|---|---|
| ☐ S3 | ☐ S11 | ☐ S22 | ☐ S32 | ☐ S46 | ☐ S66 |
| ☐ S4 | ☐ S12 | ☐ S23 | ☐ S33 | ☐ S51 | ☐ S72 |
| ☐ S5 | ☐ S14 | ☐ S24 | ☐ S37 | ☐ S52 | ☐ S73 |
| ☐ S6 | ☐ S14A | ☐ S25 | ☐ S38 | ☐ S53 | ☐ S82 |
| ☐ S7 | ☐ S15 | ☐ S26 | ☐ S39 | ☐ S55 | ☐ S86 |
| ☐ S7A | ☐ S16 | ☐ S27 | ☐ S42 | ☐ S62 | ☐ S87 |
| ☐ S9 | ☐ S17 | ☐ S28 | ☐ S43 | ☐ S63 | ☐ S101 |
| ☐ S10 | ☐ S21 | ☐ S30 | ☐ S44 | ☐ S65 | ☐ S106 |
| | | ☐ S31 | ☐ S45 | | ☐ S201 |

Other _____ (Paper Form Only)

OPTIONAL: Foreign Exam City _____ Date (MM/DD/YYYY) _____

If you have taken an exam prior to registering through the CRD system please enter the exam type and date taken.

**Exam type:** _____ **Date taken (MM/DD/YYYY):** _____

Rev. Form U4 (06/2003)

## 8. PROFESSIONAL DESIGNATIONS

**Select each designation you currently maintain.**

☐ Certified Financial Planner

4

Exhibit D

☐ **Chartered Financial Consultant (ChFC)**

☐ **Personal Financial Specialist (PFS)**

☐ **Chartered Financial Analyst (CFA)**

☐ **Chartered Investment Counselor (CIC)**

---

Rev. Form U4 (06/2003)

## 9. IDENTIFYING INFORMATION/NAME CHANGE

| First Name:<br>MELISSA | Middle Name:<br>D | Last Name:<br>FORBES |
|---|---|---|
| Suffix: | Date of Birth<br>(MM/DD/YYYY)<br>05/19/1979 | |
| State/Province of Birth<br>VA | Country of Birth<br>USA | Sex<br>○ Male  ◉ Female |
| Height (ft)<br>5 | Height (in)<br>4 | Weight (lbs)<br>125 |
| Hair Color<br>Brown | Eye Color<br>Blue | |

---

Rev. Form U4 (06/2003)

## 10. OTHER NAMES

No Information Filed

---

Rev. Form U4 (06/2003)

## 11. RESIDENTIAL HISTORY

Starting with the current address, give all addresses for the past 5 years. Report changes as they occur.

| From | To | Street | City | State | Country | Postal Code |
|---|---|---|---|---|---|---|
| 12/2004 | PRESENT | 536 E 79TH STREET<br>APT. 6D | NEW YORK | NY | USA | 10021 |
| 02/2004 | 12/2004 | 1675 YORK AVE<br>APT. 33G | NEW YORK | NY | USA | 10128 |
| 01/2003 | 01/2004 | 1701 THE GREENS WAY<br>1215 | JACKSONVILLE BEACH | FL | USA | 32250 |
| 07/2001 | 01/2003 | 10020 BELLE RIVE BLVD | JACKSONVILLE | FL | USA | 32256 |
| 07/2000 | 07/2001 | 284 PETUNIA TERRACE<br>APT. 300 | SANFORD | FL | USA | 32771 |

---

Rev. Form U4 (06/2003)

## 12. EMPLOYMENT HISTORY

Provide complete employment history for the past 10 years. Include the *firm*(s) noted in Section 1 (GENERAL INFORMATION) and Section 6 (REGISTRATION REQUESTS WITH AFFILIATED FIRMS). Include all *firm*(s) from Section 3 (REGISTRATION WITH UNAFFILIATED FIRMS). Account for all time including full and part-time employments, self-employment, military service, and homemaking. Also include statuses such as unemployed, full-time education, extended travel, or other similar statuses. Report changes as they occur.

