UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Feb 18, 2009
```

-------------------------------------------x

MELISSA D. FORBES,            :
                                          :
                     Plaintiff,    :      08 Civ. 552 (TPG)
                                           :
          - against -           :      **OPINION**
                                         :
                                         :

A.G. EDWARDS & SONS, INC.,    :
WACHOVIA SECURITIES, LLC,    :
WACHOVIA CORPORATION, AND   :
DOUGLAS L. PEARL,            :
                                         :
                    Defendants.   :
```
-------------------------------------------x

Plaintiff Melissa D. Forbes brings the following claims against her former employer A.G. Edwards & Sons, Inc. ("Edwards"), Wachovia Securities, LLC, Wachovia Corporation, and her former co-worker, Douglas L. Pearl (collectively the "defendants"): (1) sexual harassment, sexual discrimination, and retaliation in violation of section 296 of the New York State Executive Law (the "New York Human Rights Law") and section 8-107 of the New York City Administrative Code (the "New York City Human Rights Law"), and (2) intentional infliction of emotional distress, battery, and assault in violation of New York common law. In addition, plaintiff asserts that the mandatory arbitration provisions in the employment agreements she signed violate her constitutional rights under the Fifth Amendment due process clause.

Plaintiff seeks a declaratory judgment (1) that certain mandatory arbitration clauses are unconstitutional under the Fifth Amendment, and (2) invalidating all of the mandatory arbitration provisions in the instant case. Plaintiff also seeks compensatory and punitive damages.

Defendants now move to stay this action and compel arbitration, pursuant to the Federal Arbitration Act. In the alternative, defendants move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

For the reasons set forth below, defendants' motion to compel arbitration is granted. However, rather than stay the proceedings pending arbitration, the action is dismissed.

### FACTS

Edwards is a national securities brokerage firm. Recently, Edwards has become a subsidiary of Wachovia Securities, LLC, which is a subsidiary of Wachovia Corporation. Plaintiff began her employment with Edwards in September 2004, on a temporary basis. On October 12, 2004, she was hired on a full-time basis as a Financial Associate. Plaintiff contends that she was ultimately forced to resign from her position of employment with Edwards in August 2007.

Plaintiff signed a number of agreements in connection with her employment application with Edwards: (1) an Employment Application, (2) a Financial Associate Agreement, and (3) a Supplementary Training Agreement for a Financial Associate ("Supplementary Training

Agreement"). Each of these agreements contained mandatory arbitration provisions. Because these provisions are virtually identical, except for minor linguistic differences that are irrelevant, this Court will only set forth the full text of the arbitration clause contained in plaintiff's Employment Application.

The Employment Application that plaintiff signed on October 10, 2004, states, in relevant part:

> This Agreement contains a pre-dispute arbitration clause immediately below. Before signing this agreement, I read and understood the following:
>
> - I am agreeing to arbitrate any dispute, claim or controversy that may arise between myself and Edwards, or a customer or any other person. This means that I am giving up the right to sue in court Edwards, its subsidiaries or employees or any customer or any other person concerning matters related to or arising from my employment. This includes giving up the right to a trial by jury.
> - A claim alleging discrimination, including a sexual harassment claim, in violation of any statute, IS REQUIRED to be arbitrated under this agreement.
> - Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.
> - The ability of parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.
> - The arbitrators do not have to explain the reason(s) for their award.
> - The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry, or public arbitrators, as

> provided by the rules of the arbitration forum in which a claim is filed.
> - The rules of some arbitration forums may impose time limits for bringing a claim in arbitration.  In some cases, a claim that is ineligible for arbitration may be brought in court.

Plaintiff signed and printed her name beneath the following provision:

> . . . I agree that any controversy or dispute, including, but not limited to, claims of wrongful termination, breach of contract, discrimination, harassment, retaliation, infliction of emotion distress, tortious interference with business or contract, federal, state or local statute or ordinance and/or other theory, arising between me and Edwards shall be submitted for arbitration before the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc.  If neither the New York Stock Exchange, Inc. nor the National Association of Securities Dealers accepts the controversy, dispute or claim, or any portion thereof, for arbitration before either of them, then the non-accepted controversy, dispute or claim shall be submitted for arbitration before the American Arbitration Association pursuant to its Securities Arbitration Rules effective May 1, 1993. . . .

Plaintiff concedes that she signed three agreements containing the pre-dispute arbitration provision described above.

From January 21 through January 23, 2007, plaintiff attended a Retail Conference in Miami, Florida, as part of her work responsibilities with Edwards.  Defendant Pearl, an Institutional Sales Manager at Edwards, also attended.