| From | To | Name of *Firm* or Company | Investment-Related business? | City | State | Country | Position |
|---|---|---|---|---|---|---|---|
| 09/2004 | PRESENT | A.G. EDWARDS & SONS, INC. | ◉ Yes  ○ No | NEW YORK | NY | USA | FINANCIAL ASSOCIATE |
| 09/2004 | 09/2004 | TAYLOR HODSON | ○ Yes  ◉ No | NEW YORK | NY | USA | TEMP AGENCY |
| 07/2004 | 08/2004 | AT&T WIRELESS | ○ Yes  ◉ No | NEW YORK | NY | USA | SALES ASSOCIATE |
| 01/2004 | 07/2004 | UNEMPLOYED | ○ Yes  ◉ No | NEW YORK | NY | USA | UNEMPLOYED |

5
Exhibit D

| 07/2001 | 12/2003 | UNIVERSITY OF NORTH FLORIDA | ○ Yes ● No | JACKSONVILLE | FL | USA | FULL TIME STUDENT |
| 04/2000 | 07/2001 | CINGULAR WIRELESS | ○ Yes ● No | ALTAMONTE SPRINGS | FL | USA | SALES ASSOCIATE |
| 07/1997 | 05/2001 | SEMINOLE COMMUNITY COLLEGE | ○ Yes ● No | SANFORD | FL | USA | STUDENT |
| 08/1994 | 05/1997 | LAKE MARY HIGH SCHOOL | ○ Yes ● No | LAKE MARY | FL | USA | STUDENT |

Rev. Form U4 (06/2003)

## 13. OTHER BUSINESS

Are you <u>currently</u> engaged in any other business either as a proprietor, partner, officer, director, employee, trustee, agent or otherwise? (Please exclude non *investment-related* activity that is exclusively charitable, civic, religious or fraternal and is recognized as tax exempt.) If YES, please provide the following details: the name of the other business, whether the business is *investment-related*, the address of the other business, the nature of the other business, your position, title, or relationship with the other business, the start date of your relationship, the approximate number of hours/month you devote to the other business, the number of hours you devote to the other business during securities trading hours, and briefly describe your duties relating to the other business.

○ Yes ● No

Rev. Form U4 (06/2003)

## 14. DISCLOSURE QUESTIONS

**IF THE ANSWER TO ANY OF THE FOLLOWING QUESTIONS IS 'YES', COMPLETE DETAILS OF ALL EVENTS OR PROCEEDINGS ON APPROPRIATE DRP(S)**

**REFER TO THE EXPLANATION OF TERMS SECTION OF FORM U4 INSTRUCTIONS FOR EXPLANATIONS OF ITALICIZED TERMS.**

### Criminal Disclosure

| | YES | NO |
|---|---|---|
| **14A. (1) Have you ever:** | | |
| (a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign, or military court to any *felony*? | ○ | ● |
| (b) been *charged* with any *felony*? | ○ | ● |
| **(2) Based upon activities that occurred while you exercised *control* over it, has an organization ever:** | | |
| (a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic or foreign court to any *felony*? | ○ | ● |
| (b) been *charged* with any *felony*? | ○ | ● |
| **14B. (1) Have you ever:** | | |
| (a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign or military court to a *misdemeanor involving*: investments or an *investment-related* business or any fraud, false statements or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses? | ○ | ● |
| (b) been *charged* with a *misdemeanor* specified in 14B(1)(a)? | ○ | ● |
| **(2) Based upon activities that occurred while you exercised *control* over it, has an organization ever:** | | |
| (a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic or foreign court to a *misdemeanor* specified in 14B(1)(a)? | ○ | ● |
| (b) been *charged* with a *misdemeanor* specified in 14B(1)(a)? | ○ | ● |

### Regulatory Action Disclosure

| | YES | NO |
|---|---|---|
| **14C. Has the U.S. Securities and Exchange Commission or the Commodity Futures Trading Commission ever:** | | |
| (1) *found* you to have made a false statement or omission? | ○ | ● |
| (2) *found* you to have been *involved* in a violation of its regulations or statutes? | ○ | ● |
| (3) *found* you to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted? | ○ | ● |

6

Exhibit D

(4) entered an *order* against you in connection with *investment-related* activity? ○ ◉

(5) imposed a civil money penalty on you, or *ordered* you to cease and desist from any activity? ○ ◉