The following is a summary of plaintiff's allegations in connection with that event.  Following the conference presentations on January 22, 2007, a group of Edwards employees attended a group dinner, followed by socializing.  During that time, Pearl began sexually harassing plaintiff through the use of profane and sexually inappropriate language, the use of obscenities, and physically abusive and sexually assaultive conduct. Pearl told plaintiff that he could hire and fire anyone at Edwards, which he followed with a request that plaintiff come work for him as his assistant.  Pearl stated that he was her bosses' boss, and could therefore move her from her current position at Edwards if he wanted.

Ultimately, in the early morning hours of January 23, 2007, Pearl subjected plaintiff to unwelcome physical advances, including kissing. Pearl then fraudulently lured plaintiff to his hotel room under the pretense of work-related matters, at which point, Pearl physically attacked her by attempting to kiss her.  Shortly thereafter, Pearl completely undressed, and physically grabbed plaintiff, forcing his hand up her skirt, while continuing to subject her to unwanted touching elsewhere.  Pearl then forced plaintiff's hand onto his naked body, while using explicitly profane and vulgar language toward her.  Finally, plaintiff was able to break free, and flee from Pearl's hotel room.

Upon returning to work following the conference, Pearl continued to harass plaintiff with e-mails and phone calls, and when she did speak to him, he continued to use inappropriate language towards her.

Plaintiff asserts that Pearl has engaged in sexually harassing and discriminatory conduct towards other female employees of Edwards predating his conduct towards plaintiff. Ultimately, based on the above mentioned conduct, plaintiff contends that she was forced to resign from her position with Edwards in August 2007.

## DISCUSSION

Defendants argue that this action must be stayed, and arbitration of plaintiff's claims must be compelled on the ground that plaintiff signed at least three separate pre-dispute arbitration agreements at the beginning of her employment with Edwards.

The Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (the "FAA"), "establishes a liberal policy in favor of arbitration." Campaniello Imports, Ltd. v. Saporiti Italia S.p.A., 117 F.3d 655, 665 (2d Cir. 1997). According to the FAA, "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It is uncontested that the FAA covers arbitration provisions that are contained in employment contracts, such as those in the instant case. See Circuit City Stores, Inc., v. Adams, 532 U.S. 105 (2001). When a district court determines that the issue before it is referable to arbitration pursuant to an arbitration agreement, the FAA "leaves no place for the exercise of discretion," but instead, mandates that the court "direct the

parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). If "all of the plaintiff's claims are subject to arbitration, no useful purpose will be served by granting a stay" of judicial proceedings pursuant to 9 U.S.C. § 3, and the case may be dismissed. Alemac Ins. Servs., Inc. v. Risk Transfer Inc., 03 Civ. 1162, 2003 WL 22024070, at *3 (S.D.N.Y. Aug. 28, 2003).

Defendants attempt to compel arbitration of plaintiff's state statutory and common law claims. Plaintiff brings her statutory claims under the New York Human Rights Law, and the New York City Human Rights Law. Her remaining claims are brought under New York common law. According to New York law, each of plaintiff's statutory and common law claims can be submitted to arbitration. See Fletcher v. Kidder, Peabody & Co., 619 N.E.2d 998, 1003, 81 N.Y.2d 623, 601 N.Y.S.2d 686 (N.Y. 1993); Cicchetti v. Davis Selected Advisors, No. 02 Civ. 10150, 2003 WL 22723015, at *2 (S.D.N.Y. Nov. 17, 2003); Moss v. Rent-A-Center, Inc., No. 06 Civ. 3312, 2007 WL 2362207, at *3 (E.D.N.Y. Aug. 15, 2007).[1]

However, to determine whether a court will compel arbitration in a given case, the Second Circuit has formulated a two-part test. See Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246

---

[1] In addition, despite plaintiff's contention, it is well established under New York law that Title VII claims are arbitrable. See Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 147-48 (2d Cir. 2004); Desiderio v. Nat'l Ass'n of Secs. Dealers, Inc., 191 F.3d 198, 203-06 (2d Cir. 1999); Debono v. Washington Mut. Bank, No. 05 Civ. 10333, 2006 WL 3538938, at *4 (S.D.N.Y. Dec. 8, 2006).

F.3d 219, 226 (2d Cir. 2001).    A district court must examine first, "whether there exists a valid agreement to arbitrate at all under the contract in question," and second, "whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." Id.