**14D(1)** **Has any other Federal regulatory agency or any state regulatory agency or *foreign financial regulatory authority* ever:**

(a) *found* you to have made a false statement or omission or been dishonest, unfair or unethical? ○ ◉

(b) *found* you to have been *involved* in a violation of *investment-related* regulation(s) or statute(s)? ○ ◉

(c) *found* you to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked or restricted? ○ ◉

(d) entered an *order* against you in connection with an *investment-related* activity? ○ ◉

(e) denied, suspended, or revoked your registration or license or otherwise, by *order*, prevented you from associating with an *investment-related* business or restricted your activities? ○ ◉

**14D(2)** **Have you been subject to any *final order* of a state securities commission (or any agency or officer performing like functions), state authority that supervises or examines banks, savings associations, or credit unions, state insurance commission (or any agency or office performing like functions), an appropriate *federal banking agency*, or the National Credit Union Administration, that:**

(a) bars you from association with an entity regulated by such commission, authority, agency, or officer, or from engaging in the business of securities, insurance, banking, savings association activities, or credit union activities; or ○ ◉

(b) constitutes a *final order* based on violations of any laws or regulations that prohibit fraudulent, manipulative, or deceptive conduct? ○ ◉

**14E.** **Has any *self-regulatory organization* or commodities exchange ever:**

(1) *found* you to have made a false statement or omission? ○ ◉

(2) *found* you to have been *involved* in a violation of its rules (other than a violation designated as a *"minor rule violation"* under a plan approved by the U.S. Securities and Exchange Commission)? ○ ◉

(3) *found* you to have been the cause of an *investment-related* business having its authorization to do business denied, suspended, revoked or restricted? ○ ◉

(4) disciplined you by expelling or suspending you from membership, barring or suspending your association with its members, or restricting your activities? ○ ◉

**14F.** **Have you ever had an authorization to act as an attorney, accountant or federal contractor that was revoked or suspended?** ○ ◉

**14G.** **Have you been notified, in writing, that you are now the subject of any:**

(1) regulatory complaint or *proceeding* that could result in a "yes" answer to any part of 14C, D or E? *(If yes, complete the Regulatory Action Disclosure Reporting Page.)* ○ ◉

(2) *investigation* that could result in a "yes" answer to any part of 14A, B, C, D or E? *(If yes, complete the Investigation Disclosure Reporting Page.)* ○ ◉

**Civil Judicial Disclosure**

**14H. (1) Has any domestic or foreign court ever:**    **YES NO**

(a) *enjoined* you in connection with any *investment-related* activity? ○ ◉

(b) *found* that you were *involved* in a violation of any *investment-related* statute(s) or regulation(s)? ○ ◉

(c) dismissed, pursuant to a settlement agreement, an *investment-related* civil action brought against you by a state or *foreign financial regulatory authority*? ○ ◉

**(2) Are you named in any pending *investment-related* civil action that could result in a "yes" answer to any part of 14H(1)?** ○ ◉

**Customer Complaint/Arbitration/Civil Litigation Disclosure**

**14I. (1) Have you ever been named as a respondent/defendant in an *investment-related*, consumer-initiated arbitration or civil litigation which alleged that you were *involved* in one or more *sales practice violations* and which:**    **YES NO**

(a) is still pending, or; ○ ◉

(b) resulted in an arbitration award or civil judgment against you, regardless of amount, or; ○ ◉

Exhibit D

(c) was settled for an amount of $10,000 or more?    ○  ◉

**(2)** Have you ever been the subject of an *investment-related*, consumer-initiated complaint, not otherwise reported under question 14I(1) above, which alleged that you were *involved* in one or more *sales practice violations*, and which complaint was settled for an amount of $10,000 or more?    ○  ◉

**(3)** Within the past twenty four (24) months, have you been the subject of an *investment-related*, consumer-initiated, written complaint, not otherwise reported under question 14I(1) or (2) above, which:

(a) alleged that you were *involved* in one or more *sales practice violations* and contained a claim for compensatory damages of $5,000 or more (if no damage amount is alleged, the complaint must be reported unless the firm has made a good faith determination that the damages from the alleged conduct would be less than $5,000), or;    ○  ◉