Agreement to Arbitrate

In connection with her employment at Edwards, plaintiff signed the following agreements that contained mandatory arbitration provisions: (1) the Employment Application, (2) the Financial Associate Agreement, (3) the Supplementary Training Agreement, and (4) the Form U-4 Uniform Application for Securities Industry Registration or Transfer. Because defendants have explicitly stated that they do not predicate their motion to compel arbitration upon the arbitration provisions contained in the Form U-4, this Court will focus solely on whether the other three contracts require this Court to compel arbitration of plaintiff's claims.

Under New York law, "in the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them . . ." Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004).    Thus, parties are generally bound "by the contracts they sign whether or not the party has read the contract," Sinnett v. Friendly Ice Cream Corp., 319 F. Supp.2d 439, 444 (S.D.N.Y. 2004), and

they are held responsible for ensuring that they understand the document they are signing, Gold, 365 F.3d at 149.

Plaintiff contends that she did not read or understand the agreements before signing them. However, the very three agreements at issue explicitly encouraged plaintiff to read the document carefully before signing. Plaintiff's Employment Application stated in bold, capital letters "READ CAREFULLY BEFORE SIGNING." The Financial Associate and the Supplementary Training Agreements both included the following statement in bold, capital letters: "YOU ACKNOWLEDGE HAVING READ AND REVIEWING THIS AGREEMENT AND THE RESTRICTIVE COVENANTS IN THEIR ENTIRETY."

Under New York law, plaintiff is bound by the terms of these arbitration provisions unless she can show special circumstances that would prevent this Court from enforcing these agreements. Plaintiff proffers four such grounds: first, arbitration as a general matter will not adequately protect her rights; second, the arbitration provisions at issue are substantively unconscionable; third, the arbitration provisions are procedurally unconscionable; and fourth, the arbitration provisions violate her due process rights.

Arbitration

Plaintiff asserts that the arbitration forum is inadequate to protect her rights in this action, because (1) discovery in an arbitration proceeding is limited, (2) arbitrators, unlike judges, might lack the

expertise to resolve plaintiff's claims, (3) the record of an arbitration proceeding is not as complete, (4) the rules of evidence do not apply in arbitration, (5) the arbitration process does not allow for punitive damages, which plaintiff seeks, and (6) the costs of arbitration might chill plaintiff's right to bring her cause of action.

All of these arguments are either premature or without merit. The Supreme Court has clearly stated that the discovery process available to a plaintiff in arbitration is fair even though it is less extensive than it would be in federal court. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991). Indeed, the Supreme Court noted in Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 481 (1989), that concerns about arbitration "as a method of weakening the protections afforded in the substantive law to would-be complainants" are "far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes." While large arbitration costs may provide cause to invalidate an arbitration agreement, "the mere uncertainty of expense" does not. Moss, 2007 WL 2362207, at *7. Finally, each of the arbitration clauses, to which plaintiff is a signatory, explicitly informed plaintiff that the "ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings."

Substantive Unconscionability

Plaintiff next argues that the mandatory arbitration provisions in the instant case are substantively unconscionable, because their terms are unreasonably favorable to Edwards.  Plaintiff contends that the arbitration provisions do not mutually bind both parties, and thus unreasonably favor the stronger party, which is Edwards in this case. Plaintiff argues that only her signature was required on the agreements, and therefore only she is bound by them.  Nowhere in the arbitration provisions does it state that Edwards also agrees to arbitrate its disputes, nor do any of the agreements bear signatures on behalf of Edwards that would demonstrate that it too is bound.

In Sablosky v. Edward S. Gordon Co., 73 N.Y.2d 133, 135, 538 N.Y.S.2d 513, 535 N.E.2d 643 (N.Y. 1989), the New York Court of Appeals examined an employment contract that contained an arbitration clause that compelled only one party to submit all disputes to arbitration, while allowing the other party the choice of pursuing arbitration or litigation.  The court stated that "mutuality of remedy is not required in arbitration contracts."  Id. at 137.  The court held that if "there is consideration for the entire agreement that is sufficient," that consideration "supports the arbitration option, as it does every other obligation in the agreement."  Id.

It is clear that in exchange for plaintiff's assent to arbitrate her employment claims, Edwards agreed to employ her as a Financial

Associate.  Edwards would not have hired plaintiff had she not agreed to arbitrate her future claims.  As for plaintiff's argument that a unilateral arbitration clause is substantively unconscionable, the general standard for substantive unconscionability is "whether one or more key terms are unreasonably favorable to one party."  Id. at 138.  The New York Court of Appeals has added that an unconscionable contract is one which "is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms."  Gillman v. Chase Manhattan Bank, 73 N.Y.2d 1, 10, 534 N.E.2d 824, 537 N.Y.S.2d 787 (N.Y. 1988).  Just as the court in Sablosky held that "the arbitration clause in plaintiff's contract is not unreasonable as a matter of law," 73 N.Y.2d at 138-39, the similar arbitration provisions at issue in the instant case are not so unreasonable as to be substantively unconscionable.