(b) alleged that you were *involved* in forgery, theft, misappropriation or conversion of funds or securities?    ○  ◉

---

## Termination Disclosure

|  | YES | NO |
|---|---|---|
| **14J.** Have you ever voluntarily *resigned*, been discharged or permitted to *resign* after allegations were made that accused you of: |  |  |
| (1) violating *investment-related* statutes, regulations, rules, or industry standards of conduct? | ○ | ◉ |
| (2) fraud or the wrongful taking of property? | ○ | ◉ |
| (3) failure to supervise in connection with *investment-related* statutes, regulations, rules or industry standards of conduct? | ○ | ◉ |

---

## Financial Disclosure

|  | YES | NO |
|---|---|---|
| **14K.** Within the past 10 years: |  |  |
| (1) have you made a compromise with creditors, filed a bankruptcy petition or been the subject of an involuntary bankruptcy petition? | ○ | ◉ |
| (2) based upon events that occurred while you exercised *control* over it, has an organization made a compromise with creditors, filed a bankruptcy petition or been the subject of an involuntary bankruptcy petition? | ○ | ◉ |
| (3) based upon events that occurred while you exercised *control* over it, has a broker or dealer been the subject of an involuntary bankruptcy petition, or had a trustee appointed, or had a direct payment procedure initiated under the Securities Investor Protection Act? | ○ | ◉ |
| **14L.** Has a bonding company ever denied, paid out on, or revoked a bond for you? | ○ | ◉ |
| **14M.** Do you have any unsatisfied judgments or liens against you? | ○ | ◉ |

---

Rev. Form U4 (06/2003)

## 15. SIGNATURE SECTION

Please Read Carefully

All signatures required on this Form U4 filing must be made in this section.

A "signature" includes a manual signature or an electronically transmitted equivalent. For purposes of an electronic form filing, a signature is effected by typing a name in the designated signature field. By typing a name in this field, the signatory acknowledges and represents that the entry constitutes in every use, use, or aspect, his or her legally binding signature.

**15A    INDIVIDUAL/APPLICANT'S ACKNOWLEDGMENT AND CONSENT**
This section must be completed on all initial or Temporary Registration form filings.

**15B    FIRM/APPROPRIATE SIGNATORY REPRESENTATIONS**
This section must be completed on all initial or Temporary Registration form filings.

**15C    TEMPORARY REGISTRATION ACKNOWLEDGMENT**
This section must be completed on Temporary Registration form filings to be able to receive Temporary Registration.

**15D    INDIVIDUAL/APPLICANT'S AMENDMENT ACKNOWLEDGMENT AND CONSENT**
This section must be completed on any amendment filing that amends any information in Section 14 (Disclosure Questions) or any Disclosure Reporting Page (DRP).

**15E    FIRM/APPROPRIATE SIGNATORY AMENDMENT REPRESENTATIONS**

Exhibit D

Case 1:08-cv-00552-TPG    Document 22-5    Filed 08/25/2008    Page 9 of 11

This section must be completed on all amendment form filings.

15F    FIRM/APPROPRIATE SIGNATORY CONCURRENCE
This section must be completed to concur with a U4 filing made by another *firm* (IA/BD) on behalf of an individual that is also registered with that other *firm* (IA/BD).

## 15A. INDIVIDUAL/APPLICANT'S ACKNOWLEDGMENT AND CONSENT

1.    I swear or affirm that I have read and understand the items and instructions on this form and that my answers (including attachments) are true and complete to the best of my knowledge. I understand that I am subject to administrative, civil or criminal penalties if I give false or misleading answers.

2.    I apply for registration with the *jurisdictions* and *SROs* indicated in Section 4 (SRO REGISTRATION) and Section 5 (JURISDICTION REGISTRATION) as may be amended from time to time and, in consideration of the *jurisdictions* and *SROs* receiving and considering my application, I submit to the authority of the *jurisdictions* and *SROs* and agree to comply with all provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by-laws and rules and regulations of the *jurisdictions* and *SROs* as they are or may be adopted, or amended from time to time. I further agree to be subject to and comply with all requirements, rulings, orders, directives and decisions of, and penalties, prohibitions and limitations imposed by the *jurisdictions* and *SROs*, subject to right of appeal or review as provided by law.