Procedural Unconscionability

Plaintiff also argues that the arbitration provisions contained in the three agreements she signed are unenforceable because they were the result of procedural unconscionability in the contract formation process.  She contends that she was in an unequal bargaining position with Edwards at the time she signed these agreements, because (1) this was her first full-time job (being fresh out of college), (2) she had not attended business school, (3) she did not have an attorney review the agreements before she signed them, and (4) she was not given a choice

whether or not she wanted to agree to pre-dispute arbitration because her signature on the agreements was a condition of her employment with Edwards.

To determine whether an agreement is procedurally unconscionable, New York courts look at "whether the party seeking to enforce the contract has used high pressure tactics or deceptive language in the contract and whether there is inequality of bargaining power between the parties." Morris v. Snappy Car Rental, Inc., 637 N.E.2d 253, 256, 84 N.Y.2d 21, 614 N.Y.S.2d 362 (N.Y. 1994). Even if all of plaintiff's assertions are true, they do not demonstrate procedural unconscionability. Plaintiff has failed to show that Edwards engaged in high-pressure tactics, deception or threats in procuring plaintiff's signatures. Moreover, it is well established that inequality in bargaining power alone, "is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." Gilmer, 500 U.S. at 33.

Plaintiff is a college graduate, who managed to pass both her Series 7 and 66 examinations. While she contends that she was unaware of certain facts that now render her claims unsuitable for arbitration before the entities listed in the arbitration agreements, she could have asked questions about the arbitration provisions prior to signing them. The very arbitration provisions at issue explicitly informed plaintiff that the "panel of arbitrators may include arbitrators who were

or are affiliated with the securities industry." While plaintiff contends that she was not permitted to consult with an attorney, both the Supplemental Training and the Financial Associate Agreements stated explicitly in bold, capital letters: "YOU ACKNOWLEDGE THAT YOU HAVE AN ADDITIONAL THIRTY (30) DAYS FROM THE DATE YOU SIGNED THIS AGREEMENT TO CONTINUE TO REVIEW IT AND SEEK LEGAL COUNSEL." While it is undoubtedly true that plaintiff wanted the job with Edwards, New York courts "have not found contracts to be procedurally unconscionable merely because they were offered on a 'take it or leave it' basis." Ragone v. Atlantic Video at Manhattan Ctr., No. 07 Civ. 6084, 2008 WL 4058480, at *7 (S.D.N.Y. Aug. 29, 2008). Conditioning employment upon an agreement to arbitrate "is insufficient to support a finding that the plaintiff lacked a 'meaningful choice' in signing the agreement." Id. Accordingly, plaintiff has failed to establish that the arbitration provisions contained in the three agreements she signed are procedurally unconscionable.

Fifth Amendment

Finally, plaintiff contends that the mandatory arbitration provisions at issue unconstitutionally required her to forfeit her Fifth Amendment right to due process. She also asserts that these provisions violated her right to a jury trial under the Seventh Amendment. These constitutional arguments, however, must fail, because the requisite state action is lacking.

As the Second Circuit clearly stated, a "threshold requirement of plaintiff's constitutional claims is a demonstration that in denying plaintiff's constitutional rights, the defendant's conduct constituted state action." Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 206 (2d Cir. 1999).  In that case, the Court explained that "the fact that a business entity is subject to 'extensive and detailed' state regulation does not convert the organization's actions into those of the state." Id.  The Court held that neither the National Association of Securities Dealers nor the New York Stock Exchange was a state actor. Id.  Similarly, the Court held that the SEC's "mere approval" of an arbitration clause in an agreement is insufficient "to justify holding the state liable for the effects of the arbitration clause." Id. at 207.

Plaintiff argues that the mandatory arbitration clauses in the agreements she signed constitute state action, because (1) exchanges, of which Edwards is a member, are regulated by the Federal Securities Act, (2) the SEC delegates extensive regulatory power to the exchanges, (3) the SEC encourages the exchanges to require employees in the securities industry to arbitrate employment disputes with their employers, (4) the SEC permits the exchanges to modify their rules to require arbitration of all employment disputes, (5) the SEC approves the specific arbitration procedure that the exchanges use, and (5) courts readily enforce mandatory arbitration provisions in employment contracts in the securities industry, as well as confirm arbitration awards.