3.    I agree that neither the *jurisdictions* or *SROs* nor any person acting on their behalf shall be liable to me for action taken or omitted to be taken in official capacity or in the scope of employment, except as otherwise provided in the statutes, constitutions, certificates of incorporation, by-laws or the rules and regulations of the *jurisdictions* and *SROs*.

4.    I authorize the *jurisdictions*, *SROs*, and the *designated entity* to give any information they may have concerning me to any employer or prospective employer, any federal, state or municipal agency, or any other *SRO* and I release the *jurisdictions*, *SROs*, and the *designated entity*, and any person acting on their behalf from any and all liability of whatever nature by reason of furnishing such information.

5.    I agree to arbitrate any dispute, claim or controversy that may arise between me and my *firm*, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the *SROs* indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent *jurisdiction*.

6.    For the purpose of complying with the laws relating to the offer or sale of securities or commodities or investment advisory activities, I irrevocably appoint the administrator of each *jurisdiction* indicated in Section 5 (JURISDICTION REGISTRATION) as may be amended from time to time, or such other person designated by law, and the successors in such office, my attorney upon whom may be served any notice, process, pleading, subpoena or other document in any action or *proceeding* against me arising out of or in connection with the offer or sale of securities or commodities, or investment advisory activities or out of the violation or alleged violation of the laws of such *jurisdictions*. I consent that any such action or *proceeding* against me may be commenced in any court of competent *jurisdiction* and proper venue by service of process upon the appointee as if I were a resident of, and had been lawfully served with process in the *jurisdiction*. I request that a copy of any notice, process, pleading, subpoena or other document served hereunder be mailed to my current residential address as reflected in this form or any amendment thereto.

7.    I consent that the service of any process, pleading, subpoena, or other document in any *investigation* or administrative *proceeding* conducted by the SEC, CFTC or a *jurisdiction* or in any civil action in which the SEC, CFTC or a *jurisdiction* are plaintiffs, or the notice of any *investigation* or *proceeding* by any *SRO* against the *applicant*, may be made by personal service or by regular, registered or certified mail or confirmed telegram to me at my most recent business or home address as reflected in this Form U4, or any amendment thereto, by leaving such documents or notice at such address, or by any other legally permissible means.

I further stipulate and agree that any civil action or administrative *proceeding* instituted by the SEC, CFTC or a *jurisdiction* may be commenced by the service of process as described herein, and that service of an administrative subpoena shall be effected by such service, and that service as aforesaid shall be taken and held in all courts and administrative tribunals to be valid and binding as if personal service thereof had been made.

8.    I authorize all my employers and any other person to furnish to any *jurisdiction*, *SRO*, *designated entity*, employer, prospective employer, or any agent acting on its behalf, any information they have, including without limitation my creditworthiness, character, ability, business activities, educational background, general reputation, history of my employment and, in the case of former employers, complete reasons for my termination. Moreover, I release each employer, former employer and each other person from any and all liability, of whatever nature, by reason of furnishing any of the above information, including that information reported on the Uniform Termination Notice for Securities Industry Registration (Form U5). I recognize that I may be the subject of an investigative consumer report and waive any requirement of notification with respect to any investigative consumer report ordered by any *jurisdiction*, *SRO*, *designated entity*, employer, or prospective employer. I understand that I have the right to request complete and accurate disclosure by the *jurisdiction*, *SRO*, *designated entity*, employer or prospective employer of the nature and scope of the requested investigative consumer report.

9.    I understand and certify that the representations in this form apply to all employers with whom I seek registration as indicated in Section 1 (GENERAL INFORMATION) or Section 6 (REGISTRATION REQUESTS WITH AFFILIATED FIRMS) of this form. I agree to update this form by causing an amendment to be filed on a timely basis whenever changes occur to answers previously reported. Further, I represent that, to the extent any information previously submitted is not amended, the information provided in this form is currently accurate and complete.

I authorize any employer or prospective employer to file electronically on my behalf any information required in this form or any amendment thereto; I certify that I have reviewed and approved the information to be submitted to any *jurisdiction* or

Exhibit D

10.   SRO on this Form U4 Application; I agree that I will review and approve all disclosure information that will be filed electronically on my behalf; I further agree to waive any objection to the admissibility of the electronically filed records in any criminal, civil, or administrative *proceeding*.