The Second Circuit has clearly held that state approval of the general use of arbitration clauses, including a specific arbitration provision, does not convert otherwise private conduct into state action. See id. at 207.  Extensive regulation of an entity, such as Edwards, is similarly insufficient to convert its conduct into state action.  See id. at 206.  Because this Court finds no state action in the application or enforcement of the arbitration provisions in the instant case, plaintiff's constitutional claims are dismissed.

The Scope of the Arbitration Clauses

Since "arbitrators' authority arises only when the parties agree in advance to that forum, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001).  Pursuant to the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

To determine whether each of plaintiff's claims falls within the scope of the relevant arbitration clauses, this Court must classify the clauses as either broad or narrow.  See Louis Dreyfus Negoce S.A., 252 F.3d at 224.  If this Court determines the arbitration clauses are broad,

"there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." <u>Id</u>.

Determining whether a given arbitration clause is broad or narrow is a matter of intent. "When parties use expansive language in drafting an arbitration clause, presumably they intend all issues that 'touch matters' within the main agreement to be arbitrated." <u>Id</u>. at 225. The Second Circuit has stated that the expansive language "any controversy, claim or dispute" suggests a broad arbitration clause. <u>See</u> <u>JLM Indus., Inc. v. Stolt-Nielsen SA</u>, 387 F.3d 163, 172 (2d Cir. 2004).

In the instant case, all three arbitration clauses state, in relevant part, that the signatory is "agreeing to arbitrate any dispute, claim or controversy that may arise between" her and Edwards, or a customer, or any other person, which means "giving up the right to sue in court Edwards, its subsidiaries or employees or any customer or any other person concerning matters related to or arising from" her "employment." These are indeed broad arbitration clauses. The language in the clauses is sweeping, covering the full panoply of claims that might arise in an employment setting. Nothing in the language indicates that the parties intended to limit the scope of arbitration. Even where the arbitration clauses set forth examples of the types of claims that should fall within the scope of the agreement, this is preceded by the language "including, but not limited to."

Because the arbitration clauses at issue here are broad, their coverage extends to "collateral matters." See id. The Second Circuit has defined this coverage to mean that if "the allegations underlying the claims 'touch matters' covered by the parties' contracts, then those claims must be arbitrated, whatever the legal labels attached to them." Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 77 (2d Cir. 1998).

Plaintiff contends that her assault, battery, and intentional infliction of emotional distress claims fall outside the mandatory arbitration clauses, because they are beyond the scope of the employment relationship. Plaintiff asserts that the parties could not have intended to encompass within the pre-dispute arbitration provisions the act of sexual assault that occurred on January 22-23, 2007, as it did not involve the parties' rights and obligations under any of the contracts.

The arbitration clauses at issue here did not limit mandatory arbitration to disputes arising from the employment contracts; rather, they explicitly required arbitration of matters related to or arising from plaintiff's employment. The language requires arbitration of tort as well as contract claims. Here, plaintiff alleges that defendant Pearl, a member of upper management at Edwards, assaulted and battered her during a work conference, which she attended as part of her responsibilities with Edwards. Plaintiff's tort claims of battery and assault clearly "touch matters" concerning her employment, as the incident involved plaintiff's co-worker, occurred during a work

conference, and contributed to what plaintiff alleges was a continued course of harassing conduct at work.  Because the relevant arbitration agreements clearly require arbitration of "matters related to or arising from" plaintiff's employment, plaintiff's claims of assault and battery must be submitted to arbitration.

Plaintiff's assertion that her claim of intentional infliction of emotional distress is not covered by the mandatory arbitration provisions also clearly fails, because all three provisions explicitly list infliction of emotional distress amongst the claims that must be arbitrated.  The plain language of these arbitration provisions specifically includes that type of claim within its scope.

The arbitration provisions also clearly state that by signing the agreements, plaintiff was "giving up the right to sue in court Edwards, its subsidiaries or employees or any customer or any other person concerning matters related to or arising from" plaintiff's employment, which would clearly include claims against Edwards, Wachovia Securities, LLC, Wachovia Corporation, and plaintiff's former co-worker, Pearl.

Plaintiff's remaining claims of sexual discrimination, sexual harassment, and retaliation are also clearly covered by the mandatory arbitration clauses, as they are each specifically set forth as examples of the types of claims that should fall within the scope of the agreements.

## CONCLUSION

Defendants' motion to compel arbitration is granted.   However, rather than stay the proceedings pending arbitration, the action is dismissed.   Plaintiff may re-file upon completion of the arbitration if further relief from this Court is necessary.


Dated: New York, New York
      February 18, 2009


SO ORDERED

Thomas P. Griesa
U.S.D.J.