*Applicant* or *applicant*'s agent has typed *applicant*'s name under this section to attest to the completeness and accuracy of this record. The *applicant* recognizes that this typed name constitutes, in every way, use or aspect, his or her legally binding signature.

| Date (MM/DD/YYYY) | Signature of *Applicant* |
|---|---|
| 07/28/2005 | MELISSA FORBES |
| | Printed Name _____ |

## 15B. FIRM/APPROPRIATE SIGNATORY REPRESENTATIONS

To the best of my knowledge and belief, the *applicant* is currently bonded where required, and, at the time of approval, will be familiar with the statutes, constitution(s), rules and by-laws of the agency, *jurisdiction* or *SRO* with which this application is being filed, and the rules governing registered persons, and will be fully qualified for the position for which application is being made herein. I agree that, notwithstanding the approval of such agency, *jurisdiction* or *SRO* which hereby is requested, I will not employ the *applicant* in the capacity stated herein without first receiving the approval of any authority that may be required by law.

This *firm* has communicated with all of the *applicant*'s previous employers for the past three years and has documentation on file with the names of the persons contacted and the date of contact. In addition, I have taken appropriate steps to verify the accuracy and completeness of the information contained in and with this application.

I have provided the *applicant* an opportunity to review the information contained herein and the *applicant* has approved this information and signed the Form U4.

| Date (MM/DD/YYYY) | Signature of *Appropriate Signatory* |
|---|---|
| 8 - 8 - 05 | Printed Name _Ann Holder_ |

---

Rev. Form U4 (06/2003)

### CRIMINAL DRP
No Information Filed

Rev. Form U4 (06/2003)

### REGULATORY ACTION DRP
No Information Filed

Rev. Form U4 (06/2003)

### CIVIL JUDICIAL DRP
No Information Filed

Rev. Form U4 (06/2003)

### CUSTOMER COMPLAINT/ARBITRATION/CIVIL LITIGATION DRP
No Information Filed

Rev. Form U4 (06/2003)

### TERMINATION DRP
No Information Filed

Rev. Form U4 (06/2003)

### INVESTIGATION DRP
No Information Filed

Rev. Form U4 (06/2003)

### BANKRUPTCY/SIPC/COMPROMISE WITH CREDITORS DRP
No Information Filed

Rev. Form U4 (06/2003)

### BOND DRP
No Information Filed

Rev. Form U4 (06/2003)

### JUDGMENT LIEN DRP
No Information Filed

Exhibit D

**Mayberry, Amber**

| | |
|---|---|
| **From:** | Mayberry, Amber |
| **Sent:** | Wednesday, July 27, 2005 9:36 AM |
| **To:** | 'melissa.forbes@agedwards.com' |
| **Subject:** | U4 Form |

Your U4 Form has been set up, and it is ready for you to complete. The instructions are available on AGENet under Story name U-4. There is a link in that story that will take you directly to your U4 Form. You will be asked for a reference number and yours is: Reference #: 5073449043B4B966.

Please review sections 1 through 8, and complete sections 9 through 15. In section 9, the box marked "Suffix" should only be used for such things as: Jr., Sr., II, III, etc. Be sure to include A.G.Edwards & Sons, Inc. as your current employer. Also, you will need to electronically sign your form by typing your name and date. When you are finished, click on "Completeness Check". The only missing items should be "Appropriate Signatory" and "Date for Appropriate Signatory". If anything else comes up as incomplete, you will need to complete that section.

Once all sections have been completed, please print, sign, and return the original signature to my attention in the Registration Department. After printing the form, please click "Submit to firm" and notify me by phone or email that you have completed the form.

Please feel free to contact me if you have any questions, and please email me when you have completed this form.

Also, I wanted to let you know that your test window will be open through probably about the end of the 3rd week in November. That won't give you much room to reschedule if you choose to do that. I just wanted you to be aware, in case you wanted to wait another week or so to give yourself some more time in case something comes up.

Thank you,
Amber Mayberry
Registration Administrator
314/955-3339 (phone)
314/955-2726 (fax)
amber.mayberry@agedwards.com